

AKA/RRR: USAO 2021R00335



USDC- GREENBELT
'22 MAR 17 PM 4:47

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 22-CR-00091-PWG |
| | * | |
| AKBAR MASOOD, | * | (Conspiracy to Commit Health Care |
| MICHELLE O. PEEBLES, | * | Fraud and Wire Fraud, 18 U.S.C. |
| HARRIETT JACKSON, | * | § 1349; Wire Fraud, 18 U.S.C. § 1343; |
| a/k/a "Harriett Soumah," | * | Aggravated Identity Theft, 18 U.S.C. |
| JUDITH RUSS, | * | § 1028A; Federal Employee Conflict of |
| RHONDA PAUL, | * | Interest, 18 U.S.C. § 208; Aiding and |
| WESLEY WILLIAMS, | * | Abetting, 18 U.S.C. § 2; Forfeiture, |
| BAGNON JAQUES TITI, and | * | 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7) |
| ALFRED ANTONIO DUNCAN, | * | and (b)(1), 21 U.S.C. § 853(p), |
| | * | 28 U.S.C. § 2461(c)) |
| Defendants | * | |
| | * | |
| | ******* | |

## INDICTMENT

### COUNT ONE
#### (Conspiracy to Commit Health Care Fraud and Wire Fraud)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Indictment:

#### Introduction and Background

1.      Company A was a company headquartered in the Commonwealth of Virginia and served as a prime contractor for medical support services to the Walter Reed National Military Medical Center ("WRNMMC") and the Defense Health Agency ("DHA"), which were both agencies of the United States Government. **AKBAR MASOOD ("MASOOD")**, a resident of Great Falls, Virginia, was a part-owner and "Chief Strategy Officer" of Company A.

**MICHELLE PEEBLES ("PEEBLES")**, a resident of Riverdale, Maryland, was a site manager at Company A.

2.       Company B was a company headquartered in Tysons, Virginia, and primarily provided medical billing and coding services on government contracts. **HARRIETT JACKSON, a/k/a "Harriett Soumah," ("JACKSON")** was President, **PEEBLES** was Vice-President, and **MASOOD** was "Chief Finance and Strategy Officer" of Company B.

3.       HMA Solutions was organized on December 30, 2016, as a Delaware Limited Liability Corporation but headquartered in Riverdale, Maryland. **PEEBLES** and **MASOOD** were members of HMA. **JACKSON** had no formal role in HMA but shared in the business' proceeds.

4.       **JUDITH RUSS ("RUSS")** was an employee of WRNMMC who, among other duties, was responsible for verifying that contracted medical coding work was performed for WRNMMC. Beginning no later than January 2017, **RUSS** was paid regularly by **PEEBLES** or Company B and had not disclosed this outside income or employment to officials at WRNMMC.

5.       **RHONDA PAUL ("PAUL")** was **PEEBLES'** and **JACKSON's** friend who worked primarily as a receptionist at an outpatient medical clinic and also as an Uber and Lyft driver. **PAUL** had no experience or credentials as a medical coder.

6.       **WESLEY WILLIAMS ("WILLIAMS")** was **JACKSON's** boyfriend who worked as a barber. **WILLIAMS** had no experience or credentials as a medical coder.

7.       **BAGNON JAQUES TITI ("TITI")** was **PEEBLES'** boyfriend who worked as a Washington Metro Transit bus driver. **TITI** had no experience or credentials as a medical coder.

8.       **ALFRED ANTONIO DUNCAN ("DUNCAN")** was an associate of **PEEBLES** who worked as musician. **DUNCAN** had no experience or credentials as a medical coder.

9.       Victim 1 was a career medical coder and former colleague of **JACKSON** who

was never employed or compensated by HMA.

10.     Victims 2 and 3, one of whom was a certified medical coder and the other had attended medical coding training organized by **JACKSON**, both had responded to advertised medical coding job openings, whose applications were available to **PEEBLES** and **MASOOD** but were never hired nor compensated by HMA.

11.     Victim 4 was a registered nurse and former intimate relation of **JACKSON** who was never employed or compensated by HMA.

12.     Victims 5 through 7 were employees of Company A who were not employed nor compensated by HMA.

### The Conspiracy

13.     From a time unknown to the Grand Jury, but beginning at least in or about December 2016, and continuing through at least in or about February 3, 2019, in the District of Maryland and elsewhere, the defendants,

**AKBAR MASOOD,**
**MICHELLE O. PEEBLES,**
**HARRIETT JACKSON,**
**a/k/a "Harriett Soumah,"**
**JUDITH RUSS,**
**RHONDA PAUL,**
**WESLEY WILLIAMS,**
**BAGNON JAQUES TITI, and**
**ALFRED ANTONIO DUNCAN,**

and others known and unknown to the Grand Jury, conspired and agreed together to commit offenses under chapter 63 of Title 18, United States Code, to defraud and obtain money and property from the United States Government, namely:

a.     to knowingly and willfully execute and attempt to execute a scheme and artifice to obtain, by means of false or fraudulent pretenses, representations, or promises ("the

scheme to defraud"), any of the money or property owned by, or under the custody or control of, any health care benefit program in connection with the delivery of or payment for health care benefits, items, or services, in violation of 18 U.S.C. § 1347; and

b.      for the purpose of executing and attempting to execute the scheme to defraud, to cause to be transmitted by means of wire communication, in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

<u>**Manner and Means of the Conspiracy and Scheme to Defraud**</u>

It was part of the conspiracy and scheme to defraud that:

14.      **MASOOD, PEEBLES,** and **JACKSON** established HMA to take advantage of WRNMMC's increased need for contract medical coders.

