# The Josh Greenberg Law Firm

(202) 422-0809 – josh@joshgreenberglawfirm.com
1717 K Street, NW, Suite 900, Washington, DC  20006

August 27, 2024

**VIA ECF**

The Honorable Paula Xinis
U.S. District Judge
U.S. District Court
   for the District of Maryland
6500 Cherrywood Lane
Greenbelt, MD  20770

Re:     *United States v. Masood*, No. 8:22-cr-00091-PX (D. Md.)

Dear Judge Xinis:

In response to the Court's inquiries and directive near the end of the hearing on Friday, August 23, 2024, this letter demonstrates that the Court should dismiss the charges against Mr. Masood. The dismissal should be with prejudice given the government's unambiguous confessions that it violated *Brady* and Rule 16 with respect to the 27 electronic devices at issue and its repeated concessions that these violations are in the realm of "egregiousness." (Doc. 252, 8/23/24 Hr'g Tr. at 81:8-10, 101:7-11, 111:15-16.) This is especially so because an Excel file the government newly produced on the afternoon of Saturday, August 24 reveals that – contrary to its numerous express representations to the Court on this very issue – four of the devices were *not* imaged and thus could not have been uploaded to Relativity. (Ex. A, Excel File.) Chain of custody records that the government also newly produced that afternoon establish that all of these never-imaged devices were seized from and returned to the alleged coconspirators: two from Harriet Jackson and two from Michelle Peebles. As a result, the contents of these devices, which the government's confessions of *Brady* and Rule 16 violations necessarily admit contain *apparently exculpatory information and other information material to the defense*, will never be available in a reliable form to Mr. Masood. The prejudice to Mr. Masood from the government's violations of *Brady* and Rule 16 therefore *cannot be cured* and he can *never* have a fair trial on the charges against him.

A number of other facts reinforce the conclusion that this case should be dismissed with prejudice. The government has made many false statements to the Court about the 27 electronic devices – most notably as to the purported imaging of the four non-imaged devices we now know it caused to be irretrievably lost. For the Court's convenience, Mr. Masood attaches a table showing the shocking extent and frequency with which the government has changed its story and offered irreconcilably inconsistent representations on this key issue. (Ex. B, The Government's Evolving And Conflicting Statements About The 27 Electronic Devices.) Without yet hearing testimony from any prosecutor or agent, the Court has already found that the government was "at a minimum,

1

reckless" when it misrepresented to the Court in a letter filed late at night this past Thursday, August 22 that a full *Brady* review of the 27 devices occurred. (Doc. 252, 8/23/24 Hr'g Tr. at 36:5-7.) The Court made this finding *before* the government's tardy productions of chain of custody records revealed that it caused the permanent loss of what it confessed is *Brady* and Rule 16 information on four of the devices.

In addition, the government has repeatedly violated the Court's orders without explanation or justification. Examples include failing to comply with its deadlines to produce all chain of custody records, Jencks materials, and *Giglio* information. The government has also violated Rule 16 with respect to materials separate from the 27 electronic devices.

This is the extraordinarily rare case where (i) the government has confessed it committed violations of *Brady* and Rule 16 and (ii) the prejudice those violations inflicted cannot be cured. The additional violations outlined in the last paragraph and discussed more fully below provide further confirmation that this case cannot proceed. The government's conduct is outrageous and it shocks the conscience. The Court should dismiss the charges against Mr. Masood with prejudice.

**I.      THE COURT SHOULD DISMISS THE CHARGES AGAINST MR. MASOOD.**

   **A.      The Government's Confessed Violations Of *Brady* And Rule 16 Caused The Loss Of Information It Has Conceded Is Exculpatory And Otherwise Material To Mr. Masood's Defense, And No Remedy Can Cure These Violations.**

At the hearing on Friday, August 23, the government repeatedly confessed unambiguously that its failure to produce the contents of the 27 electronic devices violated *Brady* and Rule 16. (*E.g.*, Doc. 252, 8/23/24 Hr'g Tr. at 53:15-24; *id.* at 101:1-11; *id.* at 102:4-8.) The following is perhaps the most notable example:

> MR. GARDNER: . . . . I started with a first principle that there was a violation, and I think that's very clear.
>
> THE COURT: A Rule 16 violation?
>
> MR. GARDNER: And a Brady violation.
>
> THE COURT: Okay. And so now this is just about mitigation, in your view?
>
> MR. GARDNER: Yes, Your Honor. I mean, we are simply saying the egregiousness of what happened, and whether it can be mitigated or the context surrounding it does go to the remedy. This is really -- we are sort of accepting that mistakes were made in this case, and very serious mistakes.

