IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| UNITED STATES OF AMERICA, )  )  v. )  )  AKBAR MASOOD )  ) | No. 8:22-cr-91-PX |

### MOTION TO COMPEL GOVERNMENT TO COMPLY WITH THE COURT'S ORDER OF AUGUST 28, 2024, AND FOR LEAVE TO FILE ADDITIONAL MOTIONS TO COMPEL

Akbar Masood respectfully requests that the Court compel the government to comply with its discovery obligations under the Court's order of August 28, 2024 and (ii) grant Mr. Masood leave to file additional motions to compel as to Items 2, 3, 4, and 5 in the Joint Status Report filed on September 6 (ECF 273, the "JSR") and any items not mentioned in the JSR issues for which Mr. Masood's counsel still have not received sufficient information to *effectively* brief the issues.

On August 28, the Court entered an Order stating in pertinent part: "**For all ordered productions, the documents shall be bate stamped. They should also be organized by subject, author and chronology, where feasible.**" (ECF 264 at 2 (bold font in original).) The next day, when informed that the government had produced SA Kimrey's text messages in "disarray," the Court made clear that this Order applies to all Court-ordered productions and "is sort of de riguer in a white-collar case of this kind." (ECF 271, 8/29/24 Hr'g Tr. at 24:11 – 27:7.) The Court warned the government not to act "like my orders are suggestions." (*Id.* at 27:1-2.)

1

The government has violated the Order of August 28 in at least two material respects that prevent Mr. Masood's counsel from *effectively* filing motions to compel at this time on several topics discussed in the JSR. The government's violations also make it impossible for Mr. Masood's counsel to know if the government is continuing to withhold discoverable information on certain of those and other topics.

*First*, on the afternoon of October 4 (one week ago), the government produced "Discovery 8." About halfway through, the ten-page "Index" for this production (attached as Exhibit A) fails to comply with the Order of August 28: Four hundred and eight – yes, *408* – rows do not identify documents by subject, author, or chronology. These rows do not include *any* information other than Bates numbers and file type (*e.g.*, .pdf or .xlsx) for the documents. These rows include 51 Excel files, leaving Mr. Masood's counsel unable to find much if not most or all of the information the Order requires the government to provide in a form that is readily ascertainable.

*Second*, 3.62 terabytes of data underlying the Relativity files previously provided were finally made available to counsel for Mr. Masood on October 9.[1] Mr. Masood is not yet able to determine whether the Relativity data is complete, and the review will take some time.

Because of the government's ongoing violations of the Court's Order of August 28, Mr. Masood's counsel cannot *effectively* address at least three outstanding items in the JSR:

---

[1] If the Court desires, Mr. Masood's counsel will promptly submit a more detailed explanation regarding the difficulties obtaining the underlying Relativity data.

2

- **Item 2**: whether the government's Jencks disclosures for SA Kimrey are complete such that Mr. Masood has received all of his text messages and other Jencks and/or *Brady/Giglio* materials, including but not limited to emails, text messages, investigative reports, attachments, and other writings related to the investigation;

- **Item 3**: whether the government has provided Mr. Masood all attachments and enclosures to emails and reports disclosed in the case, clearly labeled and organized such that Mr. Masood can make use of the materials and has all documents presented to witnesses during interactions with law enforcement; and

- **Item 5**: whether Mr. Masood has received all search warrants and returns for (a) emails obtained from Google, (b) Peebles's Chromebook, and (c) the Walter Reed laptop seized from Jackson's home and returned to Jackson.

Further, Mr. Masood's counsel are not able to determine the status of other issues not included in the JSR. One example is whether the government has produced all of the data in its Relativity database from the 17 devices seized from co-Defendants—and alleged coconspirators—Harriett Jackson and Michelle Peebles that it imaged before returning the devices to them (the "Relativity Data").

The Court should order the government to promptly comply with the Order of August 28 by reproducing "Government 8" and the Relativity Data in a manner that complies with the Order. In addition, the Court should grant Mr. Masood leave to file additional motions to compel after the government has done so.

Finally, the Court previously decided it should address **Item 4**—the taint/filter team review materials provided for an *in camera* review—at least in the first instance. Mr. Masood's counsel do not know the volume of those materials or whether the Court has finished its *in camera* review. If the Court has done so or believes doing so remains appropriate, the Court should grant Mr. Masood leave to file a motion to compel production of those materials if the Court declines to grant that remedy based

3

on the *in camera* review. Such a motion to compel would be based on, among other things, significant information about the taint/filter team review that the government suppressed until after the Court decided to conduct an *in camera* review.

