**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. PX-22-91** |
| | * | |
| **AKBAR MASOOD,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | ****** | |

## GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENSE MOTIONS TO COMPEL

The defense has filed several motions to compel discovery in this case. The Court set a deadline for "Defense motions to compel related to outstanding discovery disputes" of October 11, 2024 and ordered the Government to respond to these motions by October 18, 2024. ECF 301. Outstanding defense motions to compel, as well as supplements to those motions, are divided across several filings. ECF 262 (supplemented by 284 and 313), 286, 309, and 310. The Government now responds to each of these outstanding motions to compel in turn, using the numbering convention adopted by the defense and used in the Joint Status Report ("JSR") submitted to the Court on September 3, 2024. ECF 272.[1]

### I. Items Two through Five (ECF 309)

Counsel for the defense addressed items two through five in its motion to compel on October 11, 2024 (ECF 309) "Motion to compel Government to comply with the Court's order of August 28, 2024, and for leave to file additional motions to compel." Those items are:

- Two: SA Kimrey's text messages related to his investigation of the case and correspondence with prosecution team members and witnesses;
- Three: Attachments to interview reports for persons on the government's witness list;
- Four: Taint team review materials;

---

[1] The original JSR contained 13 items, but various of those items are not in dispute.

- Five: Search warrants and returns for: a) all emails obtained from Google, b) Michelle Peebles' Chromebook, and (c) Walter Reed laptop seized from Jackson's home and returned to Jackson

In that filing, the defense alleged that they had not received sufficient information to "effectively brief the issues." ECF 309 at 1. They argue this because (1) that the Government did not provide a sufficiently detailed index to allow them to review Jencks materials for SA Kimrey; and (2) the 3.62 terabytes of data underlying the Relativity files previous provided to the defense were only "finally made available" to counsel for Mr. Masood on October 9" and will take time to review. *Id.* at 2. The defense argues that because of these two "violations," the defense cannot effectively address items 2, 3, and 5.

Regarding item 4, the defense acknowledges that the Court itself is reviewing material related to a filter team review in this case but requests leave to file motions to compel on that topic if the Court declines to order their disclosure. *Id.* at 3-4.

### a.   Index difficulties

The Government produced various materials to the defense on October 4, 2024. These materials included materials such as attachments to reports of interviews with various individuals, letters from Google that accompanied search warrant returns, and various documents in response to specific defense requests. Among those documents were a collection of emails from SA Joshua Kimrey, all grouped together within the same sub-folder of Discovery 8. It is these emails, sequentially numbered and listed together in the index, that the defense complains of being so poorly organized that the defense cannot effectively file motions to compel (the "408" rows without subject, author, or chronology.) The defense describes the presentation of these documents as "violations [which] make it impossible for Mr. Masood's counsel to know if the government is continuing with withhold discoverable information. . . ." Id. at 2.

This production was prepared by the U.S. Attorney's Office in the same manner as every other production. The Government commonly provides defense counsel indices as a courtesy, and we did so here. The index grouped SA Kimrey's emails and attachments to those emails in sequential order such that, for example, USA_000116 would be an email from SA Kimrey containing attachments, and any discoverable attachments would come after in numerical order (USA_000117 etc.)

This all appears intuitive to the Government and hardly an insurmountable lift for an experienced defense team—comprised of three different law firms—to review in short order. Nevertheless, in response to the defense's filing of ECF 309, and without further prompting, the Government created and produced a supplementary index which included the subject and date of each email as well as the name of each recipient. Ex. 1.

The Government first learned in defense's filing of ECF 309 that they were having any trouble whatsoever reviewing these documents. The Government is skeptical of defense claims that they were so befuddled by Discovery 8 that they need open-ended leave to file more motions to compel. We would highlight to the Court that the defense liberally cites documents from Discovery 8, the production they were apparently not able to effectively review. *See*, *e.g.*, ECF 309, 314.