15.      **MASOOD** took advantage of decision-making authority within Company A to use its established medical coding support contract with WRNMMC and DHA to subcontract work on the contract to HMA.

16.      **MASOOD, PEEBLES**, and **JACKSON** used the stolen identities of actual persons to establish personas with which HMA contracts were established with Company A.

17.      **MASOOD, PEEBLES**, and **JACKSON** obtained the names of actual credentialed medical coders in order to demonstrate that HMA had the ability to perform medical coding evaluation, feedback, and training services as a subcontractor to Company A.

18.      **MASOOD, PEEBLES**, and **JACKSON** would generate false billable hours with the names of Victims 2, 3, 4, 5, 6, and 7 for which they would charge Company A, which, in turn, billed those hours to WRNMMC.

19.      **RUSS**, an official with WRNMMC, would then verify the work performed by non-existent coders.

20.     After WRNMMC continued to experience coding problems and elected to contract with Company A for in-person coding support from highly skilled coders ("CDI Specialists") who would be compensated at far higher rates, **MASOOD** and **PEEBLES** also steered this sub-contract to HMA.

21.     **MASOOD, PEEBLES**, and **JACKSON** used identities of other actual credentialed medical coders and another provider, none of whom were affiliated with HMA, to charge Company A, and therefore WRNMMC, for CDI Specialist hours, none of which were ever provided.

22.     **PEEBLES** and **JACKSON** recruited **PAUL, WILLIAMS, TITI,** and **DUNCAN** to pose as medical coders and provide their names and sign consulting agreements with Company A.

23.     After **PAUL**, **WILLIAMS**, **TITI** and **DUNCAN** submitted false invoices to Company A, **PEEBLES** and **JACKSON** caused Company A to pay **PAUL**, **WILLIAMS**, **TITI** and **DUNCAN** for those false invoices.

24.     **PAUL, WILLIAMS, TITI,** and **DUNCAN** repeatedly submitted completely falsified medical coding invoices, claiming the processing of thousands of encounters each month, and causing Company A to bill WRNMMC over $1 million for their false claims alone.

25.     **PAUL, WILLIAMS, TITI,** and **DUNCAN** received at least $298,851, $312,781, $245,381, and $295,041, respectively, as net payments in their bank accounts and, to varying extents, shared these proceeds with **JACKSON** and **PEEBLES**.

26.     In total, between 2017 and 2019, the defendants obtained nearly $3.3 million from the scheme to defraud the United States Government.

18 U.S.C. § 1349

## COUNTS TWO THROUGH ~~EIGHT~~ NINE
### (Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

### Introduction

1.      Paragraphs 1 through 12 and 14 through 26 of Count One are incorporated here.

### The Charge

2.      On or about the dates set forth in the table below, in the District of Maryland and elsewhere, the defendants,

**AKBAR MASOOD,**
**MICHELLE O. PEEBLES,**
**HARRIETT JACKSON,**
**a/k/a "Harriett Soumah,"**
**RHONDA PAUL,**
**WESLEY WILLIAMS,**
**BAGNON JAQUES TITI, and**
**ALFRED ANTONIO DUNCAN,**

for the purpose of executing and attempting to execute the scheme and artifice described above, did cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, in the form of digital images of previously deposited checks, described below for each count, each transmission constituting a separate count.

| Count | Date | Wire Communication |
|-------|------|--------------------|
| 2 | April 6, 2017 | Email from renee@hmasolutionsllc.com, in Maryland, to an employee of Company A in Sterling, Virginia, containing a Consulting Agreement bearing the falsified signature of Victim 1 and falsely claiming that Victims 2 and 3 would perform services for HMA. |
| 3 | October 4, 2017 | Email from accounting@hmasolutionsllc.com, from Riverdale, Maryland, to an employee of Company A and **PEEBLES'** Company A email account, both in Sterling, Virginia, containing a falsified |