(*Id.* at 101:1-11.) Almost immediately after this confession, the government represented that it was "now prepared to make [the 27 electronic devices] available to the defense, you know, *as a whole*." (*Id.* at 101:20-21 (emphasis added).) This is another false representation, as evidenced by the subsequent revelation that the government chose to return at least four devices to the two alleged

2

coconspirators without imaging the devices. Seconds later, the government agreed again that it was "conceding a Brady violation and a Rule 16 violation" but continued to attempt to lead the Court to believe that a "remedy" is available for all of the devices. (*Id.* at 102:4-8.)

As in the letter it filed the night before, numerous times during the hearing, the government falsely represented that "the 27 devices at issue were imaged and uploaded to Relativity." (*Id.* at 38:12-19; *accord, e.g.*, *id.* at 36:19 – 37:2.) The government falsely stated there was a "collection of the images from *all the devices*." (*Id.* at 49:20-22 (emphasis added).) It also misled the Court to believe that all 27 devices "were imaged" before they were "returned." (*Id.* at 86:20 – 87:7.) The government succeeded in causing the Court to "think what we're going to hear in the end is that the devices themselves were all returned to each of the respective codefendants but the data was imaged and uploaded into Relativity." (*Id.* at 125:10-13.)

Documents the government newly produced on the afternoon of Saturday, August 24 show that, contrary to its repeated unambiguous representations at the hearing a day earlier and the Court's understanding based on those representations, *the data from several of the 27 devices was never extracted*. Near the end of that hearing, the Court warned the government against "death by a thousand cuts more evidence" about the 27 devices. (Doc. 252, 8/23/24 Hr'g Tr. at 142:14-20.) The Court stressed that "the evidence is what it is" and that it did not "expect[] that the government is going to produce additional evidence" that again alters its story about the devices. (*Id.*) Although the government represented at the hearing that the case agent had the remaining chain of custody records available and that it would produce them later that afternoon, it did not produce some until Saturday afternoon and did not produce others until yesterday (Monday, August 26). Despite the Court-ordered deadline of 10:00 a.m. today and its representations at the hearing, the government delayed without offering any valid reason. In response to follow-up requests by Mr. Masood's counsel, the government claimed the case agent was "unable to access" certain reports and suggested it could not direct its contractors to assist during the weekend. (Ex. C, 8/23/24 3:16 PM Goldman Email to 8/24/24 2:34 PM Gardner Email.) Late on Sunday night, the government claimed it was "unable to fix the issue" despite "making numerous phone calls and inquiries over the weekend" and stated it would "turn to it in earnest" the next morning. (Ex. D, 8/25/24 11:06 PM Gardner Email.) Not until yesterday afternoon, and only after Mr. Masood's counsel asked the same question several times, did the government finally confirm that it had produced "a complete chain of custody for all electronic devices, whether the physical devices or the electronic images of those devices." (Ex. C, 8/24/24 4:01 PM Greenberg Email to 8/26/24 2:51 PM Gardner Email.)

The "extraction reports" that the government first produced on Saturday afternoon (*Id.*, 8/24/24 2:34 PM Gardner Email) include a file named "CAF 00051-2022-CID351 Evidence.xlsx" (the "Excel File") revealing that several of the 27 electronic devices were *not* "Acquired" – *i.e.*, they were *not* imaged. (Ex. A, Excel File (printed to PDF).) The Excel File has a "**Status Legend**" in the bottom-right that defines "Not Acquired" (highlighted in pink) to mean "Not acquirable w/o passcode *or other action*." (*Id.* (emphasis added).) The "Acquired?" and "Comments" columns of the Excel File have pink highlighting for three devices: an iPhone seized from Ms. Jackson, a Chromebook computer seized from Ms. Peebles, and an iPad Pro seized from Ms. Peebles. (*Id.*) For a fourth device – a laptop computer seized from Ms. Jackson – the "Acquired?" and "Comments" columns are black and gray (neither of which are among the colors in the legend) and the latter column states: "In request but not provided per Case Agent." (*Id.*) A chain of custody