## BACKGROUND

Before August 2024, only three official discovery productions had been made by the Government, all in late 2022 and early 2023. The Government made a materially incomplete Jencks production on August 16, 2024. This production omitted a great deal of Jencks materials, including more than 240 emails and numerous investigative reports of SA Kimrey. Upon review in preparation for the September 3, 2024 trial date, it became glaringly apparent that voluminous information had not been provided. Notably, this included information from 30 seized electronic devices and documentation about when—or even whether—the devices had been reviewed, despite the government's representations that review was underway and necessary before discovery could be completed. Counsel for Mr. Masood then made a series of discovery requests to the Government that ultimately led to two telephonic and two in-court hearings regarding issues with discovery in the case. Additional materials were provided to Mr. Masood's counsel via USAfx in late August, including interview exhibits and chains of custody and cyber reports for the seized devices, separate from formal discovery productions.

At the hearing on August 29, it was disclosed for the first time that the government had not produced contents of the ALERTS database, an investigative note-taking platform in which SA Kimrey and other agents input tasks during the

course of their investigation. Given SA Kimrey's inconsistent and seemingly misleading representations about his investigation of the case, the Court ordered the disclosure of the ALERTS database, which was produced on September 5. Review of the ALERTS database has revealed that many other documents have been withheld by the government, including but not limited to investigative reports and emails involving SA Kimrey and multiple key witnesses in this case.

Mr. Masood's counsel sent the government a letter on September 16 (ECF. No. 291-1) identifying the following categories of missing information: (1) Unproduced Jencks Materials of Individuals on the Government's Witness List, in the Form of Email Communications (2) Unproduced Jencks Materials in the Form of Investigative Reports, (3) *Brady/Giglio* Information Reflected in the Government's Auditing and Forensic Accounting, (4) Documents Reflecting the Government's Reliance on Marlon Johnson as *Brady/Giglio* Information, (5) Materials Provided by Marlon Johnson, Barbara Johnson, or other Individuals in their Employ or Control, to the Government, (6) Unproduced Documents Relating to the Seized Devices, (7) Unproduced Documents Relating to the Seized Devices.

On August 29, the government advised the Court it would provide Mr. Masood the contents of the seized devices uploaded to Relativity. On August 26, the Government uploaded to USAfx, a folder labeled "DEFENSE – Relativity Database Files" that included subfolders labeled "Extracted Chats," "Extracted E-Mail," and "Extracted Docs." Mr. Masood's counsel believed these were the files uploaded to Relativity based on initial review and the Government's representations. Upon

5

further review, Mr. Masood's counsel determined the Relativity files produced were simply the Excel spreadsheet indices of the files rather than the actual data. Mr. Masood's counsel then requested the underlying data, which it received in usable format—after substantial back and forth—on October 9, 2024. Mr. Masood now has ***3.62 terabytes*** of Relativity Data and the related Excel spreadsheets to review.

## ARGUMENT

**I.    Substantial Reasons Exist To Believe The Government May Still Be Suppressing Discoverable Materials For <u>Item 2</u> (SA Kimrey's Writings) But Its Violations Of The Order Of August 28 Make It Impossible For Mr. Masood's Counsel To Effectively Address The Issue.**

On October 4, the government newly produced an astonishing 214 more emails from SA Kimrey – the case agent, who is on its witness list.  The government should have produced all of these emails as Jencks by its deadline of August 16. (*See* ECF 205, Am. Pre-Trial Scheduling Order (entered May 24, 2024). That deadline was 18 days before what was then the trial date of September 3. Yet on August 16, the government produced only 16 emails that SA Kimrey wrote. After he testified at the hearing on August 29, the government produced another 22 communications of SA Kimrey's, comprised of text messages and emails. The following graph illustrates the

extent and duration of the government's suppression of the Jencks materials for its case agent that it has produced to date:



It appears that counsel for the Government continues to rely on SA Kimrey to produce materials according to the Government's obligations under Jencks, Rule 16, and *Brady/Giglio* despite his admitted lack of qualification to do so. Furthermore, it is inconceivable how, even without an understanding of the legals standards, he could have produced such a small number of emails in two prior productions, requiring the defense to look for clues of missing materials on ALERTS and follow up with yet another request, which resulted in the production of 214 emails withheld up until that point. With even a basic technological proficiency, any person can run a search of their email for basic terms related to a case and forward or extract them if asked to do so. These circumstances leave no question that SA Kimrey cannot be relied on by the government to comply with its disclosure obligations in this case.