The Government believes this issue has now been resolved and is moot (a strong belief since we have not heard anything to the contrary from defense as of this filing.) However, this exchange exemplifies a different issue. In the normal course of a case, this sort of issue would have been resolved in minutes with a phone call or email between counsel. The Government has previously complained of an approach by the defense that appears geared towards making allegations against the Government rather than obtaining and identifying discovery to assist the

Defendant.  *See* "Government's Motion for Appropriate Relief re Discovery ("communications from defense counsel appear, in various instances, to be primarily performative—seeking a written response from the Government to attach as an exhibit to a Court filing rather than as a bona-fide good-faith request to obtain information for use in Mr. Masood's defense.")  ECF 383 at 4.  The defense and Government counsel could have and should have resolved this issue on their own.  We interpret this district's rules to require the parties to at least attempt to do so.  The defense says they required help understanding a dataset but curiously went to the Court *in the first instance* for an order and leave to file more motions to compel in the future.   After receiving notice, the Government was able to resolve the issue efficiently to the satisfaction of the defense.

### b. Relativity database size

The defense also argues that the time required to review 3.62 terabytes of data underlying Relativity files from various device downloads also justifies holding open the deadline for defense motions to compel until that review is complete.  The Government provided the Relativity database in late August and again in Discovery 5, with a cover letter dated September 3, 2024.  The full 3.62 terabyte download apparently was delivered to defense on October 9, 2024 after defense shipped U.S. Army CID an empty hard drive and then U.S. Army CID returned that hard drive to defense with the full device downloads included.

At the time the trial schedule was set, it was understood that defense would require significant time to review this data, which is the primary reason the trial was delayed until March 17, 2025.  The timeline was understood by all parties when setting the trial schedule and the motions to compel deadline, and is not a reason to hold the door open to additional motions to compel while that review is ongoing.  The 3.62 terabytes of data that were "finally made available to counsel for Mr. Masood", ECF 309 at 2, "after substantial back and forth", *Id.* at 6, (*i.e.,* the hard drive arrived back to defense

in the mail after a very short period of time), ECF 309 at 2, were never intended to hold open the door to limitless defense motions.

### c.  Filter review documents

Related specifically to item 4, the defense team describes "significant misgivings" about the timeline of the filter review conducted by the Government and accordingly requests leave to file additional motions to compel regarding the filter team process. *Id.* at 10.  The defense provides no detail about what "misgivings" they may have.  Any inquiries into the timeline of the filter team necessarily involves review of sensitive internal Government communications.  Questions regarding the filter team are with the Court—where they should stay.

### d.  Google search warrants and returns

Defense counsel wrote that they have "been unable to confirm that they have received the underlying data" from Google search warrant returns.  ECF 309 at 10.  The full returns were provided to current defense counsel on September 4, 2024 ("Discovery 5") via FedEx with tracking confirming delivery.  Upon request on October 16, 2024, the Government is reproducing Discovery 5.  Once again, this issue need not have come to the Court's attention and was easily resolved between the parties.

### e.  SA Kimrey's Jencks Emails

Defense counsel appears to assert that SA Kimrey should not be allowed to review his own communications for Jencks material based on a presumption that he suppressed various emails that should have been in the initial Jencks production on August 16, 2024.  *See* ECF 309 at 6-9.  The defense alleges that "Substantial Reasons Exist to Believe the Government May Still Be Suppressing" SA Kimrey's Jencks materials.  ECF 309 at 6.

SA Kimrey, in addition to conducting his own search for Jencks material, provided counsel for the Government with a large download of his emails from the Microsoft Outlook email

application in a .pst file type (similar to .pdf but primarily accessible through Outlook or file reviewing programs such as Relativity).  Counsel for the Government attempted to upload this .pst file to USAfx (the Government's file transfer system) for defense counsel as part of the initial Jencks production and believed they had.  Around that time, successor counsel had just joined the case, made their own discovery requests and the Government was attempting to re-produce various discovery items requested by new counsel while engaged in trial preparations.  Government counsel could not confirm this .pst file had been produced in advance of its "Affirmative Representation" October 4, 2024, deadline and so reviewed and converted the relevant emails in the .pst file to .pdf for ease of viewership and included them with its October 4, 2024 production.

Defense counsel all-too-casually alleges misconduct or suppression where none exists, and to the extent there is any fault, it lies with government counsel, not with SA Kimrey.  The defense's irresponsible and unprofessional conduct toward SA Kimrey are addressed in more detail below, and if suffices to say he is fully qualified to assist with discovery productions.  The production of these emails is a non-issue that created no prejudice and was again quickly resolved by Government counsel.