| | | invoice from HMA for $88,086.80 for services purportedly performed by nonexistent employees in September 2017. |
|---|---|---|
| 4 | October 4, 2017 | Web-based electronic communication from Company A in Sterling, Virginia, to Contract Officials at WRNMMC in Bethesda, Maryland, for invoices in the amounts of $184,914.75 for hourly services performed in September 2017, which communication included an attachment itemizing charges for at least six nonexistent medical coder employees' (Victims 2 through 7's) work. |
| 5 | October 20, 2017 | Web-based electronic communication from Company A in Sterling, Virginia, to Contract Officials at WRNMMC in Bethesda, Maryland, for invoices in the amount of $315,148.10 for services performed in September 2017, which communication included an attachment itemizing charges for **PAUL, WILLIAMS, TITI,** and **DUNCAN's** nonexistent medical coder employees' work. |
| 6 | October 20, 2017 | Wire money transfer from Infused Solutions' BB&T account ending in 1225, registered in Sterling, Virginia, for $88,086.80 to HMA Solutions' TD Bank account ending in 4418, registered in Lanham, Maryland. |
| 7 | May 7, 2017 | Email from **WILLIAMS** using the address tamajaal2016@gmail.com, registered to **WILLIAMS** in Silver Spring, Maryland, to an employee of Company A in Sterling, Virginia, containing a false invoice for $12,045 in services purportedly performed in April 2017. |
| 8 | July 3, 2017 | Email from **DUNCAN**, using the address aduncan418@gmail.com, registered to **DUNCAN** in White Plains, Maryland, an employee of Company A in Sterling, Virginia, containing a false invoice for $10,904 in services purportedly performed in June 2017. |
| 9 | September 5, 2018 | Email from **PEEBLES** and **TITI**, using address bagnontitii@gmail.com, registered to **TITI** in Riverdale, Maryland, to an employee of Company A in Sterling, Virginia containing a false invoice for $13,822 in services purportedly performed in August 2018. |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNT TEN
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

### Introduction

1.       Paragraphs 1 through 12 and 14 through 26 of Count One are incorporated here.

### The Charge

2.       On or about April 6, 2017, in the District of Maryland and elsewhere, the defendants,

**AKBAR MASOOD,**
**MICHELLE O. PEEBLES, and**
**HARRIETT JACKSON,**
**a/k/a "Harriett Soumah,"**

during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c)—that is, wire fraud in violation of 18 U.S.C. § 1343, as charged in Count Two of this Indictment—knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the names and professional certifications of Victims 1, 2, and 3 and the falsified signature of Victim 1.

18 U.S.C. § 1028A
18 U.S.C. § 2

## COUNT ELEVEN
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

### Introduction

1.       Paragraphs 1 through 12 and 14 through 26 of Count One are incorporated here.

### The Charge

2.       On or about October 4, 2017, in the District of Maryland and elsewhere, the

defendants,

**AKBAR MASOOD,**
**MICHELLE O. PEEBLES,**
**HARRIETT JACKSON,**
**a/k/a "Harriett Soumah,"**

during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c)—that is, wire

fraud in violation of 18 U.S.C. § 1343, as charged in Count Three of this Indictment—knowingly

transferred, possessed, and used, without lawful authority, a means of identification of another

person, that is, the names and professional certifications of Victims 2, 3, 4, 5, 6 and 7.


18 U.S.C. § 1028A
18 U.S.C. § 2

## COUNT TWELVE
### (Federal Employee Conflict of Interest)

The Grand Jury for the District of Maryland further charges:

1.      Paragraphs 1 through 12 and 14 through 26 of Count One are incorporated here.

2.      Beginning in or about January 2017 and continuing through at least in or about November 2018, in the District of Maryland and elsewhere, the defendant,

**JUDITH RUSS,**

being a United States Government executive branch officer and employee, did knowingly and willfully participate personally and substantially through decision, approval, recommendation, and otherwise, in a determination and contract, in which she had a financial interest, in a particular matter, specifically, verification of invoices submitted by co-conspirators claiming work on a government contract that had not been performed while those co-conspirators were simultaneously providing **RUSS** with ongoing payments which she had not disclosed.


18 U.S.C. §§ 208 and 216(a)(2)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendants' convictions under any of the offenses in Counts One through Eight of this Indictment.

### Health Care Fraud Conspiracy Forfeiture

2.      Upon conviction of the offense charged in Count One, the defendants,

**AKBAR MASOOD,**
**MICHELLE O. PEEBLES,**
**HARRIET JACKSON,**
**a/k/a "Harriet Soumah,"**
**JUDITH RUSS,**
**RHONDA PAUL,**
**WESLEY WILLIAMS,**
**BAGNON JAQUES TITI, and**
**ALFRED ANTONIO DUNCAN II,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense.

**Wire Fraud Forfeiture**

3.      Upon conviction of any of the offenses charged in Counts One through Eight, the

defendants,

**AKBAR MASOOD,**
**MICHELLE O. PEEBLES,**
**HARRIETT JACKSON,**
**a/k/a "Harriett Soumah,"**
**JUDITH RUSS,**
**RHONDA PAUL,**
**WESLEY WILLIAMS,**
**BAGNON JAQUES TITI, and**
**ALFRED ANTONIO DUNCAN,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c),

any property, real or personal, which constitutes or is derived from proceeds traceable to such

offenses.

**Substitute Assets**

4.      If, as a result of any act or omission of the defendants, any such property subject

to forfeiture:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third person;

        c.      has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be subdivided

                  without difficulty,

the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b)(1) and

28 U.S.C. § 2461(c), shall be entitled to forfeiture of substitute property up to the value of the

forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(7) and (b)(1)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Erek L. Barron / AKA*

Erek L. Barron
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: _3/17/2022_

13