3

record for a "Laptop" seized from Ms. Jackson on April 6, 2022 shows that this device was received by the case agent that day and returned to Ms. Jackson on August 10, 2022. (Ex. E, DA Form 4137.[1]) For the iPhone seized from Ms. Jackson, the "Comments" field of the Excel File states: "Brute-force cancelled; Need Passcode." (*Id.*) Another record that the government produced in the days after the hearing, for an iPhone 7, has the "No" box checked for "Extraction Obtained" on the first page and states on the second page: "Brute-force attempt (GrayKey) *cancelled by case-agent request*." (Ex. F, Digital Evidence Collection Worksheet (emphasis added).) The "Info" metadata for the Excel File show that the case agent "[l]ast modified" the file on "8/24/2024 11:26 AM" – on Saturday morning. (Ex. G, "Info" Metadata for Excel File.)

"A criminal defendant may prove a due process violation based on the prosecution's failure to preserve evidence if the evidence 'possesses an exculpatory value that was apparent before the evidence was destroyed' and if it is 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *United States v. Johnson*, 996 F.3d 200, 206 (4th Cir. 2021) (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)).

The government knew by early April 2022 – over two years and four months ago, *before* the 27 electronic devices at issue were seized – that the devices could contain material exculpatory information. (Ex. B, The Government's Evolving And Conflicting Statements About The 27 Electronic Devices at 1 (quoting Doc. 136-1, 4/4/22 Kimrey Aff. at 27-29 ¶ 39(b)).) At that time, the case agent submitted an affidavit in support of an application for a warrant to search Mr. Masood's home, representing to a federal judge in Alexandria, Virginia that computers and other electronic devices can contain "crucial" exculpatory information. (*Id.*) The affidavit also states that such devices may contain similarly "crucial" inculpatory information. (*Id.*)

The government had learned a lot more about this case by the time of the hearing this past Friday, August 23, nearly 29 months after early April 2022. Among other things, it knew that the devices contained *apparently exculpatory* information. Absent such knowledge, the government could not have confessed that it violated *Brady* by failing to produce the items on the devices to Mr. Masood. The government's position is that *Brady* applies only to information that is both actually *exculpatory* and *material* to the defense. If the government did not believe that the devices contained material exculpatory information, it could not have conceded that it violated *Brady*.

The government's destruction of at least four electronic devices seized from Ms. Jackson and Ms. Peebles is at least reckless and, even if it were merely negligent, dismissal with prejudice would still be warranted because the prejudice to Mr. Masood is material and cannot be cured. *See United States v. Belcher*, 762 F. Supp. 666, 672-73, 675 (W.D. Va. 1991) (dismissing indictment with prejudice under *Trombetta* where the government "destroyed evidence" that was "absolutely crucial and determinative to this prosecution's outcome" so that "it would be a violation of due process" for the prosecution to proceed). The Court could dismiss this case with prejudice based on the destruction of at least four devices that contain apparently exculpatory and other material information without finding that any government employee acted in bad faith. *See id.*

---

[1] This document was produced with the one-page email chain appended to it.

4

Thus, the Court need not find that the government acted in bad faith when it caused the permanent loss of at least four devices containing *Brady* and Rule 16 information and repeatedly misrepresented the facts regarding those devices to the Court. As the Court put it, "if I get punched in the nose, whether you meant it or not, it still hurts." (Doc. 262, 8/23/24 Hr'g Tr. at 135:20-21.) This observation mirrors U.S. Supreme Court and Fourth Circuit precedents recognizing that "'if the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor.'" *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 559 (4th Cir. 1999) (quoting *United States v. Agurs*, 427 U.S. 97, 110 (1976)). Because the irretrievable loss of the four devices makes curing the *Brady* and Rule 16 violations *impossible*, this case is unlike ones where a new trial or a continuance was appropriate.[2]