The government has a duty to comply with *Brady/Giglio* regardless of the agents' ability or willingness to provide information to which Mr. Masood is entitled. *Brady* "applies to 'evidence known only to police investigators and not to the prosecutor.'" *Washington v. Baltimore Police Dept.*, 669 F.Supp.3d 444, 465 (D. Md. 2023) (quoting *United States v. Blankenship*, 19 F.4th 685, 692 (4th Cir. 2021) quoting *Kyles v. Whitley*, 514 U.S. 419 (1995)). A law enforcement officer has an obligation under *Brady* to disclose favorable evidence to the prosecutor for provision to the defense. *See, e.g., Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396-98 (4th Cir. 2014). But the officer's obligation does not absolve the prosecutor's duty to obtain and disclose *Brady/Giglio* or other discoverable information. *Brady* obligations apply to "evidence known only to police investigators and not to the prosecutor." *Blankenship*, 19 F.4th at 692 (quoting *Kyles*, 514 U.S. at 438). "[T]he availability of information is not measured in terms of whether the information is easy or difficult to obtain but by whether the information is in the possession of some arm of the state." *Crivens v. Roth*, 172 F.3d 991, 997-98 (7th Cir. 1991) (quotations omitted); *see also United States v. Osorio*, 929 F.2d 753, 762 (1st Cir. 1991) ("[R]egardless of whether the prosecutor is able to frame and enforce directives to the investigative agencies to respond candidly and fully to disclose [information], responsibility for failure to meet disclosure obligations will be assessed by the courts against the prosecutor and his office.").

Because Mr. Masood cannot be confident that all emails and investigative reports have been produced, he cannot assess whether Item 3 from the JSR has been

8

met—whether all attachments to those emails and interview reports have been provided as required. Further, the materials that the government produced on October 4 include additional AIRs referencing attachments and enclosures. Given that the index is not clearly labeled Mr. Masood cannot determine whether Production 8 contains additional omissions of reports and/or attachments/enclosures. *See* Exhibit A. Accordingly, Mr. Masood seeks leave of Court to file additional motions to compel on materials found to be missing, should it be necessary.

II. **Item 5: Materials Remain Outstanding from Mr. Masood's Requests For The Search Warrant Returns For The Google Email Accounts Of Harriett Jackson And Others.**

Prior to the meet and confer, counsel for Mr. Masood requested all search warrants issued in the case and their returns. In earlier discovery, Mr. Masood had received two search warrants and returns, one for the homes of Peebles and Jackson, and one for Masood's home and the offices of Case. A third search warrant affidavit, to Google, for six email accounts, including Jackson's, was provided in Production 7, on September 5, 2024, but without the returns or the contents of the email accounts.

At the meet and confer, undersigned counsel asked the Government whether the complete Google returns had been provided and was advised that all search warrants and returns in the case would be reproduced if not already provided. The Government also confirmed that no warrants had issued to Google for the contents of the Chromebook seized and returned to Peebles, and that no search warrant had ever been obtained for the Walter Reed laptop seized from and returned to Jackson.

9

On October 4, 2024, in Production 8, Mr. Masood received the cover letters for the Google search warrant returns, but counsel has been unable to confirm that they have received the underlying data. Additionally, emails in Production 8 and notes in the ALERTS database indicated the government had substantial back and forth with Google regarding the search warrant. Accordingly, counsel for Mr. Masood sent a letter to the government on October 9, 2024, *See* 10/9/24 Letter, attached as Ex. B, requesting additional information, to which the government responded it would reply. Mr. Masood is entitled to the materials sought regarding the search warrant and return materials but will await further response from the Government before raising any further issue with the Court on this point.

IV. **Item 4: Review of the ALERTS Database Reveals Questions About The Taint Team Review Timeline That Cannot Be Answered By Mr. Masood Without Access To The Taint Team Materials Submitted To The Court For *In Camera* Review.**

Mr. Masood does not have access to the Taint Team review materials provided to the Court for *in camera* review and does not yet know the progress of that review. Since those materials were provided, however, counsel for Mr. Masood has reviewed the contents of the Alerts database and has significant misgivings about the timing of the Taint Team review represented by the government during the pendency of this case. Mr. Masood seeks leave of this Court to file additional motions regarding the Taint Team review if further relevant information comes to light.

## CONCLUSION

For the foregoing reasons, the Court should grant the present motion and enter the accompanying proposed order.

October 11, 2024                                        Respectfully Submitted,


                                                        /s/ *Daniel H. Goldman*
                                                        Daniel Goldman
                                                        LAW OFFICE OF DANIEL GOLDMAN, PLLC
                                                        421 King Street, Suite 505
                                                        Alexandria, Virginia 22314
                                                        (202) 677-5709 (phone)
                                                        (833) 523-2310 (fax)
                                                        dan@dangoldmanlaw.com

                                                        Eugene Gorokhov
                                                        BURNHAM & GOROKHOV, PLLC
                                                        1634 I Street NW, Suite 575
                                                        Washington, DC 20006
                                                        (202) 386-6920 (phone)
                                                        (202) 765-2173 (fax)
                                                        eugene@burnhamgorokhov.com

                                                        Joshua Greenberg
                                                        The Josh Greenberg Law Firm
                                                        1717 K Street, NW, Suite 900
                                                        Washington, D.C. 20006
                                                        (202) 422-0809 (phone)
                                                        josh@joshgreenberglawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document and any exhibits thereto were filed via CM/ECF, which will cause a copy to be served on all parties.


                                                        /s/ *Daniel H. Goldman*
                                                        Daniel Goldman