## II.  Items Six, Seven, Eight, and Eleven (ECF 310)

Counsel for defense addressed items six, seven, eight, and eleven in its "sufficient information" motion to compel  on October 11, 2024 (ECF 310) "Motion to compel discovery items in joint status report that remain outstanding and for which the Government has produce sufficient information for Mr. Masood's counsel to *effectively* brief the issues." (emphasis in original).  Those items are:

- Six: native versions of Excel files about several electronic devices seized from Harriett Jackson and Michelle Peebles and returned to them
- Seven: Internal Revenue Service Investigative Reports
- Eight:  Loudoun County Sheriff's Office Interview Video Status

- Eleven: Information Related to Decisions not to Charge Barbara Rosas and Marlon Johnson

The Government opposes each of these motions to compel or believes all available information has already been produced to defense.

### a. Item Six: Native versions of Excel files about several electronic devices seized from Harriett Jackson and Michelle Peebles and returned to them:

The defense alleges that the Government is withholding native versions of two excel files which were discussed at the August 29, 2024 evidentiary hearing.  These two presentations were discussed and entered as evidence for purposes of an evidentiary hearing on August 29, 2024 and were labeled Government's Exhibit 7 and Government Exhibit 10.

Government Exhibit 10 was created by IT specialist Mark Johnson, a Government forensic examiner, in 2022 to help him track his work as he imaged devices seized from the homes of defendants Harriet Jackson, Michelle Peebles, and Akbar Masood.  SA Kimrey testified that he did not create this document.  Mark Johnson testified that he had.

Government Exhibit 7 was created on August 28, 2024 by SA Joshua Kimrey in collaboration with Government counsel to assist the Court as it reviewed the chain of custody of the devices.  Both sides and the Court referred to Exhibit 7 repeatedly throughout the proceedings (suggesting Exhibit 7 did its job).  Mark Johnson played no part in the creation of this document.

It is unclear exactly what the defense believes combing through drafts of visual aids will reveal.  The defense speaks about what the Government should have done with the devices themselves, but never explicitly states what benefit drafts of summary charts would serve. This is a classic fishing expedition, a question built on innuendo, with the hope that it gives the defense something else to litigate.

These were two documents created by two authors for two different purposes.  Both of those authors testified to their own creation of the documents.  In the absence of any evidence and presented with clear and unambiguous testimony under oath, the Court should end this line of inquiry.  The defense has described the drafts as "likely" containing Brady, ECF 310 at 8, but has not tethered that statement to anything whatsoever.  The cases cited by the defense make the point that if *actual, demonstrable* Brady material exists, it should be disclosed despite any claim of work product privilege.  *See, Goudy v. Cummings*, 922 F.3d 834, 839 (7th Cir. 2019); *U.S. v. Kohring,* 637 F.3d 895 (9th Cir. 2011).  As an example, in *Kohring*, a potentially exculpatory fact was located in an email containing a prosecutor's impressions of the evidence.  The Court held that the fact itself—not the email itself—should be disclosed if the fact was not cumulative of evidence already disclosed.  637 F.3d at 907.  These cases do not support the defense's rummaging and do authorize naked fishing expeditions cloaked in Brady/Giglio claims.

The Government cannot say what the defense hopes it might find in drafts of documents unambiguously claimed by their creators in court.  Perhaps the defense itself does not know.  What is clear is that drafts of these excel files are not Brady/Giglio, and are not otherwise discoverable.  This request should be denied.

### b.  Item Seven: Internal Revenue Service Investigative Reports

The Court should deny the defense's request for IRS investigation reports.[2]  The IRS declined to join the prosecution team after determining that the tax losses involved would not warrant their expenditure or resources.  IRS Special Agent Avvab Ashar participated in a proffer of Harriet Jackson and engaged in limited review of documents provided by the Government for the purpose of determining whether to join the prosecution.  This involvement was exploratory,

---

[2] The defense appears to no longer seek tax returns for either Harriet Jackson or Michelle Peebles.  *Compare* ECF 272 (Joint Status Report) and ECF 310 (Motion to Compel).

minimal, and brief. "Prosecutors are not required to provide documents and things 'possessed by agencies which had no part in the criminal investigation or when the prosecution had no control over the agency officials who physically possessed the documents." United States v. Brodnik, 710 F. Supp. 2d 526, 544 (S.D.W. Va. 2010).