Moreover, insofar as the devices seized from Ms. Jackson and Ms. Peebles are considered potentially rather than apparently exculpatory, the outcome should be the same because the record establishes bad faith. *See Johnson*, 996 F.3d 200, 206 (4th Cir. 2021) (recognizing that a defendant must show "bad faith" when "the lost evidence can only be said to be 'potentially useful'" because its contents are unknown and, unlike here, the government has not conceded a *Brady* or Rule 16 violation) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)). Standing alone, the pattern of false statements, 180-degree reversals, and reckless representations to the Court and to Mr. Masood's counsel about the 27 devices shows bad faith. This conclusion is even more inescapable when the Court takes into account the new revelation that the government decided to allow at least four devices to be returned to the two alleged coconspirators who pled guilty without being imaged. As this Court recognized, this situation is tantamount to destroying those devices because it is "a nonstarter" to try to recover the devices' contents from admitted felons with powerful motives to lie and alter the contents of the devices. (*See* Doc. 252, 8/23/24 Hr'g Tr. at 111:5-11.)

The Court already found the government was at least "reckless" in making representations about facts when it did not know whether they were true or false. (*Id.* at 36:5-7.) Further, the Court emphasized it is "very concerned with how difficult it's been to get a straight story on what happened with the government." (*Id.* at 135:12-15.) Significantly, the Court correctly indicated the "diametrically opposed government representations on these critical issues" within "the last five days" are "perhaps material to whether – what the sanction ultimately is." (*Id.* at 135:22 – 136:1.) All of this occurred *before* the Court or Mr. Masood's counsel knew about the case agent's reckless or willful decisions to return at least four devices to the two coconspirators without having the devices imaged. Because the government has confessed all 27 devices contained *Brady* and Rule 16 information, the four irretrievably lost – and effectively destroyed – devices necessarily contained information that is both materially exculpatory and material to Mr. Masood's defense. This revelation makes the government's evolving and contradictory representations on this topic even more troubling and amply supports a finding that the government acted in bad faith.

---

[2]   *Compare United States v. Derrick*, 163 F.3d 799, 806-07 (4th Cir. 1998) (recognizing that a district court can exercise its supervisory power to dismiss an indictment with prejudice after a conviction at trial where a retrial would inflict "'demonstrable prejudice or substantial threat thereof'" on the defendant. *Id.* at 807 (quoting *United States v. Morrison*, 449 U.S. 361, 365 (1981)). Although *Derrick* involved alleged "prosecutorial misconduct" at trial, its ruling with respect to prejudice was a separate and independently sufficient basis for its conclusion. *Id.* at 809-10.

5

Finally, two relatively new authorities enacted by Congress empower this Court to dismiss the charges against Mr. Masood with prejudice. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act (the "DPPA"), on April 6, 2022, the Court ordered the government to "adhere to the disclosure obligations set forth in *Brady* . . . and its progeny." (Doc. 23.) The Court expressly warned the government that failing to do so "in a timely manner" may result in "serious consequences" – including but not limited to "dismissal of charges." (*Id.*) This order pursuant to Rule 5(f) and the DPPA, which Congress enacted in 2020 to address discovery abuses such as those here, provide a separate and independent basis to dismiss the charges against Mr. Masood with prejudice.

      **B.**    **The Government Has Repeatedly Violated The Court's Orders, Most Notably Its Deadlines To Produce All Chain Of Custody Record, Jencks Materials, And *Giglio* Information.**

On May 24, 2024, over three months ago, the Court ordered the government "to provide Jencks and Giglio to [Mr. Masood]" by August 16. (Doc. 205, Am. Pretrial Scheduling Order.) The government still has not produced all Jencks materials or all *Giglio* information. Similarly, the government violated the Court's order during the telephone hearing this past Thursday, August 22, to produce all chain of custody records within an hour after the hearing ended.

      **1.**    **Chain of custody records**

During the telephone hearing five days ago, the Court ordered the government to "produce, by one hour after the hearing ended (i.e., by approximately 2:00 p.m.), all chain of custody documents for the devices from when they were seized through the present." (Doc. 257, Order at 2.) As demonstrated above, the government defied this order, withholding critically important chain of custody records until its tardy productions on the afternoons of Saturday, August 24 and yesterday. Treating the order as optional, the government ignored the request by Mr. Masood's counsel that it direct its contractors to work on the weekend, even though it knew the Court ordered letters on dismissal to be filed by today. Worse, the government never told the Court that it would fail to comply with the order, much less provide any valid, specific justification for this failure.