The IRS, much like the U.S. Attorney's Office, must gather facts underlying a prospective prosecution and review documentation before deciding whether to accept a case. This information generally comes from the investigating agency. That, for a brief time, members of the prosecution team such as SA Kimrey provided documents to help SA Ashar make a decision to prosecute or not prosecute under the tax code does not bear on the question here of whether, under *Kyles v. Whitley*, 514 U.S. 419 (1995), the IRS was part of the prosecution team. They plainly were not, and neither the U.S. Attorney's Office nor the IRS considered the IRS to be part of the prosecution team or proceeded as if they were. As further evidence that the IRS is not part of the prosecution team: SA Ashar has advised the Government that they will not provide any further information obtained as part of their limited investigation in this case to the Maryland U.S. Attorney's Office, even if requested.

### c. Item Eight: Loudoun County Sheriff's Office Interview Video Status

Defense counsel requested any audio or video recordings held by the Loudoun County Sheriff's Office ("LCSO") of Government witness Marlon Johnson making his initial whistleblower complaint. The Government inquired on September 3, 2024, with the LCSO about any recording of this interaction and received notice from the Video Systems Supervisor Galvin Boward that no video files were found of Mr. Johnson on their server.

The Government learned, through this motion to Compel filed on October 11, 2024, that the defense had further questions about whether such audio or video had at one time existed and

had been deleted and whether the Government could inquire with LCSO if audio or video recordings existed of follow-up interviews with Marlon Johnson at which LCSO officers were present.

The Government, through SA Kimrey, followed up with LCSO regarding these questions. LCSO Sergeant Matthew Bucco reported in response to SA Kimrey that he did not find any mention of a recording in the archives and did not find any in the "HQ interview room(s) software" Ex. 2. Galvin Boward reported separately to SA Kimrey that he had done a "more in-depth search for video" of LSCO Officer Juan Vargas, the officer who initially took Marlon Johnson's report, and found nothing in the files. Ex. 3. Mr. Boward also searched for any video files for Detective Charles Perinis who had conducted follow up discussions with Mr. Johnson. Again, no video files were found. Ex 3. It is the Government's understanding that Detective Perinis wears a suit and tie to work and is not issued a body camera. Additionally, it is the Government's understanding that additional interactions between LCSO took place at the Infused office and not in an interview room. It makes sense, then, that there would be no video recordings of these interactions.

The Government believes it has answered all outstanding questions from the defense regarding LCSO and will follow up if they have more. This issue need not have come to the Court's attention and could have been easily resolved between the parties.

### d.  Item Eleven: Information Related to Decisions not to Charge Barbara Rosas and Marlon Johnson

The defense is taking the rather remarkable step of requesting internal deliberations that exist regarding decisions to charge or not charge an individual. This request would necessarily involve opening up prosecutors' communications for a scavenger hunt by the defense team and should be denied for several reasons.

As an initial matter, such communications are not Rule 16 discovery.  Rule 16(a)(2) states: "Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500."

What remains, then, is that such communications are disclosable because they are Brady or Giglio material.  The defense cites various inapposite cases involving formal agreements between the Government and an individual for things such as cash payments for testifying or plea-bargaining concessions.  ECF 310 at 14.  If any such documents existed relevant to Barbara Rosas or Marlon Johnson, they would have already been disclosed.  The defense goes several steps further and seeks internal communications, presumably between prosecutors, regarding charging decisions in this case.

The prosecution's internal decision-making about who to charge in this case does not implicate the Defendant's substantive rights under Brady/Giglio.  Existing discovery obligations would require disclosure of any offers, benefits, or other agreements between the Government and witnesses—these do not exist.  Setting aside the speculative Brady/Giglio basis for the defense's request, such information is not discoverable due to various privileges as well as the plain language of Rule 16.  This request should be denied.

### III. Item Ten (ECF 262, 284, and 313)

Counsel for the defense addressed item ten in three separate filings, ECF 262 (Motion to Compel the government to produce as Jencks the email attachments to Agent Josh Kimreys' Emails by no later than 2 PM on August 28, 2024"), ECF 284 ("Supplement to ECF

262), and ECF 313 (Supplement to 284 Supplement).  All these motions to compel deal with two Powerpoint presentations created by SA Ryan Goins, the previous lead case agent preceding SA Joshua Kimrey that are currently with the Court for *in camera* review.  One was attached to an email sent by SA Kimrey (the "DOJ presentation") and the other was referenced as an enclosure in an interview report with SA Barbara Rosas on December 11, 2020 (the "Enclosure presentation").