      **2.**    **Jencks materials**

On the night of August 16, the government stated in an email copying both of its counsel of record: "The Government's Jencks production is now available on USAfx to be downloaded." (Ex. H, 8/16/24 9:39 PM Perez Email.) The government did not suggest that this production was incomplete. (*Id.*) Nor did the government advise the Court or Mr. Masood's counsel that it was unable or unwilling to timely produce all of the Jencks materials, let alone offer any justification for withholding any such materials past the Court-ordered deadline. (*Id.*)

Mr. Masood's counsel have identified at least one undeniable example of the government's failure to produce all Jencks materials. Patrick Clezie was the accountant at Infused and was heavily involved in its financial operations. (Doc. 241 at 13.) Mr. Clezie is on the government's witness list. (Ex. I, 8/22/24 Gov't Witness List.) The government interviewed Mr. Clezie on August 21, 2020, as the report on a later interview of Ms. Rojos reveals. (Doc. 241 at 13.) Yet it

appears the government has failed to produce a report on its interview of Mr. Clezie, which is Jencks material. The government has offered no explanation, much less a legitimate justification, for this failure.

### 3. *Giglio* information

It is apparent that the government is continuing to withhold *Giglio* information, such as reports by the IRS agents and Loudoun County law enforcement officers who worked on this case. The government has not produced a single such report. Further, a day after the hearing, the government represented that it has no *Giglio* information related to the former co-defendants as to whom it took the unusual step of dismissing the charges after indicting them or otherwise let out of this case without guilty pleas. (Ex. J, 8/24/24 Greenberg-Gardner Emails.) That the government has no *Giglio* information as to any of the former co-defendants is virtually inconceivable. It seems that the government is overlooking or disregarding its obligation to produce such information even if it is not already in written form. It also seems that the government has failed to fulfill its *Giglio* obligations as to Ms. Jackson and Ms. Peebles: Whereas it represented that it has produced the only *Giglio* documents for them (*id.*), it has not produced Ms. Jackson's tax returns (Doc. 241 at 14) or information about Ms. Peebles's bank fraud (*id.*).

### 4. At least one more violation of Rule 16

Based on the review to date by Mr. Masood's new counsel (who have been in this case for less than two weeks), it appears that the government has not produced any of the executed contracts at issue (Doc. 241 at 11) – even though it has had access to them, and possibly also possession, custody, and/or control of them, for years. Based on defense counsel's investigation to date, in at least March 2020, Barbara Rojas had access to the contracts via the Infused server. The government admitted that Ms. Rojas "had access to the Infused server" and that she acted "at the agent's request," which the Court found equivalent to "[a]t the agent's direction." (Doc. 252, 8/23/24 Hr'g Tr. at 76:14-25.) Ms. Rojas Johnson provided emails to the government from that server and seemingly could have or did provide the contracts to it as well. Moreover, on October 6, 2022, the case agent obtained a total of ten boxes seized from four locations, including the residences of Ms. Jackson, Ms. Peebles, and Mr. Masood. (Doc. 241-2 at 1, Evidence/Property Custody Document (DA Form 4137).) The boxes contain "contract related documents." (*Id.*) The "REASON" the case agent obtained the boxes was for the "Evaluation of Evidence." (*Id.*) As Mr. Masood has demonstrated, the contracts are key documents in this case and are undeniably material to both the charges and to his defense. (Doc. 241 at 11.)

\* \* \* \* \*

The pattern of egregious government conduct in this case is outrageous and shocks the conscience. The obvious weakness of the charges against Mr. Masood undercuts any purported public interest in continuing this prosecution any longer and bolsters the conclusion that the Court should dismiss those charges with prejudice. As the Court pointedly observed, "the indictment is thin"; "the superseding indictment is thin"; and the "thrust of the [alleged] fraud" is difficult if not impossible to "understand." (Doc. 252, 8/23/24 Hr'g Tr. at 120:13-18.) Of the [number] original defendants besides Mr. Masood, the government has "only had two guilty pleas" and "[t]he rest

have either been diverted or dismissed, which is a sign that there may be problems in paradise." (Doc. 252, 8/22/24 Hr'g Tr. at 5:25 – 6:3.)