The defense has argued that (1) SA Kimrey adopted as his own Jencks the DOJ presentation because when he sent it, he referred to the presentation as a "good" summary of the case.  ECF 262 at 1.  The slides in question were drafted by SA Ryan Goins before this case was accepted by the U.S. Attorney's Office.  For a witness to have adopted a statement such that it becomes the witness' own Jencks requires much more than characterizing it as "good."

For example, when an Agent takes notes of a witness' statements during an interview, the notes do not become the witness' adopted Jencks unless the agent actually reads back what he wrote to the witness and the witness expressly adopts it. *See United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996). Without that evidence, a report does not become the witness' Jencks. *Id.* "To adopt a statement under the Jencks Act, on the other hand, a witness must read the entire statement and formally approve the statement. Otherwise, the witness could be impeached with a statement to which he did not agree." *United States v. Beckford*, 962 F. Supp. 780, 796 (E.D. Va. 1997). That plainly did not happen here.

In ECF 284, the defense listed a series of journal entries made by SA Kimrey that reference Powerpoint presentations in various contexts.  ECF 284 at 1-2.  They argue that these statements somehow prove that SA Kimrey drafted presumably the DOJ presentation.  Importantly, while all

the journal entries contain the word "power point" or "presentation" they importantly do not say anything about SA Kimrey creating the presentations.  Key excerpts from those entries:

- "A powerpoint presentation was drafted by SA Smith, NCIS who painted the picture pretty well but still missing a couple items."  (October 29, 2020)

- "[r]eviewed PowerPoint presentation" (December 9, 2020)

- "reviewed *and made recommendations* for the Powerpoint" (emphasis by defense) (December 10, 2020)

- [p]rovided [AUSA Moore] with a power point" (December 10)

Not only do these entries not suggest SA Kimrey created any Powerpoint at all, they don't even specify *which* Powerpoint he's referring to.  They might as well say "shared document".  The defense's argument precedes from the premise that in the entirety of the U.S. Government there exists only a single Powerpoint presentation.  The contortions necessary get from A to B using defense's chain of inferences would make a gymnast blush.

In ECF 313, the defense makes the equally non-sequitur argument.  They point to an email from Government witness Barbara Rosas which suggests she may have seen one or more of the slides within the Enclosure presentation in 2020, and that somehow this makes the Enclosure presentation SA Kimrey's Jencks.  Because Barbara Rosas talked about something "that you had in your PP" in an email to both SA Kimrey and SA Smith, the defense argues that SA Kimrey conclusively must have drafted it, notwithstanding testimony to the contrary, the fact that the email from Rosas contained more than one recipient, and the many interpretations of the word "your", which could simply be a recognition that the Powerpoint slide to which she's referring came from the U.S. Government.

Neither presentation is SA Kimrey's Jencks.  What they are—and what the Court can plainly see from it's *in camera* review—is protected work product of a non-testifying law enforcement officer.  There is no evidence that SA Kimrey created these presentations or formally adopted them, which is the legal standard.  To deem them SA Kimrey's Jencks based on the defense's tortured logic would result in a situation in which "the witness could be impeached with a statement to which he did not agree." *Beckford*, at 796.  This motion to compel should be denied.

## IV. Item Thirteen (ECF 286)

The defense asks the Court to compel the Government to provide the legal instructions it gave the Grand Jury in ECF 286, "Akbar Masood's Motion to Compel Government to Produce the Legal Instructions it Provided to the Grant Juries or, in the Alternative, to Submit Those Instructions for *In Camera* Review.   The defense argues, essentially, that the Government erroneously represented through Agent Kimrey's Grand Jury testimony (and—they suggest—also through the legal instructions provided to the Grand Jury) that Walter Reed National Military Medical Center ("Walter Reed") and its parent agency, the Defense Health Agency ("DHA") are health care benefit programs as defined by 18 U.S.C. § 24(b).  That section defines a health care benefit program broadly as:

> "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract."

18 U.S.C. § 24(b).  The defense proceeds to make various *legal* arguments about why Walter Reed is not a health care benefit program under that legal definition.   The defense's purported "particularized need" to pierce the secrecy of the Grand Jury is to uncover whether the Government instructed the Grand Jury in accordance with the defense's legal interpretation of 18 U.S.C. § 1347

and, by extension, its reading of the definition of health care benefit program contained in 18 U.S.C. § 24(b).