At a minimum, this Court should dismiss the charges against Mr. Masood without prejudice. *See, e.g.*, *United States v. Feurtado*, 191 F.3d 420, 423-24 & n.2 (4th Cir. 1999) (affirming dismissal with prejudice where agent's false grand jury testimony was "'unintentional misconduct'" and that he "'acted with the best of intentions.'") (quoting district court); *United States v. Davis*, No. 4:18-CR-00011, 2019 WL 5865935, at *5, *8-9 (W.D. Va. Nov. 8, 2019) (recognizing that "[a] court may dismiss an indictment as a sanction for a prosecutor's failure to obey court orders or other violations of law pursuant to its supervisory power when the violation caused prejudice to the defendant or posed a substantial threat thereof," further recognizing that a "court cannot examine prejudice from the discovery violations to [a defendant] in isolation and must consider the cumulative nature of the serial discovery violations," and dismissing a count as an intermediate sanction).

## II. IF THE CASE SURVIVES, THE COURT SHOULD EXCLUDE ALL WITNESSES INVOLVED IN A COMMUNICATION ON ANY OF THE 27 DEVICES FROM TESTIFYING FOR THE GOVERNMENT AND IMPOSE OTHER SANCTIONS.

As noted above, Mr. Masood respectfully submits that there is no adequate remedy, short of dismissal, that would cure the government's violations. Nevertheless, we address other potential remedies as ordered by the Court.

Rule 16(d)(2) provides a district court with discretion in determining the proper remedy for a discovery violation. Accordingly, a trial court's decision as to the appropriate remedy may only be reversed for abuse of discretion. *United States v. Muse*, 83 F.3d 672, 675 (4th Cir. 1996) (citing *United States v. Ford*, 986 F.2d 57, 59 (4th Cir. 1993)).

Under both Rule 16 and *Brady*, exclusion of witnesses and evidence is a possible remedy. *See* Fed. R. Crim. P. 5(f); Fed. R. Crim. P. 16(d)(2); *United States v. Young*, 248 F.3d 260, 270 (4th Cir. 2011) (court excluded impeachment audio recording for non-disclosure under Rule 16). Judge Bennett excluded a witness and 631 pages of documents related to his testimony based on the government's late disclosure, two weeks before trial. *United States v. Liberto*, No. CR RDB-19-0600, 2021 WL 4459219 (D. Md. Sept. 29, 2021). The government conduct in that case was less egregious than here, where more voluminous materials were disclosed eight days before trial (the Relativity database files disclosed on August 26), much of the material has never been provided to the defense (the entire contents of the 18 devices seized from the codefendants), and a substantial subset of the material cannot be provided at all because it was never imaged or retained by the government (at least four devices seized from them and returned without imaging).

This Court has recognized the exclusion of Harriet Jackson and Michelle Peebles's testimony as a possible remedy. But now we are dealing not merely with suppression of evidence but also *destruction* of evidence that the defense repeatedly stated was important to its preparation. Exclusion of only those two witnesses cannot remedy this situation. In addition to Ms. Jackson and Ms. Peebles, Marlon Johnson, Barbara Rosas, Renee Connor, and Alsane Soumah would need to be excluded. Information relevant to impeaching their testimony and revealing their biases is –

8

or *was* – contained on the devices the government has caused to be irretrievably lost. Renee Connor and Alsane Soumah have no direct connection to anyone in the case by Jackson and Peebles, so any communications they would have had in the case would have to be with Jackson and Peebles alone. As to Marlon Johnson and Barbara Rosas, any communications they had with Jackson and Peebles are also rendered unavailable by government action. The government could have elected to retrieve Johnson and Rosas's emails from the Infused server but chose not to. The government's failure to preserve or provide Jackson and Peebles's device contents thus prevents Mr. Masood from effectively preparing his defense to allegations by Johnson, Rosas, Connor, and Soumah. Exclusion of all six witnesses would be necessary to protect Mr. Masood's rights in the event the Court finds dismissal inappropriate. (*See generally* Ex. K, Table Of Witnesses Who Should Be Excluded If Case Proceeds.)