The Government invites the defense to repeat the legal arguments put forward in ECF 286 in a motion to dismiss—the proper vehicle for the defense's arguments. The Government is clearly of the belief that the extremely broad definition of health care benefit program in this case includes Walter Reed/DHA, and is prepared to brief this issue fully should the defense choose to file a motion to dismiss based on their own reading of the statute.

### a. The defense fails to establish the particularized need necessary to pierce the secrecy of the Grand Jury.

#### i. Legal Framework

The Fourth Circuit places on defense high burden of showing a "particularized need" to compel Grand Jury materials that outweighs the policy interests in favor of Grand Jury secrecy. *See United States v. Anderson*, 368 F. Supp 1253, 1262 (D. Md. 1973) ("Fourth Circuit cases which deal with this question make it clear that this Court should apply the traditional test of "particularized need" to the motions here in question." *citing United States v. Johnson*, 419 F.2d 56 (4th Cir. 1969); *United States v. McGowan*, 423 F.2d 413 (4th Cir. 1970)).

The principle of grand jury secrecy dates back to the 17th century and has been described by the Supreme Court as "an integral part of our criminal justice system." *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 & n.9 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."). Fed. R. Crim. P. 6(e) establishes a strong general presumption in favor of preserving grand jury secrecy, while laying out only limited exceptions. Relevant here is Rule 6(e)(3)(E)(ii), which provides that the court may authorize disclosure of matters occurring before

the grand jury "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."

The law presumes, absent a strong showing to the contrary, that a grand jury acted within the legitimate scope of its authority. *United States v. R. Enters., Inc.*, 498 U.S. 292, 300–01 (1991); *see also United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring) (explaining that the presumption of regularity accorded to grand jury proceedings "generally may be dispelled only upon particularized proof of irregularities in the grand jury process"). Thus, it is well-established that a defendant seeking disclosure of grand jury material must make "a strong showing of particularized need" for disclosure in order to overcome the presumption in favor of grand jury secrecy. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983) (emphasis added); *Douglas Oil Co.*, 441 U.S. at 222; *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-THE, 2015 WL 3958111, at *8 (N.D. Cal. June 29, 2015). Mere "unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the 'particular need' required to outweigh the policy of grand jury secrecy." *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980) (citations omitted); *see also United States v. Saffarinia*, 424 F. Supp. 3d 46, 81 (D.D.C. 2020) ("[M]ere suspicion that the grand jury may not have been properly instructed with respect to [a] legal definition . . . is insufficient to establish that [the defendant] is entitled either to dismissal of the indictment or to disclosure of grand jury materials") (citation omitted). Nor will a court review the minutes of grand jury testimony based upon a general claim that the evidence was insufficient to support the indictment. *United States v. Cuevas*, No. 88 CR. 1012 (SWK), 1989 WL 28461, at *2 (S.D.N.Y. March 23, 1989). Furthermore, "[e]rroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment." *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982). Instead, the movant must make a showing that there is a substantial

likelihood of gross or prejudicial irregularities in the conduct of the grand jury. *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972).

### b.  The Defense's Arguments are at Odds with the Legal Standard

The defense argues that a "sliding scale" approach demonstrates "some real need" for disclosure because the Government's purported misstatement of the law and "false" testimony may have "induced the [grand jury] to wrongly believe that Walter Reed is a 'health care benefits program.'"  ECF No. 286, at 8–10.  The defense cites *In re Grand Jury Proceedings* GJ-76-4 and GJ-75-3, where the Court stated that "[t]he strength or weakness of the need for secrecy will . . . determine how strong . . . the justification for disclosure [must be]." 800 F.2d 1293, 1299 (4th Cir. 1986).  Importantly, that case involved the request of disclosure of proceedings which concluded over *eight years earlier.  Id.* at 1295–97.