Further, as Mr. Masood's counsel noted at the evidentiary hearing, the government's violations with respect to these devices infect much more than just the testimony of these two witnesses. For example, the government will seek to introduce communications that contain the hearsay statements of these individuals, presumably under Fed. R. Evid. 801(d)(2). But by withholding (and destroying a subset) of the devices belonging to these individuals, Mr. Masood will be hampered in his ability to impeach the credibility of a hearsay declarant, which is his right. Fed. R. Evid. 806. Further, it was these individuals who were entirely responsible for recruiting or outright stealing the identities of the coders involved in the allegations of the indictment. Their communications with such individuals are critical and are inextricably intertwined with the additional key players in this case. Simply put, the government's violations have infected all or very nearly all of this entire case. It is impossible to perform surgery on a body that is so thoroughly riddled with rot.

Second, under certain circumstances, a spoliation instruction (potentially alongside other relief) may be appropriate. *See, e.g.*, *Johnson*, 996 F.3d at 206-07. However, for the reasons discussed above with respect to exclusion, such an instruction would not correct the fact that Mr. Masood cannot get a fair trial without the ability to have access to evidence that he could marshal in his defense, both affirmatively and to attack the credibility of the government's witnesses and the reliability of its other evidence.

Finally, while a continuance is available as a potential remedy under certain circumstances, Fed. R. Crim. P. 5(f), Fed. R. Crim. P. 16(d)(2), that is not the situation here. This Court has already recognized that a continuance would provide no assurance that the government will comply. The government should not be permitted to flagrantly violate *Brady* and Rule 16, then make repeated misstatements about the underlying facts and otherwise thwart the Court and defense counsel's efforts to get at the underlying facts, only to be rewarded with a do-over by way of a continuance. The government's misstatements and flagrant violations of Court's orders have gone unabated, and the Court has already recognized that based on this record there is no reason that will change now with a continuance. (Doc. 252, Hr'g Tr. at 139:2-6. ("MR. MANTHRIPRAGADA: Your Honor, one of the remedies the Court does have is granting a continuance. THE COURT: Why would I ever do that? Why would I – you're going to have to explain to me why I wouldn't -- why that wouldn't just set up more bad behavior to follow?"). Mr. Masood has lived under the pain of an indictment that has been pending for over two years; the government should not get an extension to comply with basic constitutional and statutory duties that it should have discharged long ago,

At a minimum, if the Court is inclined to impose a remedy short of dismissal with prejudice based on the current record, an evidentiary hearing at which Mr. Masood can call all prosecutors, agents, and other government personnel with knowledge of one or more of the 27 electronic devices. Furthermore, for the reasons stated by defense counsel during the August 23 hearing, the government should be ordered to produce all of its internal emails related to these devices at issue.

August 27, 2024                                             Respectfully submitted,


                                                            /s/ Joshua D. Greenberg
                                                            Joshua D. Greenberg (Bar No. 18168)
                                                            THE JOSH GREENBERG LAW FIRM PLLC
                                                            1717 K Street, NW, Suite 900
                                                            Washington, DC  20006
                                                            (202) 422-0809
                                                            josh@joshgreenberglawfirm.com

                                                            Eugene Gorokhov VSB # 73582
                                                            BURNHAM & GOROKHOV, PLLC
                                                            1634 I Street NW, Suite 575
                                                            Washington, DC 20006
                                                            (202) 386-6920
                                                            eugene@burnhamgorokhov.com

                                                            Daniel Goldman, Md. Bar. 2202010033
                                                            LAW OFFICE OF DANIEL GOLDMAN, PLLC
                                                            421 King Street, Suite 505
                                                            Alexandria, Virginia 22314
                                                            (202) 677-5709
                                                            dan@dangoldmanlaw.com


**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August, 2024, a true and accurate copy of the foregoing document and any attachments thereto was served via email on all counsel of record.


                                                            /s/ Joshua D. Greenberg
                                                            Joshua D. Greenberg