Many federal district courts have rejected the idea that Grand Jury legal instructions given by the Government should be subject to routine disclosure and have declined to order the Government to produce them.  *See, e.g., United States v. Barry*, 71 F.3d 1269, 1274 (7th Cir. 1995) (rejecting defendant's contention that grand jury instructions were ministerial in nature and did not fall within the scope of grand jury secrecy); *United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986) (refusing to require the Government to produce grand jury instructions because "[c]hallenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face"); *United States v. Zhitlovsky*, No. 03-40032-01-SAC, 2003 WL 21939024, at *2–3 (D. Kan. July 29, 2003) (rejecting defense's bid for disclosure of grand jury instructions as "nothing more than a desire to set out on a fishing expedition in the hope of finding something useful in attacking the indictment"); *United*

*States v. Abrams*, 539 F. Supp. 378, 388–89 (S.D.N.Y. 1982) (declining to order production of grand jury instructions and finding that the prosecutor's declination to do so "was quite proper").

This ongoing and very much active criminal case presents significant continuing reason to maintain the secrecy of the Grand Jury. Discussions about the elements of the charged offenses between the prosecutor and individual grand jurors may reflect aspects of the grand jurors' deliberations and reasoning, which is material that falls within the core zone of confidentiality that grand jury secrecy seeks to protect. *United States v. Navarro-Vargas*, 408 F.3d 1184, 1200 (9th Cir. 2005) (noting that "[t]he grand jury's discretion—its independence—lies in two important characteristics: the absolute secrecy surrounding its deliberations and vote and the unreviewability of its decisions."); *see also Pac. Gas & Elec. Co.*, 2015 WL 3958111, at *13 (N.D. Cal. June 29, 2015) (observing that "the Court does not believe that the legal instructions provided to the grand jury are necessarily separate from the substance of the grand jury's deliberations").

For these reasons, this Court should apply the well-established standard of particularized need to the defense's request for the Government's jury instructions. In evaluating whether the defense has made a sufficient showing of particularized need, the Court must determine whether the defense has shown that the violation he accuses the Government of substantially influenced the grand jury's decision to indict, or that there is at least grave doubt that the grand jury's decision to indict substantially influenced by the violation. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).

### c. The Defense cannot Demonstrate any Need to Compel Grand Jury Instructions

Given the legal standard and the positions of the parties, the defense cannot make out any prejudice or need whatsoever for the legal instructions provided to the Grand Jury. If the defense is correct, a motion to dismiss seeking a legal determination that Walter Reed/DHA is not a "health

care benefit program" within the broad definition of 18 U.S.C. § 24(b) will result in that part of the indictment being dismissed, resulting in no prejudice to the defendant whatsoever and therefore no need.  If, as the Government is prepared to argue, Walter Reed/DHA is a "health care benefits program" under 18 U.S.C. § 24(b), then there is also no prejudice as the indictment would be facially valid.  The defense should make any arguments they have for dismissal based on their legal arguments in a motion to dismiss.  This motion to compel should be denied.

## V.     Defense's Unprofessional Conduct

The Government feels compelled to object to the inappropriate and unwarranted criticism that defense counsel continues to make against U.S. Army Criminal Investigations Division Special Agent Joshua Kimrey in nearly every filing since the parties' August 29, 2024 evidentiary hearing.  The Government has been shocked—a word Government counsel does not use lightly— at the cavalier way with which defense counsel accuses SA Joshua Kimrey of gross misconduct without any substantiation; as the Court is aware, accusations such as these, whether made in open court or in public in filings, can irreparably stain a law enforcement officer's career.  Curbing our own strong feelings on this issue, and giving the defense the benefit of the doubt on their motivations, their conduct is, at best, a misguided desire to zealously advocate for their client.  Even if this is their motivation, their conduct has been irresponsible and unbecoming of officers of the Court.

During a contentious evidentiary hearing on August 29, 2024, during a lengthy cross-examination, SA Kimrey and defense counsel Eugene Gorokhov appeared to be speaking past one another.  At a sidebar with counsel discussing the exchange, the Court expressed frustration that SA Kimrey was "playing games" and should have answered a certain question posed to him.  ECF 271, 8/29/24 Tr. at 158:24 – 159:3.

The Court made this comment in passing toward the end of a contentious day-long hearing. However, defense has apparently taken this comment as a finding of fact and as carte blanche license to cast aspersions on SA Kimrey in every filing since August 29, 2024 in grossly irresponsible ways. A collection of those comments is summarized here:

- ECF 282 (September 13, 2024): Citing Court observations that SA Kimrey "was 'playing games' when he testified and has 'a credibility issue.'" [3]

- ECF 284 (September 16, 2024): Again quoting the Court as "observing that SA Kimrey was 'playing games' and that he has 'a credibility issue.' *Id.* at 3.

  - "The Court should take into account . . . SA Kimrey's willingness to contort the facts and parse words while testifying under oath." *Id.*

- ECF 286 (September 19, 2024): "Before each grand jury, SA Kimrey gave false testimony." *Id.* at 1.

- ECF 309 (October 11, 2024): "Given SA Kimrey's inconsistent and seemingly misleading representations about his investigation of the case, the Court ordered the disclosure of the ALERTS database, which was produced on September 5." *Id.* at 5.[4]

---

[3] Importantly this is a deceptive and apparently deliberate misquotation of the Court's actual statement. Defense states that the Court **found that SA Kimrey "has a 'credibility issue'"** (selectively quoting the Court). The Court was referring generally to the proposition that SA Kimrey's answering of questions regarding the investigation would be considered "a credibility issue" in the Court's determinations of fact. The Court's actual statement was: "Maybe it's not, you know, textbook question, but commonsense, you know, like, he's a smart guy. You know where this is going. So that's how I'm seeing it, as a credibility issue. And – and so I'm not sure, like, what question do you want Mr. Gorokhov to pose to him, to get to this answer? Did you document it or not, unless you want me to ask about it?" ECF 271, 8/29/24 Tr. at 159:4 – 159:10.

This is important because a Court's statement that a federal law enforcement agent **has a credibility issue** would have significant lasting consequences for that agent's ability to testify in any future proceedings and thus continue in law enforcement at all. This simply did not happen, and it is disingenuous for defense counsel to splice the Court's statements to suggest that it did.

[4] This is again a misrepresentation suggesting that the Court ordered SA Kimrey to produce his Alerts journal entries because of his "inconsistent and seemingly misleading misrepresentations." It was ordered because the testimony about the devices revealed that the Alerts journal entries might document instances of a device being inaccessible because of a password issue. *See* ECF 271, 8/29/24 Tr. at 166:10– 166:21.

- o Discussing Government "suppression" in referring to SA Kimrey's unsuitability to find his own Jencks material.  *Id.* at 6-7.

- o "It appears that counsel for the Government continues to rely on SA Kimrey to produce materials according to the Government's obligations under Jencks, Rule 16, and *Brady/Giglio* despite his admitted lack of qualification to do so."  *Id.* at 7.

- o "These circumstances leave no question that SA Kimrey cannot be relied on by the government to comply with its disclosure obligations in this case."  *Id.*

Defense counsel no doubt believes that undermining the credibility of the case agent who investigated its client will benefit their case and has taken a scorched-earth approach to accomplish that goal.  These are experienced counsel and none of this is inadvertence; their conduct is reckless and unprofessional, and unchecked by the Court could do irreparable harm to SA Kimrey's law enforcement career.  Government counsel can more easily turn the proverbial other cheek when attacked themselves, but it is difficult to do so with regards to SA Kimrey who has no voice in pretrial litigation proceedings.  These attacks in particular warrant raising with the Court.

## VI.     Conclusion

For the foregoing reasons, the defense's motions to compel lack merit and the motions in ECF 262, 286, 309 and 310 should each be denied.  The Government submits that the motions can be resolved on the briefs and, barring questions from the Court, no hearing is necessary.


Respectfully submitted,

Erek L. Barron
United States Attorney

/s/ Darren S. Gardner
Darren S. Gardner
Ranganath Manthripragada
Assistant United States Attorneys
United States Attorney's Office
6500 Cherrywood Lane, Suite 200
Greenbelt, MD 20770

## <u>CERTIFICATE OF SERVICE</u>

I, Darren S. Gardner, certify that a copy of the foregoing was filed with the Clerk of the

Court using the CM/ECF system, which will send notice of such filing to all counsel of record, on

October 18, 2024.

/s/ <i>Darren S. Gardner</i>          
Darren S. Gardner
Assistant United States Attorney

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. PX-22-091** |
| | * | |
| **AKBAR MASOOD,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | ******* | |

## <u>ORDER</u>

For the reasons set forth in the Government's Consolidated Opposition to Defense Motions to Compel, the defense's motions to compel in ECF numbers 262, 286, 309, and 310 are denied.

Dated:

_____
Honorable Paula Xinis
United States District Court Judge