```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                        SOUTHERN DIVISION

 3      UNITED STATES OF AMERICA, )
                                  )
 4               vs.              )    CRIMINAL CASE NO.
                                  )    8:22-cr-00091-PX
 5      AKBAR MASOOD,             )
                    Defendant.    )    Courtroom 2C
 6      _____  )    Greenbelt, Maryland

 7                         MONDAY, JANUARY 27, 2025
                          TRANSCRIPT OF PROCEEDINGS
 8                            MOTIONS HEARING
                     BEFORE THE HONORABLE PAULA XINIS
 9

10      For the Government:

        Darren S. Gardner, Esquire
11      Joel Crespo, Esquire
        Ranganath Manthripragada, Esquire
12       US Attorney's Office
         6406 Ivy Lane, Suite 800
13       Greenbelt, MD 20770

14      For the Defendant:

15      Eugen Gorokhov, Esquire
         Burnham & Gorokhov, PLLC
16       1634 I Street, NW, Suite 575
         Washington, DC 20006
17
        Daniel H. Goldman, Esquire
18       Law Office of Daniel Goldman, PLLC
         421 King Street, Suite 505
19       Alexandria, VA 22314

20      Joshua D. Greenberg, Esquire
         Law office of Joshua Greenberg, PLLC
21       1717 K Street, NW, Suite 900
         Washington, DC 20006
22
        Also Present:  Joshua Kimrey, Special Agent
23      _____
               (Computer-aided Transcription of Stenotype Notes)
24            Reported by: Amanda L. Longmore, RPR, FCRR
                    Federal Official Court Reporter
25               101 W. Lombard Street, 4th Floor
                    Baltimore, Maryland  21201
```

Motions Hearing 1/27/25

|   |   |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | (10:01 a.m.) |
| 3 | MR. GARDNER:  The Government calls United States |
| 4 | versus Akbar Masood, Criminal Number PX-22-91.  AUSA Darren |
| 5 | Gardner on behalf of the United States.  With me at counsel |
| 6 | table is AUSA Joel Crespo and AUSA Ranganath Manthripragada, as |
| 7 | well as Special Agent Joshua Kimrey. |
| 8 | THE COURT:  Okay.  Good morning. |
| 9 | MR. GOROKHOV:  Good morning, Your Honor.  Eugene |
| 10 | Gorokhov here on behalf of Mr. Akbar Masood, who is present. |
| 11 | Also for Mr. Masood, Dan Goldman and Josh Greenberg, Your |
| 12 | Honor. |
| 13 | THE COURT:  Okay.  Good morning.  Just give me one |
| 14 | second. |
| 15 | All right, counsel.  Just to give you a heads up, I am |
| 16 | going to focus almost exclusively today on ECF 330, and I'm |
| 17 | going to start with noting that I do believe the communications |
| 18 | regarding the filter team which were provided to me in camera |
| 19 | to make a very narrow finding which was a bad-faith finding, |
| 20 | which I find there was no bad faith, are now squarely relevant |
| 21 | to this motion, and I have absolutely no choice in my view but |
| 22 | to disclose those e-mails to the defense. |
| 23 | And so Ms. Ionetz has a binder for both of you of those |
| 24 | e-mails, and the grounds for it is because, as the case law |
| 25 | which the Government really didn't address in their motion, and |

1    I'm hoping will talk to me about it today because it wasn't in

2    your PowerPoint either, and I do not need a PowerPoint that

3    basically takes your pleading and puts it in a screen in front

4    of me because that's not helpful.

5        But the case law that says if I do find a Speedy Trial Act

6    violation, I'm allowed to consider the facts and circumstances

7    of that violation, as well as the representations

8    contemporaneously that were made to the Court along the way,

9    and the square issue that was before the Court throughout this

10   case and is the main event today is the diligence or lack

11   thereof of the Government in getting these devices imaged,

12   uploaded, reviewed, and back to the defense.

13       That's what these e-mails concentrate on.  There's no

14   real -- there's maybe one report from Special Agent Kimrey

15   which is his Jencks, an offhanded reference here or there to

16   what the Government may be doing to prepare for trial, but the

17   nut of it is getting those devices uploaded -- imaged,

18   uploaded, and reviewed.

19       And when I lay out the timeline because, Government, you

20   raised it in the response what the significance of my finding

21   was, you gave me really not a whole lot of room to not go back.

22   And the defense keeps asking, well, let's just get one fact

23   clear, Judge.  When did the taint review start and when did it

24   end?  And the e-mail shows that the taint review started, as

25   far as I can tell, on November 16, 2023, and ended like that

1    day, if not a couple days later.  This was a very quick

2    process.

3        So for that reason, you all are getting the e-mails and

4    you'll have them today in a binder because I want to talk about

5    what happened from the first representation to the Court about

6    the significance of these devices, and the need to get them

7    uploaded and imaged until the day we were in court some 22

8    months later or more -- forgive my math -- and the Government

9    still had not produced those to the defense.  So you get them.

10   That's number one.

11       Number two, Government, you do not deal at all with the

12   jurisprudence on the question of whether a Speedy Trial Act

13   violation has occurred.  You blow by completely Keith, Zedner,

14   and every District Court opinion that has wrestled with whether

15   we as District Judges can make nunc pro tunc findings.

16       You spent a lot of time telling me why the defense is

17   estopped and why they have unclean hands and why they're

18   playing dirty pool, but not once do you deal with the law.  And

19   that law is critical because, by my count, which of course you

20   do not deal with, you tell me that all this time is excluded,

21   you don't respond to the defense.  The defense says, no, Judge,

22   you can't retroactively nunc pro tunc grant exclusions of time,

23   and they break it out.  And for the most part, I think their

24   math is right.  Which means the first question that the

25   Government has to respond to is, is there a Speedy Trial Act

1    violation if, in fact, I follow the law and I cannot exclude

2    the nunc pro tunc, the retroactive days.

3         Do you all understand what I'm talking about here?  Yes?

4              MR. GARDNER:  Yes, Your Honor.

5              THE COURT:   Okay.  So by my count, the first motion

6    there was 27 days, this is the motion to toll at ECF 91.  Once

7    that motion was granted, there were 27 days retroactively

8    excluded.

9         The second motion -- this is my count, you may disagree a

10   day or two, but that went from -- that tolling motion went from

11   May 6th to August 6th but it was not filed until later, I

12   believe.  Let me see.  No, I'm sorry.

13        May 6th to -- I counted 27 days retroactively excluded in

14   the first motion because the defendants had their initial

15   appearance on April 7, the motion wasn't filed until May 6, so

16   all that time between April 7 and May 6 is not counted.  So

17   maybe it wasn't in the motion but it's not counted, so we got

18   27 days there.

19        The next one I have is the tolling from August until

20   October of 2022, where six days were retroactively excluded.

21   So 27 plus 6 is 33.

22        The next motion which was filed on December 2nd asked to

23   toll from October 22nd to December 22nd -- 27 to December 22nd.

24   I count 35 days of retroactive time.  So 6 plus 35 is 41 plus

25   27 is 68.

1    And then the order that was filed on February 17 -- this
2    is all before any pretrial motions were filed -- February 17
3    which asked to exclude from December 22nd to February 16 is an
4    additional 56 days.
5        We're well beyond the 70 days at this point.  So in my
6    view I don't really have to wrestle -- tell me if I'm wrong,
7    defense, I think the math is right, but because if I'm wrong
8    then I have to reach certain issues about conceding motions and
9    how we do with all that.  At that point there's a Speedy Trial
10   Act violation.
11       Government, what do you say about that?  Because you don't
12   address any of the case law on this in your pleadings.  So what
13   do I do with Keith?  Keith, the Fourth Circuit says can't make
14   nunc pro tunc findings.
15           MR. CRESPO:  Yes, Your Honor.  I think -- so in
16   preparing for this hearing we prepared, based off of our
17   pleadings obviously, and --
18           THE COURT:  Right.  And the pleadings weren't
19   responsive, so I don't know who wrote it, but the pleadings
20   weren't responsive to the defense.  The defense raised all of
21   these cases, Gabrielian, Judge Bredar's case, Judge Griggsby's
22   case in reply, all of those cited Keith.  How can I make
23   contemporaneous findings retroactively?  I can't, so what do I
24   do with that?
25           MR. CRESPO:  Yes, Your Honor.  Well, if we -- if the

Motions Hearing 1/27/25

1    Court is okay with it, we'd -- would give us a little time to

2    discuss while we're reviewing the materials, we'd be able to

3    provide a response, Your Honor.

4              THE COURT:   Well, you had the time to respond.   You

5    know, this pleading was so vexing to me.   You spent 46 pages,

6    most of those telling me why Mr. Masood is estopped and when

7    you go to -- go back and listen to the recorded calls that I

8    had, your own AUSA was conceding, was actually telling me that

9    the defense was right, there was a need to get those phones.

10   In fact, by April of 2024, Mr. Ake was telling me, maybe they

11   got this case kind of wrong in that it was less about fraud and

12   more about tax evasion.

13        Now, you weren't specific did that apply to Mr. Masood or

14   not, but you can't tell me that Mr. Masood has unclean hands

15   because he's trying to both prepare for trial, which you knew

16   about in early 2024, by May of 2024 you all are on a call with

17   me telling me this case is going to trial.

18        You can't at once tell me he's got unclean hands, he's

19   been trying to game the Government and then not tell me about

20   the fact that the devices were in limbo for 18 months.   That's

21   just -- so you give me this pleading that is just wholly

22   unhelpful.   And the hearing is today.

23        So this is what the cases say.   They say that I can't make

24   just as a matter of course retroactive findings.   That's what

25   these are, right?   I mean, you got the time from which the

1    date, you know, the order is signed until the exclusionary

2    period where the ends of justice findings were made, put a pin

3    in the fact as to whether those still hold water because they

4    were based on representations that were not wholly accurate,

5    okay?  Because that's the second question we're going to talk

6    about.

7         But just assume for a second I give you those, I give you

8    from the date of the order until you've asked to toll making

9    ends of justice findings.  How can I say that those same orders

10   can go backwards when I have to make contemporaneous findings?

11   And if you ask me to do it today, you're going to have problems

12   with that know that I know what I know.  We can talk about that

13   because that may be the only other sliver of daylight that the

14   courts provide, which none of my colleagues have really

15   credited, but in this particular case we can get into the facts

16   a little bit more, but -- so where do you want to start?

17             MR. CRESPO:   May I confer with my counsel for one

18   second, Your Honor?

19             THE COURT:   Sure.

20        (Pause in Proceedings.)

21             MR. CRESPO:   Your Honor, I think -- so in looking at

22   the pleading and obviously responding to it, we knew that

23   there's been changes in patterns and practice as to how the

24   Government deals -- Government and defense deals with speedy

25   trial motions.  And we looked at the estoppel argument because

1      we knew that that is ultimately the strong point here, which is

2      these decisions were made, whether strategically or not, by

3      both sides to toll time and talk to the Court and have the,

4      Your Honor --

5                  THE COURT:  Well, I mean, I hear you.

6                  MR. CRESPO:  Yes.

7                  THE COURT:  You know Judge Griggsby has squarely

8      rejected that in a case in this district on facts different

9      than that, than this, because you have to demonstrate that

10     Mr. Masood's position was clearly inconsistent with the

11     position he's taking now.  And on these facts, when, as of May

12     of 2022 -- no, August of 2022 the defense was filing a

13     reservation of rights letter and throughout this case, and I

14     can find them, I can find the positions that were taken during

15     the recording calls where the defense was essentially saying to

16     you and the Government was saying you can't put us in a trick

17     bag, right?  We have -- we need the phones, we need the devices

18     to prepare but we can't get the devices because they're in your

19     sole and exclusive custody and you haven't completed the filter

20     review.

21          You cannot blame the defense for their withholding of the

22     passwords because that was done in four weeks.  By July, you

23     had all the data and it was on a drive.  So that doesn't --

24     that doesn't explain, it doesn't help your estoppel argument,

25     right?

1       So how is the defense by saying, listen, we need the

2    phones to defend ourselves, we have to wait for you to give

3    them to us, if we object and we get a trial date sooner, then

4    we don't get the phones and we are hamstrung at trial.  So we

5    consent with the understanding that it's on you, Government,

6    you got to get us the devices.  And the Government did not

7    disabuse the Court of that.  It's not like the Government said,

8    oh, this is pshaw, they don't know these.  It was actually the

9    opposite.  Mr. Ake was saying they got a point, they do need

10   them.  So how is this estoppel?

11            MR. CRESPO:  Well, right, Your Honor, just one

12   point -- actually two points, one on the reservation of speedy

13   trial rights.

14            THE COURT:  Yeah.

15            MR. CRESPO:  Those were, if they were reserving their

16   rights as to speedy trial, they didn't file a motion on

17   December 5th whenever pretrial motions were --

18            THE COURT:  Correct, and I'm trying to explain why

19   that would be.  If the defense files a motion, right, then the

20   Court, they take the risk that the Court says, all right, let's

21   roll, you get your trial in a week.  Here's the problem, is in

22   this case because you've already told me this and you told the

23   Court this, you're ready to go, you like what was in the three

24   e-mail accounts that was given to you by Ms. Rosas and

25   Mr. Johnson, that helps your case.  You're prepared to roll,

1    okay?

2        The defendant's position was, but we need the devices that

3    were seized from the main codefendants and we need other

4    evidence that we don't have yet.  So how is that what the

5    Speedy Trial Act was designed to accomplish?  So you hold back

6    the evidence that your own AUSA tells the Court will be helpful

7    to the defense, you hold that back whether -- and it's not in

8    bad faith but it's in your custody, and then your position now

9    is, well, they should have asked for a speedy trial.  That

10   can't be.  That's not estoppel.  That's not taking a clearly

11   inconsistent position.

12            MR. CRESPO:  Right, Your Honor, but the -- so the

13   date that they filed that letter, that August 2022 letter --

14            THE COURT:  Yeah.

15            MR. CRESPO:  -- the next day they file a motion --

16   sorry, we filed a consent motion to toll time again.  So

17   clearly whatever discussions were had with defense counsel and

18   the Government at the time --

19            THE COURT:  Are you denying that your own prosecutor

20   told the Court these phones are important to the defense?

21            MR. CRESPO:  No, Your Honor, not denying that at all.

22            THE COURT:  He did throughout, right?

23            MR. CRESPO:  Yes.

24            THE COURT:  Okay.  So the consent was conditional.

25   It wasn't -- it wasn't Zedner.  Okay, yeah, consent, and if it

1   was then you have a problem there.  Like consent, I don't care,

2   whenever, toll the Speedy Trial Act, doesn't matter to me.

3       It was conditional.  It was conditioned on getting the

4   phones, on getting the devices.  So it's not estoppel.  It's

5   not taking a materially inconsis -- when you end up not getting

6   the phones to them after 20-something months, when the consent

7   was conditioned on getting the phones, that's not a

8   materially -- that's not an inconsistent or clearly

9   inconsistent position, and that's element one of estoppel.

10      MR. CRESPO:  Right, Your Honor, and I think that

11  during that time there were obviously discussions with defense

12  counsel about returning the devices and there was, in terms of

13  defense counsel receiving the devices, there was a request that

14  they be made, that we go through the filter process which is --

15      THE COURT:  Yeah.

16      MR. CRESPO:  -- obviously an onerous process and

17  there's a lot of discovery.

18      THE COURT:  Well, it wasn't an onerous process.  It

19  took a day.  It took a day.  That's why they had the e-mails

20  because this was, you had the filter team in place early, you

21  had the search terms early, you had the -- even putting aside

22  the institutional negligence of LTSC in not getting devices

23  uploaded, that's what they're supposed to do, not getting the

24  data uploaded, okay, because that is an institutional

25  negligence.  By the time you get it back in May, you know, the

1    e-mails show the own case agent pinging Mr. Ake saying, in July

2    of 2023, right, May 2023 you get those devices back, July of

3    2023 Special Agent Kimrey is saying the filter agents are on

4    standby, when are we going to do this thing?  August, same

5    thing.  No response.  The filter prosecutor was asking for

6    access to Relativity.  Nothing.

7        Okay.  Put this in context of the pretrial order because

8    we're now talking about the facts and circumstances of this

9    case why this case should not be dismissed with prejudice

10   because, in my view, I'm not -- estoppel's not going anywhere,

11   okay?

12       So now we're in this case is getting dismissed, is it

13   going to be with or without prejudice, okay?  So I'm looking at

14   these dates and I'm blown away because the defense has to file

15   pretrial motions on November 27, and in November Agent Kimrey's

16   asking Mr. Ake if the filter process is even going to take

17   place and maybe we should turn over the discovery.

18       How is the defense supposed to prepare?  I mean, you all

19   really -- you put in your motion there's like no prejudice

20   here.  How are they supposed to know whether to file motions at

21   all?  I'm just -- I mean, I can go through with you the facts.

22   What I tried to do, so you all know, is take pretty much every

23   milestone for what it is and put it in the facts, okay?

24       Whatever was said at whatever recorded call, whatever

25   pleading, whatever e-mail, put it all down.  And I am left with

1    the distinct impression that this case jumped the rails two

2    years ago.  And now you're trying to say because Mr. Masood was

3    trying to get a deal, which is what every defense attorney

4    worth his or her salt does, that I should just forgive this

5    all.  So we can go through the timeline if you like so that you

6    have an opportunity to be heard because I'm not doing any

7    further pleadings on it.  But I do want the Government to at

8    least try to wrestle with some of this.

9        Would you like to do that, or how would you like to

10   proceed?

11            MR. CRESPO:  Certainly, if the Court -- I think the

12   presentation was, you know, just depending on how much the

13   Court needed a refresher, but clearly the Court is very

14   informed as to the timeline.  I think we can discuss these

15   issues.  If I may ask my co-counsel a question because he's

16   actually a little bit more --

17            THE COURT:  Sure.

18        (Pause in Proceedings.)

19            MR. CRESPO:  Apologies, Your Honor.

20            THE COURT:  That's okay.

21            MR. CRESPO:  Just digging into the history for the

22   filter team review is actually quite long and I understand that

23   there was some institutional issues getting it uploaded.

24        I think our position is that because that process took so

25   long, I understand that the filter review actually was very

1    quick, but at least into the timeline, which is November 2023,
2    right before the motions are filed, all that time frame was
3    trying to get it uploaded and trying to apply the search terms
4    and trying to get everything ready for review.
5            THE COURT:  Okay.  I do think we need to go through
6    the timeline, then, okay, because I do think that it's
7    important you understand at least what the Court is seeing so
8    you can respond, okay?
9        It appears as if all seven defendants by April 7, 2022,
10   had had their initial appearance, so the Speedy Trial Act clock
11   runs from that point.
12           MR. CRESPO:  I counted on April 8th, Your Honor, just
13   looking at the docket.
14           THE COURT:  I think it's the 7th.  8th -- one day is
15   not going to make a difference, but I'll give you -- say it's
16   the 8th.
17       The first Speedy Trial Act motion was filed on the 6th.
18   It asked to exclude until the 9th of August.  We've talked
19   about that.
20       Okay.  On May 7, 2022, there is conversation between
21   Special Agent Kimrey and AUSA Ake about just uploading
22   generally data to Relativity because it's far more user
23   friendly than the database than the Army uses.  It's the Army.
24   Am I right about that?  Yes.  Okay.
25           Then on May 9th, so very close in time, AUSA Ake asked his

1   supervisor for a filter team assignment.  It looks like about a
2   month later, a little bit more than that, there is at least an
3   initial person in place and that there are certain materials
4   ready for the filter team review.  Those seem to be the hard
5   copy.
6        June 21, 2022, AUSA Ake e-mails defense counsel and says,
7   listen, part of the problem with downloading the data from the
8   devices is that we need the passwords.  Without them, this
9   could take years.
10       In short order, Ms. Jackson provides hers in a couple of
11  days, I think a week or two, but by July 31st, all of the
12  passwords had to have been supplied because all of the seized
13  devices were accessed and imaged.  And I infer that because
14  AUSA Ake directs Special Agent Kimrey to return the devices to
15  each of the defendants, but note what we're talking about is
16  each of the defendants get their own devices back because they
17  did not consent to a blanket disclosure, and actually Mr. Ake
18  notes in an e-mail to the defense counsel that makes sense, and
19  it does make sense because they're each potentially adverse to
20  one another, so I'm not certainly holding that choice against
21  them.
22       It appears by August 9th of 2022, there is an e-mail
23  between Special Agent Kimrey to the US Attorney's IT contact
24  Mr. Dominguez saying I got the hard drive full of data from the
25  devices ready to be uploaded to Relativity, and without boring

1    you with the details, we have our first status or our second
2    status that day with Judge Grimm, and from the written docket
3    and the motion to toll it appears that Judge Grimm was told
4    that the electronic devices had not yet been searched and so --
5    for filter and so the contents couldn't be provided to the
6    defense, and the defense files the reservation of rights letter
7    and the Government acknowledges the letter.
8         The next day, Special Agent Kimrey e-mails Mr. Dominguez
9    about the data from the 30 devices -- not about the data from
10   the 30 devices, about uploading other data to Relativity.  So
11   they're in communication.  IT seems to be responding.
12        There's a second consent motion filed on August 16 to
13   exclude until November 9.  It's noted in the motion the
14   reservation of rights letter filed by counsel for Ms. Jackson,
15   and my memory is that it was on behalf of all defendants, that
16   noted even though there was no objection to the delay,
17   Ms. Jackson did not object to the continuance "based on a
18   desire to review the electronic materials for potentially
19   exculpatory or helpful information."  And that to me is a
20   relatively clear indication that the consent was conditional.
21        The Court granted the motion on the same day but there
22   were six days retroactive.  There was also -- in fairness,
23   there was reference to plea negotiations, there was reference
24   in the motion to the anticipated production of additional
25   voluminous discovery that the defense must themselves digest

1    before they have a chance to meaningfully review it with their

2    clients.

3        August 17, Mr. Dominguez informs Mr. Ake that the 30

4    devices can't be uploaded in-house, too big, has to go to LTSC.

5        Dominguez makes that work request on September 8.

6    September 12 he learns from LTSC the data size is too large,

7    LTSC will not accept it.  So Special Agent Kimrey responds

8    about ten days later that LTSC, we can do it and the Army's IT

9    person can cull out the operating programs so that the data

10   itself can be uploaded.

11       Okay.  And then it appears as if Special Agent Kimrey

12   delivers that culled-out data by October 13th, 2022.

13       All right?

14           MR. CRESPO:  Yes, Your Honor.

15           THE COURT:  Now, on October 9, Mr. Ake communicates

16   to the defense, listen, LTSC has pushed their promise date back

17   to October 20, so there must have been some conversation about

18   we're going to get this to you by October 20 so that it would

19   be -- well, we're going to get the data uploaded to Relativity

20   so the taint review can begin.

21           MR. CRESPO:  We're still in 2022, Your Honor.

22           THE COURT:  We're still in 2022.

23       There's some other back and forth about nondevice -- the

24   Google e-mail returns.

25       The third consent motion is filed on December 2nd, 2022,

1    again citing this point, Mr. Ake has told the Court that

2    progress has been made in providing additional discovery and

3    that a reverse proffer it had conducted with the defendants

4    "clarified the need for additional discovery productions to

5    defendants."

6        So again, these continuances are conditional, these

7    consents, and they're ongoing, understanding that the picture,

8    the evidentiary picture is changing.

9        The Government next requests that the Court make an ends

10   of justice finding explaining that the defendants will receive

11   additional voluminous discovery and that additional time is

12   necessary to engage in plea negotiations and review discovery.

13   There is the 35 days of retroactive time in there.

14       So by this point it's December 22, 2022.  30 devices have

15   been unlocked, downloaded, the operating program has been

16   culled and it has been provided to IT.

17       The next tolling motion the Government tells the Court

18   that the relevant Rule 16 discovery relevant to its

19   case-in-chief was provided to defense, but acknowledges "that

20   the Government has not yet completed filter reviews of

21   significant amounts of electronic evidence due to internal

22   Justice Department delays in uploading to relevant systems but

23   does not anticipate relying on that evidence at trial and so

24   does not request a delay in scheduling on that basis."

25       Okay.  Here's a couple problems.  One is the Court wasn't

1    told it hadn't even started, okay?  So as the judge now

2    assigned to this case, I'm reading this and saying, oh, okay, a

3    couple things.  Hasn't completed yet but "completed" implies

4    starting, and that the Government's not going to rely on the

5    evidence at trial but we know from the prior motions that it's

6    important to the defense, but since we're not going to rely on

7    this for further continuances, it's going to get done.  That's

8    the fair inference from that representation on December 22.

9        February 3rd, 2023, recorded status with all counsel.

10   I've made the decision we are putting this in for trial because

11   by this point we're almost a year into the speedy trial.  And

12   Mr. Ake tells me that the Government has produced what it feels

13   are Rule 16 materials.

14       So at this point, I'm thinking that means everything,

15   including what's material to the preparation of the defense,

16   and that includes he notes that the electronic evidence that

17   was seized, again, the filter team has not completed its

18   review.  Okay.  That means it's going on, it will be done,

19   nobody asks for any continuance.

20       AUSA Ake generally notes that the devices -- evidence from

21   certain devices has been provided serially to the affected

22   defendants, but I don't -- I don't know what that means.  I

23   wasn't told that only the defendants got their own devices

24   back.  And on the call, the defendants expressed their

25   displeasure.  Again, you know, counsel for Ms. Jackson, who was

1    with the US Attorney's Office back in the day, said, you know,

2    this delay appears because we were arrested, indicted, and the

3    searches were executed on the same day, we got 30 devices, we

4    got all this evidence.  We don't want to object because we need

5    time, essentially, but we got to move this thing along.  And

6    I'm paraphrasing.  I wrote down what she said.

7        Ms. Kelly also notes that the Government had seized only

8    certain e-mail accounts and so the defense is missing e-mails

9    and communications that the Government does not have that are

10   potentially in Walter Reed's control and that they've sent

11   preservation letters to Walter Reed.

12       So at this point, I make it clear if there's discovery

13   issues please let me know, but we're going to set a trial date.

14   February 3rd, 2024.

15       On February 17, so two weeks after the call, I believe, I

16   get the motion to toll and the motion has 56 days retroactively

17   excluded.

18       Okay.  Now, from this call, which was February 3rd,

19   nothing really happens with these phones.  Certainly Mr. Ake

20   asks.  He sends an e-mail to your IT folks on November 30th,

21   December 6th, December 12, December 14, no response.  But he

22   didn't take it anywhere else, he just asks, gets nothing.

23       And so on the 14th he hears that the data is being

24   processed for a January timeline, okay?  So before it was

25   October, now it's January, no explanation, no explanation asked

 1    for, just thanks.

 2          Okay.  So now we're in January 2023.  Yes, we're a year

 3    away from trial, but this is a complicated case and everyone's

 4    been waiting for these phones since April of 2022.  January

 5    came and went, no data uploaded to Relativity.

 6          February 7, Mr. Ake asks again for a status noting the

 7    defense counsel is starting to ask more plaintively about it,

 8    meaning the data.  Hearing nothing, AUSA Ake e-mails again,

 9    he's circling back on this February 21.  Again, no bad faith.

10    I'm not saying Mr. Ake is hiding the ball or trying to sabotage

11    the defense, okay, but the delay is now getting obviously

12    problematic.

13          Again hearing nothing, March 29, AUSA Ake asks now for

14    help, the help of Damaris Weeks to obtain a status.  Doesn't

15    seem like there's any response to he asks again May 9, and he

16    points out the defense is -- if it's not produced soon "the

17    defense will likely seek sanctions."  So that's probably

18    because we're 13 months from indictment and no devices.

19          Okay.  It appears as if LTSC on the same day says the job

20    is partially complete and then May 23rd, it's complete.

21          And then after that, it takes seven months for anything to

22    really happen.  To be sure, Special Agent Kimrey on July 24th

23    e-mails AUSA Ake saying what's going on with the filter review

24    because there's filter agents standing by.  He sends another

25    similar e-mail on August 22nd saying, we're ready, standing by

1    ready to go.  The filter memo was made available and then the
2    filter attorney on August 30th asks for permission to access
3    Relativity and still doesn't seem like anything happens.
4         Now we're closing in on the motions deadline.  November 9
5    of 2023, Special Agent Kimrey e-mails AUSA Ake asking to check
6    in to see when the Government could jump into Relativity in
7    preparation for Mr. Masood's trial.  And he says "I know the
8    digital evidence we collected is Masood-heavy and hopefully a
9    golden egg or two there.  Not sure if Mr. Phelps was able to
10   get a filter complete or plans to.  Also I understand we're a
11   few months away, but do you think it would be a good idea to
12   get rolling on turning over uploading discovery?"
13        That same day, filter attorney AUSA Phelps asks again
14   about receiving access to Relativity.  The work order to give
15   him access doesn't go in until the 16th of November, and then
16   on that same day AUSA Phelps reports out what Mr. Gardner told
17   me at the August 24 hearing to be true.  The preliminary filter
18   screen showed 500,000 items uploaded from the 30 devices to
19   Relativity.  34,000 were presumptively privileged but upon
20   closer review only 6,000 bore any real issue and the rest was
21   free to share, presumably.  I don't know if he said that or
22   those are my words, but that e-mail was the 16th.
23        November 21, Masood's then-counsel Mr. Lowther files an
24   unopposed motion to extend the pretrial motions deadline from
25   November 27 until January 3rd.  He represents that the parties

1    are actively and diligently negotiating a pretrial resolution
2    but he asked the Court to extend the motions deadline.  And I
3    say no because I'm not going to throw the trial date which is
4    firm into disarray.

5        And so I advised go get all the defense counsel together,
6    let's see where we are.  Files a renewed motion, does not ask
7    for me to make speedy trial findings, so I don't but there's
8    pending motions so I don't think that's counted toward the
9    Speedy Trial Act if I don't credit the defense's argument.

10       In any event, we then have a followup status because by
11   this point I want statuses like every month, and this is when
12   Mr. Ake says to me on the December 15 call, the defense
13   counsel -- he commends the defense counsel, obviously
14   everyone's working well together and that's great.

15       But he says the defense has helped the Government "better
16   understand what was going on in this case and gave them a
17   better idea of the motivations in this case," and he admits
18   that the Government did not have a clear view of certain
19   documents that at first blush had appeared fraudulent but were
20   really more about hiding income to qualify certain government
21   contract benefits.

22       So now he tells the Court the IRS is involved, the IRS
23   needs time to review, and so it would be setting up everyone
24   for failure, a rush to failure is I think what he called it if
25   we kept the trial date.  And based on that representation not

1    having been told anything about the devices either way, but

2    that this case isn't what the Government thought it was, that

3    we extend the deadlines.

4          And then we had another call on February 12 where again

5    AUSA Ake said we need a little more time, everyone is in plea

6    negotiations but we need approval presumably from the tax

7    division and that approval should be secure -- may not be

8    secured by the current trial date that I moved to April 29.

9    And so now it was asked that I reschedule the trial date, which

10   I did.

11         We set another status for April 21, 2024, to learn that

12   the IRS has backed out.  At which point, and I don't know if I

13   need to belabor this now, but the bottom line is this:

14   Diversion agreements start getting handed out which goes to the

15   seriousness of this offense.  The two main cooperators strike a

16   deal that is relatively favorable.  Mr. Masood makes clear in

17   May on the call with Mr. Gardner and me, we're going to trial,

18   and that was with Mr. Lowther.  Maybe there were conversations

19   in the background but this case is incredibly messy at this

20   point.

21         And then May until August new counsel gets involved and I

22   learn the devices were never turned over.  That's the timeline

23   as I see it, and this is the problem I see.  It's twofold.

24         One is institutional negligence is separate from bad

25   faith.  I don't have to find and I don't find that Mr. Ake had,

1    like, malice in his heart.  It was the contrary.  It seems to

2    me that the record shows he had an appreciation for the

3    complexion of this case changing and a fairness to the defense.

4    The problem was that the institution failed.  So IT failed, and

5    then the collective failed.

6         So that is what resulted in 20 months of delay on these

7    devices.  Not because the passwords weren't given over as you

8    suggest in your pleadings.  And so that's where I find the

9    facts and circumstances to cut against you, as well as the

10   seriousness of the offense, sure.  You've superseded twice to

11   make it clear that you want to proceed against Mr. Masood for

12   healthcare fraud.  But the conduct and the record about, boy,

13   this case wasn't what we thought it was is also relevant to

14   that.

15        So that's the first prong, seriousness of the offense kind

16   of cuts both ways, the facts and circumstances not good at all,

17   and then the prejudice.  I mean, you want to say now there's no

18   Giglio, there's no Brady, but Mr. Masood had to wait

19   20-something months to get the devices and now has to prepare

20   for trial, a trial date that I keep pressing because we have

21   Speedy Trial Act violations.

22        So there's that and then you all didn't even respond to

23   the Sixth Amendment.  That's how I'm seeing it.

24             MR. CRESPO:  Thank you, Your Honor.  That was

25   helpful.

Motions Hearing 1/27/25

1          So in terms of the timeline or as how the Court read it

2     out, it seems that a lot of the issues with the filter review

3     data didn't really express themselves in the case until later

4     on when -- when the pretrial motions were already delaying

5     time, at least from what I --

6               THE COURT:  Wait, wait, wait.  Pretrial motions were

7     filed --

8               MR. CRESPO:  December 5th.

9               THE COURT:  -- December 5th of 2023.

10              MR. CRESPO:  Yes, Your Honor.

11              THE COURT:  All of that time before that, though, was

12    complete institutional failure.

13              MR. CRESPO:  Right.

14              THE COURT:  Right?  So the motions are neither --

15    they really don't matter.  Say I give you, I give you, you

16    know, once Mr. Masood filed his pretrial motions the clock

17    tolled.  The fact remains he didn't have the devices when he

18    had to file them, right?

19              MR. CRESPO:  Right, Your Honor, and I think the

20    Government had indicated very early on that it didn't intend to

21    use any of the information from those devices.

22              THE COURT:  And 16 -- Rule 16(d)(1)(D) I believe it

23    is says you have an obligation to turn over what is material to

24    the preparation of the defense.  So sure, you've said that from

25    the beginning, you're going to roll with the couple witnesses

Motions Hearing 1/27/25

1    who gave you the three e-mails and whatever you got from the

2    Google returns, but the critical point is from the beginning

3    your own prosecutor noted that the devices would be material to

4    the preparation of the defense.  So that's not -- that's only

5    half of Rule 16.

6          I understand, you know, I understand the impulse that,

7    well, we got our case, we've disclosed our case.  But in a

8    situation where the main cooperators had 17 devices between the

9    two of them and no -- no showing, really, on your part to the

10   contrary that Mr. Masood needed them.  I don't know what I do

11   with that representation that you had disclosed what you were

12   going to use at trial in this case.

13              MR. CRESPO:  Right, Your Honor, and I understand the

14   Court's message.

15         I think given how the defense also went ahead and filed

16   their pretrial motions and then asked the Government not to

17   respond --

18              THE COURT:  Well, you know what, I don't have any

19   record of that.  I don't have an e-mail, I don't have a motion

20   from you all.  You know, talk about a thorn in my side that I

21   had eight months after those motions were filed, I had to ask

22   Mr. Gardner where was the response because what prosecutor

23   walks in and expects to argue in federal court a motion to

24   suppress the evidence obtained from a search warrant on the

25   fly.  It's your burden.

1       So if that's the case, the record doesn't show it, and

2   Mr. Lowther said he was going to withdraw the motion and then

3   he didn't.  So if he didn't withdraw the motion and there isn't

4   a motion to continue the response date, right, which you often

5   do when it's appropriate, then what am I supposed to make of

6   that?  And so I got to get you on the line to ask why don't I

7   have a response?  The motions hearing is tomorrow.

8           MR. CRESPO:  Yes, Your Honor.  I think it goes to

9   their motivations, at least what is reflected to me as defense

10  counsel files their motion.

11          THE COURT:  Yeah.

12          MR. CRESPO:  We're obviously in conversations, this

13  was December 5th.  December 15th, there's a status conference

14  with the Court and there's obviously we've already communicated

15  to the Court that we're in conversation about -- clearly with

16  the defendant face to face.

17          THE COURT:  Right.

18          MR. CRESPO:  And engaging in plea negotiations.  And

19  that's expressed from that point all through August of 2024

20  where defendants are pleading out, where there are two

21  different prosecution agreements, where IRS after that, IRS

22  indicates that it's only as to certain defendants that whole

23  IRS text issue, and then constant communication with the Court

24  and clearly progress in terms of removing defendants.

25      Then in May, Mr. Masood indicates that he wants to go to

1   trial, but negotiations continue up until --

2              THE COURT:  Sure.

3              MR. CRESPO:  -- up until August --

4              THE COURT:  I will give you all of that, okay?  Plea

5   negotiations often happen in parallel to trial.  Would you

6   agree with that?

7              MR. CRESPO:  Yes, Your Honor.  Up until the last --

8              THE COURT:  I mean, you've had cases where on the eve

9   of trial you all are still trying to work it out.  So that

10  cannot forgive the failure to present -- to produce what you

11  said you were going to produce from day one if I find as your

12  own AUSA found that it was material to the preparation of the

13  defense.

14       And you know, you all don't even deal with some of the

15  cases that the defense filed which are real.  Like U.S. versus

16  Dog Taking Gun -- which is a great title -- that was a case in

17  which the Court expressly said, listen, it was the same facts

18  in many ways.  The prosecutor kept pinging the FBI, can we get

19  the DNA, can we get the DNA.  She was doing as much as she

20  could to get what she needed from the institution and the

21  institution failed her.  And what the Court said was, that's

22  not a ground to toll speedy trial.  It may be a ground for some

23  other things, but it's not -- and I don't have to make a

24  finding of bad faith.

25       So you know, when they asked for a continuance based on

1    the delay of the production, the Court said that suggested

2    remedy is at odds with the Speedy Trial Act.  And then he

3    quotes 18 U.S.C. 3161(h)(8)(C), no continuance shall be granted

4    in the interest of justice because of general congestion of the

5    Court's calendar or lack of diligent preparation.

6         So that's this, in my view, and you didn't respond in your

7    pleadings in any meaningful way to suggest otherwise.  You're

8    right, you largely dealt with estoppel and essentially a waiver

9    because of plea negotiations, which, frankly, if I credit here,

10   I'm not sure what that would do to your general practice

11   because -- and I don't think it's just because I think that we

12   all understand that both the Government and the defense has to

13   operate on parallel tracks.  And while plea negotiations can be

14   considered to exclude the time, that wasn't the driver.  I

15   mean, it was here but it wasn't the driver to suggest that now

16   I got to say they've waived any argument in this regard.

17         MR. CRESPO:  Right, Your Honor, and I think it's

18   difficult because obviously some of these arguments are

19   intertwined, but I think the overall process of the filter

20   review, while it took a very, very long time, it wasn't a

21   complete failure, and at least during the relevant period it

22   wasn't a complete failure because it was advancing and the

23   defense --

24         THE COURT:  Well, it wasn't, though.  That's the

25   problem.  See, I find as a very material fact that the filter

Motions Hearing 1/27/25

1    took almost no time.  It didn't take weeks.  AUSA Phelps was

2    very efficient once he got access.  And there's no explanation

3    for why the United States Department of Justice took months to

4    upload the data to Relativity.

5            MR. CRESPO:  Right, Your Honor, and I think what I'm

6    trying to get at is --

7            THE COURT:  Yeah.

8            MR. CRESPO:  -- this was communicated to the defense

9    throughout and they still consented.

10           THE COURT:  But it wasn't, and that's the problem.  I

11   mean, you told the Court it hadn't been completed, okay, which

12   gives everybody the impression, including the Court who has to

13   make the ends of justice findings, that it started and it

14   hadn't.  Again, I'm not going to find bad faith or like a

15   willfulness on that, but that's extremely problematic now that

16   we sort of can see the long view on this.  So it hadn't, you

17   know, it hadn't really been laid out.  I don't know what was

18   communicated to the defense offline, the e-mails I have.

19           MR. CRESPO:  Your Honor, all I would ask is if you --

20   a short break to be able to discuss some of these cases and

21   provide the Court with at least a response.

22           THE COURT:  Well, I'll turn to the defense and you'll

23   have that opportunity.  I mean, I really can't -- I'm really

24   kind of stunned that you had all these cases.  It's like you

25   ignored the defense's motion.  You've taken all of this and

1    you've given it the back of your hand.  Not you, Mr. Crespo.

2    I'm not ascribing personal animus, okay, but institutionally

3    you can't do this.  You can't take, like, all of these cases

4    and ignore them and then expect to, you know, have a break and

5    huddle.

6        This isn't new stuff that -- I mean, I'll give you maybe

7    Judge Griggsby's case because it was in reply, but this isn't

8    new stuff.  So let me hear from the defense.

9        Let me ask you, Mr. Gorokhov, my inclination is if I'm

10   going to grant dismissal and grant it with prejudice I don't

11   have to reach the other issues.  Would you agree with that?

12            MR. GOROKHOV:  That's correct, Your Honor.

13            THE COURT:  Okay.  I am struggling a little bit with

14   whether I should, I don't think I should if I'm going to grant

15   dismissal with prejudice reach the Sixth Amendment issue.  Your

16   position is it's conceded.

17       So what does that exactly mean in your view?  I take the

18   record as it is, I take your arguments and I decide it based on

19   that.  Am I getting that right?

20            MR. GOROKHOV:  That's correct, Your Honor.  And I

21   think what's significant about the Sixth Amendment issue that

22   makes it different, it's different in many ways from the STA

23   issue, you know, which is just based on a mathematical yes or

24   no.

25       The Sixth Amendment issue is a kind of interrelation of

Motions Hearing 1/27/25

1    factors, and -- but what the Supreme Court has said, and it's

2    cited, I believe the case is New Buffalo Entertainment, is that

3    once the period of delay is presumptively prejudicial to the

4    defense, that triggers the Barker factors but once -- the

5    longer that period of delay is, the heavier the burden on the

6    Government to disprove, in other words, to disprove each of the

7    factors.

8         So at this point, the period of delay is 33 months, the

9    Supreme Court has said that one year is excessive.  The Fourth

10   Circuit has said that eight months is excessive, so we're well

11   into the excessive category.

12        So the Government actually, it's not merely, you know,

13   that they can deny or they can say there's insufficient

14   evidence of a Sixth Amendment violation.  They have a burden to

15   rebut these three factors.  And to that degree, I think, you

16   know, this overlaps.  The Government's conduct obviously is one

17   factor, the prejudice to the -- the reason for the delay is a

18   factor.  So there's some overlap but I think their failure to

19   respond where they have the burden is significant and I think

20   it's, you know, if the Court is inclined to go that way, I

21   think it's a fairly easy call because the -- as to the key

22   factors I think there's an overlap in the facts.

23             THE COURT:  Well, my inclination is to decide it, you

24   know, incrementally and narrowly.  If I don't have to go

25   somewhere, then I won't.  And that's why my thinking right now

1    is if I'm according full relief, I won't go there.  If I accord
2    something short of that, such as dismissal without prejudice,
3    which I'm not inclined to do, but if I get there, if the
4    Government convinces me, then I would reach the next question.
5    And that seems to me to be the most prudent way of handling it
6    as a District Judge so I don't create law I don't have to.
7              MR. GOROKHOV:  I fully understand that, Your Honor.
8    I completely understand it and I think that's a sound approach.
9    I think the facts here strongly militate in favor of a
10   dismissal prejudice on the STA issues alone.  I think your
11   timeline -- I've prepared a timeline myself.
12             THE COURT:  Share it with me because I'm bad at math
13   and so it's possible that I, you know, counted it wrong.  I
14   tried to do it independently of either party so I knew what the
15   dates were, but maybe you can correct my math.
16             MR. GOROKHOV:  Your Honor, no, I take no issue with
17   your calculation as far as the retroactivity issues.  The
18   timeline I've prepared really deals with -- by comparison to
19   your timeline of the devices, mine looks kind of like a child's
20   drawing because we -- you know, we didn't have all this, access
21   to all this detail.
22        But I think what is important, Your Honor, an additional
23   factor I think that's important for this court to consider with
24   respect to the devices is that by the time we received access
25   to the data from the devices, the filter review had been

1    completed at that point for 470 days.  So whatever happened up
2    until the filter review took place in November --
3                THE COURT:  When did you get the devices?
4                MR. GOROKHOV:  I'm sorry, on September 4th of 2024.
5                THE COURT:  You got the devices on September 4 of
6    2024?
7                MR. GOROKHOV:  Yes, Your Honor.
8                THE COURT:  And the filter had been November --
9                MR. GOROKHOV:  Of --
10               THE COURT:  -- 16 of 2023.  That's at least -- or
11   somewhere thereabouts.
12               MR. GOROKHOV:  I apologize, Your Honor.
13               THE COURT:  Somewhere between November 16 and
14   November 20.
15               MR. GOROKHOV:  I apologize.
16               THE COURT:  I mean -- right, it's almost a year.
17   It's ten months, right?
18               MR. GOROKHOV:  It's 289 days.
19               THE COURT:  Okay.
20               MR. GOROKHOV:  That's the number.  They've had the
21   trimmed down -- I'm sorry, they had the data trimmed down at
22   that point for 470 days, but they had -- the filter review had
23   been complete for 289 days.
24          So while, you know, Your Honor, you emphasized this is an
25   institutional problem, which we certainly agree and we're not

1    arguing Mr. Ake tried to hide this evidence, there's a major

2    question of, okay, once they've reviewed the -- once they've

3    done the filter review, now there's really nothing stopping

4    them from turning it over and yet they held onto it for another

5    289 days.  I think that's --

6            THE COURT:  Well, with a motions filing deadline of a

7    couple days away, which was moved, but once --

8            MR. GOROKHOV:  Right.

9            THE COURT:  -- that motions filing deadline came,

10   even if you're having plea negotiations, if the defense files

11   the motion, that means like you got to think this is going to

12   trial and honor your obligations.  That's how I'm thinking

13   about it.

14           MR. GOROKHOV:  Yes, Your Honor.  Absolutely.  And so

15   I do think that the fact that once it was filtered they held

16   onto it for, you know, a good part of the year is something

17   that certainly weighs very heavily in favor of dismissal with

18   prejudice.

19       The other aspect of this timeline that I think is

20   significant Google, with the Google e-mails.  And so what I've

21   prepared, Your Honor, it's in our briefing but what I've done

22   is created a chart that I think visually allows the Court to

23   see these things much more clearly, and I think the chart will

24   actually help me explain this in about five minutes.  So if

25   it's okay with the Court --

Motions Hearing 1/27/25

```
 1              THE COURT:  You want to put it on the Elmo or
 2    something?
 3              MR. GOROKHOV:  I have paper copies here for
 4    everybody.
 5              THE COURT:  Well, you know, I am a little bit
 6    confused about the Google productions.
 7              MR. GOROKHOV:  Yes, Your Honor.
 8              THE COURT:  I tried to follow it as best I could, so
 9    a chart might be helpful.
10              MR. GOROKHOV:  Yes, Your Honor.  So I have a copy for
11    the Government and if I may approach.
12              THE COURT:  Sure.
13              MR. GOROKHOV:  Your Honor, we can ignore the
14    left-hand column.  That's the timeline for the devices and,
15    Your Honor, you've just done a much more thorough and detailed
16    timeline so we don't need to deal with that.
17              THE COURT:  Okay.
18              MR. GOROKHOV:  But what I do want to do, Your Honor,
19    is emphasize some of the things relating to the Google timeline
20    because I think it's also a significant consideration in the
21    remedy in this case.
22         So the first date that I'd like to ask Your Honor to look
23    at would be June 22nd of 2022.
24              THE COURT:  Okay.
25              MR. GOROKHOV:  And if you take a look at the middle
```

1    column, this is an excerpt from Agent Kimrey's affidavit which

2    is in the record.  And what this affidavit does is it explains

3    why these Google accounts are so important.  You know, it talks

4    about the evidence in the accounts that they expect to find, it

5    summarizes some of the things they've already found, and these

6    are accounts -- just to be clear, these are accounts belonging

7    to, among other people, Harriett Jackson who's a key cooperator

8    against our client, and all of the -- a number of the

9    codefendants in this case.  And these accounts contain the

10   evidence and attach documents of the very mechanics of how this

11   alleged fraud was carried out and they show evidence of

12   Michelle Peebles and Harriett Jackson manipulating other

13   individuals in this case to carry out the fraud that they did.

14        So these accounts are important.  And on the same date as

15   this warrant is drafted, Agent Kimrey and the prosecution go to

16   the Court and obtain the, you know, the approved warrant from

17   Judge Quereshi.  The following day the warrant is served on

18   Google.

19        And then on August 15th, Your Honor, this is a document

20   you've discussed.  It's ECF 94.  That is a letter from the

21   defense that reserves their rights, Your Honor, you're very

22   familiar with that document, but what I'd like to point out is

23   that the defendants just weren't reserving the right to -- as

24   to the devices.  They were specifically reserving the right

25   also as to the Google accounts because it specifically says to

1    give the Government time to produce discovery from the

2    computers, devices, and the Google accounts.

3            THE COURT:  Yeah, I see that.  Okay.

4            MR. GOROKHOV:  So there clearly -- this is clearly

5    something they're expecting, and as you know, Your Honor, in

6    ECF 95, Mr. Ake acknowledges that he'll expeditiously provide

7    this material.

8            Now, if you look on the right-hand column, by this point

9    the Government has already received the first return of the

10   e-mails from Google and they've already had them by that point

11   for five days as of these filings.

12           If we go to the next page, the Court enters its order that

13   you're very familiar with at this point about it's potentially

14   exculp -- I'm sorry, that's the consent motion filed that again

15   acknowledges they're waiting for potentially exculpatory

16   information.

17           We then go to -- we then go to August 16th of 2022, where

18   Judge Grimm enters the first order that says nobody wishes to

19   forego the receipt of these additional materials, which the

20   Government urges will be provided as expeditiously as possible.

21   By that time they have the Google returns for six days.

22           And one thing I'll point out, Your Honor, about this entry

23   on August 16th of 2022, is that the Government keeps referring

24   to plea negotiations.  You know, we were in plea negotiations

25   so we were kind of off the hook.  Well, Judge Grimm made a

1    specific finding that acknowledges what we all know, which is

2    that effective plea negotiations happen when people have an

3    opportunity to look at important evidence, right?

4        And so he says, he talks about the defendants having an

5    opportunity to meaningfully review the discovery with their

6    attorneys which may result in pretrial resolution for many or

7    all of the defendants, obtain the necessary permissions to

8    proceed with plea negotiations, and it's appropriate in the

9    interest of justice.

10       So this idea of getting important evidence and engaging in

11   plea negotiations is not two separate things.  It's actually

12   related.  And so when they come in here and say, you know, we

13   were talking plea so we didn't give this them important

14   evidence, I just think that logically it doesn't make sense.

15       We move on, Your Honor, to December 2nd of 2022.  That is

16   another order to exclude time, again having the same language.

17   By this point the Government has had the Google -- the first

18   Google return for 114 days.  And so they're receiving this

19   order from Judge Grimm saying the Government promised to

20   provide as expeditiously as possible and they had it for 114

21   days.

22       And what's particularly notable about this date, Your

23   Honor, is that there's a -- it's reproduced in the right-hand

24   column is that on the very same day as this order is issued,

25   Agent Kimrey is reviewing actively the contents of these Google

1   e-mail accounts and he's making notes and alerts about items of
2   importance that he's finding in the accounts.  And yet they're
3   not being provided to the defense.
4        We go a couple days forward to December 5th, 2022, another
5   entry from Agent Kimrey, again making an entry about him and
6   other agents who are reviewing the contents of these Google
7   accounts from Production 1.
8             THE COURT:  Remind me, you did provide as exhibits
9   some of these alert -- did you provide all of them?
10            MR. GOROKHOV:  Your Honor, I don't know that the
11   full -- I believe these ones were within the scope of what's
12   been filed but we never filed like a bulk -- maybe for --
13   excuse me, my colleague might have a correction on that, I
14   apologize.
15            THE COURT:  Okay.  I mean, not that -- in the end of
16   the day it's had them, didn't turn them over, don't know why.
17   Because I do recall reading in the pleadings, I thought it was
18   yours with the exhibits, or maybe it was the disclosure that I
19   gave you today that there was some back and forth about the
20   Google accounts don't need to go through the filter when they
21   were received.  I think that's in the e-mails, don't need to go
22   through the filter.  So if that's where we are, then the larger
23   picture is we're now at day 115 and they haven't been turned
24   over.  Okay.
25            MR. GOROKHOV:  Well, I would say, Your Honor, you

1    would know more than I would about that kind of behind the

2    scenes what needs to go through the filter.  But what's clear

3    is Agent Kimrey is reviewing, members of the prosecution team

4    are reviewing these accounts.

5         So when we're at day 117 now getting to December 22nd,

6    2022, we are at day 134 and Agent Kimrey has been reviewing

7    these accounts.  So either they failed to filter them, which is

8    a distinct possibility and the Government would have to

9    disclose that pursuant to Brady, or they --

10             THE COURT:  Why would they disclose failure to

11    filter?

12             MR. GOROKHOV:  Well, if they failed to filter

13    something they should have filtered --

14             THE COURT:  I don't think that's what your position

15    was.

16             MR. GOROKHOV:  Oh, okay.

17             THE COURT:  As I read it is this isn't filter

18    material.

19             MR. GOROKHOV:  Oh, okay.

20             THE COURT:  They just made a call, it's not -- it's

21    not going to -- it's not going to trigger attorney-client

22    privileged information, at least that's what I recall.

23             MR. GOROKHOV:  Okay.

24             THE COURT:  So I don't think it's Brady, but your

25    point is either it went through the filter, assuming

Motions Hearing 1/27/25

1    regularity, right?

2               MR. GOROKHOV:  Yes.

3               THE COURT:  It went through the filter and now the

4    agents can -- the case agent can look at it so why isn't it

5    being given over.

6               MR. GOROKHOV:  Exactly.  That's exactly right, Your

7    Honor.

8               THE COURT:  All right.

9               MR. GOROKHOV:  And by the time Judge Grimm -- excuse

10   me.  By the time we have another motion where the Government

11   states that the language Your Honor has already emphasized, has

12   not yet completed filter reviews of significant amounts of

13   data, and this is where they also say they've given us most of

14   the Rule 16 material.  I mean, they've only received -- they've

15   already received one production from Google containing

16   thousands upon thousands of e-mails that they've had for 134

17   days and they have not provided that as Rule 16 material.

18        So if we go, then, to February 3rd of 2022, the familiar

19   language from Judge Grimm, and we have at this point it's 177

20   days now since they've had the first production.

21        I want to jump ahead a little bit.  February 6th of 2023,

22   a pretrial scheduling order is put in place, ECF 107.  The

23   Government's had the first production for 180 days, still

24   hasn't turned it over.

25        February 9th, three days later, we know Agent Kimrey and

1    the Government have not forgotten about Google because they

2    went online and received the second production from Google.

3    It's an alerts entry that says we've now received the second

4    Google production of e-mails.

5         So by this point, just jumping ahead a little bit to

6    February 17th, there's another order.  By this time they've had

7    it for 191 days as to the first production, eight days as to

8    the second production.

9         And if we just go ahead in time, there's a bunch of

10   important events that happen.  There's different scheduling

11   orders that get put in place, et cetera, et cetera.

12        We get to ECF 211, on June 13th of 2024, where the

13   Government unequivocally files a consent motion saying that

14   Mr. Masood intends to proceed to trial.  So --

15             THE COURT:  Where are we?  I'm sorry.

16             MR. GOROKHOV:  We're on June 13th of 2024, and it's

17   ECF entry 211.

18             THE COURT:  Yeah, and I recall we had a May 24th

19   status call where that was told to me --

20             MR. GOROKHOV:  Right.

21             THE COURT:  -- that we're going.  I mean, I think --

22   I think counsel also said we're also trying to hug and not

23   fight but we're not there, so set dates.

24             MR. GOROKHOV:  Right.

25             THE COURT:  And I do recall those conversations.

1    Okay.

2              MR. GOROKHOV:  So at ECF 211, they're telling the

3    Court Mr. Masood is going to trial.  At this point, they've had

4    the Google first return 673 days and they've had the second

5    return for 490 days.

6              THE COURT:  Okay.  Your math is right on this, so

7    what's the first one?  Because that looks like a lot of days.

8              MR. GOROKHOV:  673 days is for the first one, so

9    that's like almost two years; and the second one is 490.

10             THE COURT:  Okay.  So the first Google production was

11   8/10/2022.

12             MR. GOROKHOV:  Yes.

13             THE COURT:  And now we're 6/13/2024, which is --

14   yeah.

15             MR. GOROKHOV:  Almost two years.

16             THE COURT:  Yep, okay.

17             MR. GOROKHOV:  And Your Honor, I'd like to leave --

18   if it's possible, I'd like to leave the exhibit with the Court

19   so if there's any mistakes we can always double-check it.

20        But we go forward in time again.  This time we're -- we've

21   entered an appearance and we're asking the Government to tell

22   us what, you know, electronic evidence they have.  Mr. Gardner

23   sends me an e-mail that's in the record as ECF 330, Exhibit 11.

24   And that e-mail breaks out, you know, four categories of e-mail

25   evidence that they've obtained.  No mention of the Google

1    return.

2              THE COURT:  I know, we talked about it, the buckets.

3              MR. GOROKHOV:  The buckets, no mention, and by now

4    they've had the second return for 555 days at that point.

5         Then we go forward in time, Your Honor, to 8/23, which is

6    a date that's familiar to all of us.  We had the evidentiary

7    hearing that day.  That's the day you talked about the buckets.

8    Mr. Gardner made no mention of any Google returns.  By that

9    point they've had the second return for 561 days.

10        And we get -- when we get to the end, they produced it on

11   the same day as the devices, and they produced it when they had

12   the second return 573 days and the first return 756 days.

13        The one other thing I'll say is I've put it in the middle

14   column there, I don't know that it's super critical, but we

15   haven't even gotten a straight answer.  They told us that the

16   first production contained only Google Pay information and the

17   alerts clearly show that there were substantive e-mails that

18   were being reviewed.  So, you know, the information has not

19   been accurate either, but that's a side point.

20        So, Your Honor, there's many other issues here.  There's

21   issues that I'm sure you don't want to hear about anymore like

22   Brady issues, Jencks issues.  We're not going to talk about

23   that.  I think you have more than enough on those things.  But

24   this is not limited to devices, Your Honor.  That's what I want

25   to stress.

1          THE COURT:  No, I hear you, and I stopped at sort of

2    the August 24th hearing but -- the August 23rd hearing, the

3    August 22nd status, the August 23rd hearing, the August 29th

4    hearing.  But they're relevant.  You don't need to go over it.

5    I was there.

6          MR. GOROKHOV:  Yeah.  That's right.

7          THE COURT:  But they're relevant because it goes to

8    the institutional negligence.

9          MR. GOROKHOV:  Right.

10          THE COURT:  And the case wasn't handed over well at

11    all, and that was clear from those hearings.  That's the

12    relevance of them as far as I see.

13          MR. GOROKHOV:  Right.  The last point I'd like to

14    emphasize, Your Honor, is that, you know, the language we

15    haven't quoted here in these orders but that, Your Honor, I'm

16    sure you're familiar with, is that there's express findings in

17    multiple of these orders that say this is not based on a lack

18    of diligence by the Government.

19          And what that means is that -- not that we're ignoring a

20    lack of diligence.  It means we're assuming there's diligence,

21    right, and that assumption by these timelines, I mean, you

22    know, I don't know if you want to call it -- I think if you

23    just take the devices we can call it negligence, if you take

24    the Google things I'd say it's maybe gross negligence.  I don't

25    know what to call it, but the bottom line is it's very serious

1    and it's not isolated.

2            Thank you, Your Honor.

3            THE COURT:   Understood, thank you.

4        Okay, Government, you get the last word.

5            MR. CRESPO:   Yes, Your Honor.   Thank you.

6        And I think I've addressed a lot of the points at least

7    from what I see in the record from what I see from e-mails or

8    the evidence, so I'm going to move on, Your Honor, to just

9    talking a little bit about dismissal, if the Court is in that

10   posture at this point or if they get there.

11           THE COURT:   Well, you have nothing -- you don't want

12   to say anything else about -- just make sure the record's clear

13   about the timeline, about the facts we've discussed, about the

14   Google representations?  I mean, if there's anything else, say

15   it now because it wasn't addressed in the pleadings, and I want

16   to give you a true last opportunity on the timeline on the

17   facts and then you can certainly go into the factors as to

18   whether I should dismiss with or without prejudice.

19           MR. CRESPO:   Yes, Your Honor.  I will just briefly

20   summarize my view and from what I observed in the case.

21       This is obviously my case.  I'm part of the case now.  So

22   I think that, you know, looking at it from the lens from now to

23   the past, there's clearly some delay in terms of moving things

24   forward.  There's, like the Court acknowledged, some

25   institutional delay which led us here.  Clearly no bad faith

Motions Hearing 1/27/25

1    because the Government was at least trying to follow up and

2    trying to address these issues, and they arrived at a point

3    where there was resolution in mind for everybody.  And

4    certainly the defense had not renewed their request for a lot

5    of the information.

6                THE COURT:  You realize you've put in nothing in the

7    facts about this ongoing resolution and you want me to accept a

8    blanket, like, resolution as if it's a dark cloud that hung for

9    two years, not anything.  And I'm not going to let you do it

10   now because you've had plenty of opportunity.  I've been

11   hearing this since August.  But you really haven't given me,

12   other than telling the Court part of the factor is we're still

13   in negotiations, I haven't had any concrete evidence.  You hear

14   what I'm saying about that, right?

15               MR. CRESPO:  Yes, Your Honor.  And from my

16   understanding there were approximately eight plea offers in

17   between that time frame.  That is, you know, obviously meetings

18   with the defendant and -- I'm sorry, in their entirety, in the

19   entire case.

20               THE COURT:  You mean in all the cases?

21               MR. CRESPO:  Yes, Your Honor.

22               THE COURT:  All the cases.

23               MR. CRESPO:  Yes, Your Honor.

24               THE COURT:  Okay.

25               MR. CRESPO:  Right.  I mean, the timeline as -- after

1    these motions are filed, the pretrial motions is really plea

2    negotiations and resolution of some of the cases --

3            THE COURT:   After -- after the motions were filed.

4            MR. CRESPO:   After the motions were --

5            THE COURT:   Which doesn't handle any of the time

6    before the motions, which neither counsel at this table were

7    involved in this case before the motions.

8            MR. CRESPO:   Right.

9        All right, Your Honor.  I'll move on.

10           THE COURT:   Okay.

11           MR. CRESPO:   So just looking at the factors, we have

12   the factors outlined in United States v. Reems, factors to be

13   considered are the following:

14       The seriousness of the offense, the facts and

15   circumstances of the case which led to the dismissal, and the

16   impact of a re-prosecution on the administration on this

17   chapter and on the administration of justice.

18       So in terms of the first factor, the seriousness of this

19   offense, the Government sees this as a very egregious fraud,

20   large scale.  It involved almost three million dollars or more

21   than three million dollars and it uses --

22           THE COURT:   I'm just curious, were the main

23   cooperators, I don't recall, did they plead to three million in

24   loss?  Let's pull up Ms. Peebles' and Ms. Jackson's plea

25   agreements because their guidelines were low, so it suggests

1    that the loss amount agreed upon was lower.

2        Does anybody on the defense side know off the top of your

3    head?

4            MR. GOLDMAN:  Our understanding is that the plea

5    agreement as to that was for a far lower amount, it was not --

6    and was tax related offenses and not a --

7            THE COURT:  It was tax related.  I don't recall.  I

8    just don't have it in front of me.

9            MR. GOLDMAN:  I can pull it up while we're

10   discussing.

11           MR. GOROKHOV:  I believe as to Ms. Peebles she had a

12   low end of 21 months and her plea was more.  From what I

13   remember it was a harsher plea than Ms. Jackson.  So 21 months

14   on the low end for Ms. Peebles.

15           THE COURT:  Then the loss amounts in those?  That's

16   what I'm just interested in.

17           MR. GOROKHOV:  Oh, yes, I would have to check, Your

18   Honor.

19           THE COURT:  You have it?

20           MR. CRESPO:  From my understanding, Ms. Jackson pled

21   to a different charge but because of her involvement or at

22   least from the Government's view of the evidence, but

23   Ms. Peebles pled to the conspiracy so whatever the conspiracy

24   is that's the loss amount.

25           THE COURT:  Did you all agree to a loss, though, in

1    that plea agreement?

2              MR. CRESPO:  Co-counsel's pulling it up.

3              THE COURT:  All right.  And that's part of the

4    record, so you don't have to pull it up but I'm just curious if

5    it's a three-million-dollar loss that was agreed to as part of

6    the conspiracy.

7              MR. CRESPO:  Right, Your Honor.  I mean --

8              THE COURT:  Yeah, go ahead.

9              MR. CRESPO:  Yeah, from the Government's perspective,

10   this is an egregious fraud against the Government and it

11   clearly led to a huge loss.  He was also.  From the

12   Government's perspective, the main orchestrator of this fraud,

13   and there's clear movement of money that goes directly to him.

14   And so in terms of the overall seriousness of the case, the

15   Government sees this as a very serious matter and it should

16   be --

17        (Pause in Proceedings.)

18             MR. CRESPO:  I believe the for Ms. Peebles it was

19   $1.2 million and some change in terms of loss.

20             THE COURT:  Okay.

21             MR. CRESPO:  So this is something that obviously the

22   Government remains extremely interested in prosecuting because

23   this is, as I noted, a very serious matter.

24        In terms of the facts and circumstances of any delay in

25   the proceedings, they are driven by a lot of different factors.

1    Some of them are complexities of the data that we have.  Some

2    of it is from, as the Court noted, institutional delay, but

3    there's constant followup and there is a desire --

4            THE COURT:  If I make a finding that that followup

5    was not meaningful, I mean, when you really care about

6    something -- and I'm not talking -- again, I'm not talking bad

7    faith, but after several months of hearing nothing and you get

8    a response that's next to nothing and your response is

9    "thanks," and then it goes on for several more months and you

10   wait until you think you might get threatened with sanctions to

11   do anything?  I mean, DOJ is a very large bureaucracy, for

12   sure, but you've got supervisors and supervisors have

13   supervisors and at some point someone has to care about Rule 16

14   enough to pull the alarm and certainly tell the Court.

15        So, you know, it's a hard pill to swallow that it's enough

16   in a complex -- I mean, you all also made the prosecutorial

17   decisions you made, when to charge, how to charge, how to

18   execute the investigation.  I'm not trying to second guess

19   that.  But then the problems that come with that are, you know,

20   now we're seeing them, right?  I mean, Ms. Kelly raised it at

21   one of the first conferences.  It's unusual to arrest, indict,

22   and have such a wide-ranging execution of a search warrant,

23   which means you got to move on it.  So I don't really know if

24   the followup is any different than what was in Dog Taking Gun.

25            MR. CRESPO:  Right, Your Honor, and I think the -- I

1    mean, that's part of the reason why we're even having this
2    conversation, right, the followup wasn't there or that the
3    followup wasn't as meaningful as it should have been, but
4    nonetheless there was some followup.
5              THE COURT:  Sure.
6              MR. CRESPO:  But I think I noted for the record, and
7    to note that, I mean, there are other -- there are -- obviously
8    the reason for the filter review and all that process has to do
9    with our attempts to protect privileges and it added
10   complexities to the case.
11             THE COURT:  Well, you have to or you could have other
12   problems downstream.  So, I mean, once the defense has listed
13   there's going to be attorney-client privilege material and
14   obviously there was, it wasn't a lot, but there was, you have
15   to do it, right?
16             MR. CRESPO:  Right, absolutely, Your Honor.
17             THE COURT:  Okay.
18             MR. CRESPO:  And because of that, those are the facts
19   and circumstances that led to the delay, agreed.  It wasn't
20   elegant.
21             THE COURT:  How about the Google returns?  What do
22   you -- I mean, I was focused more on the devices but the
23   defense has laid out a factual predicate for you had that
24   discovery for 700 days.  There was no barrier to giving it
25   over.  Why wasn't it?

1          (Pause in Proceedings.)

2              MR. CRESPO:  Court's indulgence.

3          (Pause in Proceedings.)

4              MR. CRESPO:  So we're in factor two, Your Honor,

5      facts and circumstances, obviously the Court's question about

6      the Google accounts.

7              THE COURT:  Well, it also goes to prejudice, I guess

8      to some degree, which I'm allowed to consider.  I'm allowed to

9      consider as an additional factor, but I agree it's facts and

10     circumstances and the only reason I thought of it at that

11     moment was because in the devices we do have Mr. Ake asking

12     about it and trying to at least get some clarity as to why it's

13     taking so long, right, up to May of 2023.

14          After that, I'm not sure what happened.  But in any event,

15     there's no similar -- there's no similar explanation for the

16     Google returns that I can see, so that's why I asked.

17             MR. CRESPO:  There's less explanation in terms of

18     what was happening at the time because it's not something that

19     we've really gone back to take a look, at least I have not gone

20     back to take a look at what Mr. --

21             THE COURT:  Despite representations that were made in

22     the pleadings, in the defense's pleadings and to the Court?

23     How do you not?

24             MR. CRESPO:  Well, what I meant was it's not

25     something that I've gone back through the dates and the

1    timelines of --

2         THE COURT:  Give me the global view.  Give me the

3    30,000-foot, like what was the rationale behind not turning

4    over the Google returns when you got them.

5         MR. CRESPO:  Right, Your Honor.  So this is something

6    when new counsel came in, Mr. Gardner joined the case, he

7    produced, and so --

8         THE COURT:  No, he didn't produce them until -- when

9    was the date, September of 2024?

10        MR. GOROKHOV:  Yes, Your Honor, the day after the

11   trial was scheduled.

12        THE COURT:  Okay.  Mr. Gardner got the case May of

13   2024, right?

14        MR. CRESPO:  May of 2024, yes, Your Honor.

15        THE COURT:  Yeah.  Okay.

16        MR. CRESPO:  And you know, as to how this was

17   being -- I would say they are the same as the devices.  The

18   same situation as the devices is that none of the parties or at

19   least none of the conversations between Mr. Ake and the

20   Government -- sorry, in the defense, it wasn't the pressing

21   matter.  The pressing matter was --

22        THE COURT:  Mr. Crespo, I can't -- I cannot

23   countenance that.  August 15th, 2022, the defense files on the

24   record, the Government also informed the Court that they are

25   awaiting the results of a search warrant to Google for certain

1    e-mail accounts to give the Government time to produce

2    discovery from the computer devices and Google accounts.  The

3    Court did not set a deadline for motions or trial and instead

4    scheduled an additional status in 90 days.  I mean, that

5    memorialized the unrecorded status, but clearly it was put on

6    everybody's radar.

7        Is the Government's position is defense has to keep asking

8    for it as two years go by?

9            MR. CRESPO:  No, Your Honor.  I think I'm looking at

10   this from the perspective of the filing of the pretrial motions

11   and a lot of why those motions were just left on the docket and

12   the case was not really --

13           THE COURT:  You mean the motions in November of 2023?

14           MR. CRESPO:  In December of 2023.

15           THE COURT:  Okay.

16           MR. CRESPO:  That at that point --

17           THE COURT:  Yeah.

18           MR. CRESPO:  -- Mr. Ake and defense counsel were

19   trying to negotiate some sort of plea.

20           THE COURT:  That was 15 months after you got the

21   Google returns.  Again, there's just no explanation for why

22   that information wasn't turned over as soon as you got it.  I

23   don't see it.

24           MR. CRESPO:  Right, Your Honor, I mean, there is -- I

25   mean, again, another fact and circumstance of --

1          THE COURT:  And let me ask you this.

2          MR. CRESPO:  Yes, Your Honor.

3          THE COURT:  Because it's been bothering me.  You

4     spend a lot of ink in your response saying if I grant

5     dismissal, look at all the parade of horribles, all these

6     incentives that you're going to provide to the defense to play

7     games.

8          Flip it.  If I deny dismissal, you can basically say to

9     the defense in a very complex case, here's what we're going

10    with and we'll keep everything else.  You just don't get it.

11    You just don't get it until the eve of trial, and then it's

12    your burden to tell the judge how you are prejudiced?

13          I mean, with a Speedy Trial Act of 70 days and with the

14    Government's preexisting discovery obligations, wouldn't I be

15    doing all of those a disservice?  I mean, you don't sort of

16    wrestle with that in your pleadings, like what do I do with

17    the -- how this has turned like the statute and the rules

18    upside down.

19          MR. CRESPO:  Right, Your Honor, I understand the

20    Court's perspective, and I'm really just trying to fit in the

21    facts as I know them into this test.  You know, I recognize

22    that, you know, there is nunc pro tunc time which is done after

23    the fact.  It's not -- it may have been a pattern or practice

24    at the time, but it's not necessarily elegant.  The best --

25          THE COURT:  It's not legal.  I mean, the Fourth

1    Circuit says I can't do it, and if you're asking me now to make
2    those findings, I can't do it given the record.  So it's -- I
3    don't think it's inelegant.  I don't think it's right.  I mean,
4    it's not the law.
5              MR. CRESPO:   Court's indulgence.
6              THE COURT:   Sure.
7         (Pause in Proceedings.)
8              MR. CRESPO:   And on that point, Your Honor, if the
9    inverse was the case, if the Court did not proceed that way, we
10   don't necessarily -- we think that there are enough safeguards
11   for the Government not to do or go beyond the rules.  I mean,
12   there's obviously Brady.  If this would have happened after
13   trial it would have led to other sanctions.  It led to some
14   sanctions in this case already, and --
15             THE COURT:   What sanctions are those?
16             MR. CRESPO:   Trial --
17             THE COURT:   What sanctions have you all suffered?
18             MR. CRESPO:   Well, Your Honor, the trial was moved
19   even though the Government --
20             THE COURT:   No, what sanctions has the Government
21   suffered?  I made a finding in no bad faith.  I denied
22   dismissal.  I said I'll hear you on the rest of the motions.
23   You have suffered no sanctions.  And, again, Mr. Crespo, you
24   are the unfortunate soul who is standing up right now, but --
25   and you were not here for the other hearings and maybe you

1    didn't write the pleading that I have, but you have suffered no

2    sanctions behind what has gone on in this case, and you may

3    very well believe that Mr. Masood is guilty, but both the

4    guilty and the innocent alike get the process, they get the

5    benefit of the process.

6        So there have been no sanctions to the Government for

7    these deficiencies, not that I've seen.  And I'm not looking at

8    sanctioning you.  That's not my role.  My role is to make sure

9    all the rules are faithfully followed, and if they're not I

10   have to make a call as to what the proper remedy is.

11           MR. CRESPO:  Yes, Your Honor.

12           THE COURT:  We're on the three factors, that's where

13   we left off.  I asked you a question about the Google stuff

14   because it really doesn't have the same explanation as far as I

15   could tell as the data from the devices.

16       So unless there's something else you want to say about the

17   safeguards of the system --

18           MR. CRESPO:  No, Your Honor.

19           THE COURT:  -- we probably should go back to the

20   factors.

21           MR. CRESPO:  I probably -- you know, by saying there

22   was already a sanction, maybe it was a -- a bad word.  I think

23   that the fact that there were issues early on, the Court cured

24   it by moving the trial and obviously looking at this process a

25   lot more closer, so that is a --

1          THE COURT:  Okay.  But so the record is clear, right,

2     that can't be the resolution to a Speedy Trial Act violation is

3     to say, well, you've fixed everything, Judge, by kicking the

4     trial.

5          MR. CRESPO:  No, what I'm saying is that there are

6     safeguards in the system.

7          THE COURT:  How about the fact that it is almost

8     impossible, and this kind of bleeds into the Sixth Amendment

9     issue which I likely won't address, but it's very hard to

10    demonstrate the prejudice that happens with two years passing,

11    the memories fading, the witnesses missing, especially of a

12    case of this magnitude.

13         So the defense just gets, you know, a huge data dump and

14    your position is but they haven't shown prejudice.  That's how

15    I read your pleadings, at least.  And I just ask, well, what

16    about the sort of structural prejudice of, oh, now after two

17    years of a cloud of this indictment hanging over my head we got

18    to go figure out what's left.

19         The defense makes the point that, for example, the infused

20    server which I was told was a server and was given over, wasn't

21    true, is gone, right?  The company's done.  It's over.  It's

22    bye-bye.  So do I really got to go any further than that to

23    say, well, here's the prejudice?

24         The search warrant returns had been disclosed.  You know,

25    again, I don't think you were here for the August hearing, the

1    search warrant returns were disclosed on the date of that

2    hearing and they were a mess, couldn't figure out who did what.

3    27 devices, 30 devices, we found out that day that the laptop

4    from Ms. Jackson was returned.

5         Okay.  You made a decision to do that, but the defense

6    didn't have any opportunity, had those warrants been given

7    over, I mean, you had them.  You had the returns from the

8    beginning.  Had they been given over to the defense, the

9    defense could have asked questions about, well, what is this

10   laptop and where is it.  None of that was given over.

11        So prejudice is pretty clear to me.  I don't know what

12   else I have to do.  They have to show me that you sat on Brady?

13   I don't know if they have to do that to show the prejudice in

14   this case.

15             MR. CRESPO:  Your Honor, the Government's view on the

16   prejudice aspect of it is that up until the point where there

17   was new counsel and Mr. Masood was still trying to resolve this

18   case, those other -- those other -- those other extensions of

19   time, both exclusions of time and letting the pretrial motions

20   stay on the docket were there.  It wasn't until that point.  So

21   everything leading up to that, I mean, we would have had two

22   years either way or more than two years of waiting for a trial.

23   It's just that --

24             THE COURT:  But -- well, yes, but there's actually

25   evidence that, you know, your own agent recognized we're just a

1    couple months away from trial and you haven't given over

2    anything.  Like maybe we should start rolling over the dis --

3    nothing, and that didn't prompt anybody to give the defense

4    anything.  I just -- I'm sorry, I just am very much trying to

5    see how in this case the safeguards were there.  It's very hard

6    for me to get there.  I'm trying, but --

7                MR. CRESPO:  Right, Your Honor, and I think some of

8    these cases take a lot longer than that.  Unfortunately --

9                THE COURT:  Nah, they shouldn't and they don't.  They

10   really don't.  They don't.  I just tried a very complex

11   securities fraud case that went from A to Z a lot faster.  And

12   they had their discovery fights so it can't be that, well, this

13   is just the de rigueur is it takes two years, especially when

14   the Government doesn't turn over the evidence.

15               MR. CRESPO:  I just need to check with my co-counsel

16   to see if there's anything else we need to add.

17               THE COURT:  Sure.  Yep.

18         (Pause in Proceedings.)

19               MR. CRESPO:  I have nothing further, Your Honor.

20               THE COURT:  Okay.  Defense, anything else?

21               MR. GOROKHOV:  Court's indulgence.

22               THE COURT:  Sure.

23         (Pause in Proceedings.)

24               MR. GOROKHOV:  Your Honor, just one quick factual

25   point and one legal point.

Motions Hearing 1/27/25

1          So in terms of the volume of the e-mails, Mr. Goldman was

2     just able to check, and so just the discovery, just the Google

3     2 production --

4                    THE COURT:  Okay.

5                    MR. GOROKHOV:  -- was 159,000.

6                    THE COURT:  159,000 what?  E-mails or --

7                    MR. GOROKHOV:  Items.

8                    THE COURT:  Items.  All right.  That's Google 2.

9                    MR. GOROKHOV:  That's Google 2, Production 2.

10          And secondly --

11                    THE COURT:  And what was Google 1?  You might already

12     have that in there.  Do you have it in here?

13                    MR. GOROKHOV:  I don't know if we have a number on

14     that, Your Honor.

15                    THE COURT:  Okay.

16                    MR. GOROKHOV:  We know it's fewer than that.

17                    THE COURT:  Okay.

18                    MR. GOROKHOV:  But as to the other point the

19     Government made about, you know, not following up, I mean,

20     independent, if we had not even said a peep about these Google

21     e-mails, Rule 16 requires their production no matter what.

22                    THE COURT:  Well, the way that I'm looking at it is,

23     I don't even need to get there because it was put on the record

24     in August of 2022 that part of the delay was to let the

25     defense -- defense communicated that these were relevant and

1    that the Government was going to produce them.

2         So I mean, it made it into the reservation of rights

3    letter.  The Government also informed the Court that they're

4    awaiting the results of the search warrant, and so it's not as

5    if the defendant walked away from them and said -- and I do

6    recall Ms. Kelly filed that for everybody.

7              MR. GOROKHOV:  Right.

8              THE COURT:  So at that point I don't think you need

9    to keep poking the Government.  The Government has to produce

10   it.

11             MR. GOROKHOV:  Right.  Thank you, Your Honor.

12             THE COURT:  You said there was a legal point that --

13             MR. GOROKHOV:  That was the legal point.

14             THE COURT:  Oh, that was the legal point, okay.

15             MR. GOROKHOV:  One last thing, Your Honor, I realize

16   I never moved this summary chart D-1 into evidence.  It is a

17   summary of what's in the record, so --

18             THE COURT:  What's in the record so far.

19             MR. GOROKHOV:  Yes, Your Honor.

20             THE COURT:  All right.  I'll take it.  Thanks.

21             MR. GOROKHOV:  And it's really to aid the Court.

22   Thank you.

23             THE COURT:  Thank you.  All right.  Government?

24             MR. CRESPO:  Just one last point, Your Honor, I

25   forgot to mention that as a final point, I believe this is one

1    of the discussions in the case, that the public has an enormous

2    interest in prosecuting this case or ensuring that it moves

3    forward.  That is why we're also asking for a dismissal without

4    prejudice.

5        THE COURT:  They actually have an enormous interest

6    in a speedy and public trial.  I mean, that's part of the

7    analysis in speedy trial, right?

8        MR. CRESPO:  Yes.

9        THE COURT:  Is aside from what the parties might

10   want, is it the public's interest to continue to delay the

11   trial.  So now to say that it's the public's interest to

12   further delay the trial, to forgive these shortcomings, seems

13   an odd -- I mean, you know what I'm saying?  I'd sort of flip

14   it around and say at some point when is it in the public's

15   interest to actually dismiss this case with prejudice so that

16   this doesn't happen in the future?  Is it the public's interest

17   to make sure that the rules are faithfully followed?

18       MR. CRESPO:  Absolutely, Your Honor.  But also

19   addressing the third factor, which is the impact of a

20   re-prosecution on the administration of this chapter and the

21   administration of justice, and from the Government's

22   perspective ensuring that the loss of funds is something that

23   is prosecuted is -- you know, is obviously a public interest as

24   well.

25       THE COURT:  No doubt.  No doubt.  I hear you on that.

1      I don't disagree with that at all.

2              MR. CRESPO:   Thank you.

3              THE COURT:   Okay.  Thank you.  All right, counsel, I

4      am going to write on this.  I'm not going to -- you know, as

5      much as I would prefer to do it from the bench so that you all

6      have clarity and certainty, I will try to get it out as soon as

7      possible.

8          We currently have a -- what's the next date that we have

9      on the books?  Does anybody know hearing date?

10             MR. GOLDMAN:   I believe the next hearing date is the

11     week before trial, so the trial date is the 17th and I think we

12     have a hearing, a pretrial conference and hearing on motions in

13     limine, I think it's the Thursday before the Monday trial date.

14             THE COURT:   In March, right?

15             MR. GOLDMAN:   In March, yes.

16             THE COURT:   My hope is to get you this well before

17     that.  So you're in limine filing date is when?  Well, whatever

18     it is, it's my intention to get you this before anyone has to

19     prepare for those in the event that I do dismiss and dismiss

20     with prejudice.

21         Oh, let me ask you one other, just to sort of close the

22     loop on all of this.

23         I am right as a matter of law that the superseding

24     indictments don't change the analysis at all, correct?

25             MR. GOROKHOV:   Court's indulgence.

1          THE COURT:  They don't restart the clock.

2          MR. GOROKHOV:  Oh, no, Your Honor.

3          THE COURT:  They don't give the Government a fresh

4    start, it's none of that in terms of the speedy trial analysis,

5    and the Government hasn't argued otherwise, so --

6          MR. GOROKHOV:  Your Honor, to answer your question,

7    it doesn't affect the timeline but, as we noted in our motion,

8    it's another -- yet another piece of evidence as far as lack of

9    diligence.

10          THE COURT:  Yeah, and I don't necessarily think it

11    moves the needle either way --

12          MR. GOROKHOV:  Yeah.

13          THE COURT:  -- in terms of that regard.  I know you

14    made that argument, but there isn't a legal argument that

15    somehow you refresh the clock when you supersede.  Okay.  And

16    the defense -- the Government's not raising that, okay.

17          MR. GOLDMAN:  Just to answer the Court's prior

18    question, the motions in limine deadline is February 18th, so

19    we would need some time to prepare those in advance and to the

20    extent that we can save Mr. Masood's resources in not preparing

21    those, we'd be appreciative, but we understand that the Court

22    will take the time that it needs to prepare its order.

23          THE COURT:  All right.  So what I will do is this.

24    In the event that the drafting process, if I do dismiss and if

25    I -- whether with or without prejudice and I don't have

1    something for you by the beginning of February, which would be

2    next week, I'll get you on the phone for a recorded status,

3    announce my ruling so you know where you're going and then

4    write, okay?

5              MR. CRESPO:  Thank you, Your Honor.

6              THE COURT:  Thank you all.

7              MR. GOROKHOV:  Thank you, Your Honor.

8         (The proceedings concluded at 11:50 a.m.)

9              CERTIFICATE OF OFFICIAL REPORTER

10        I, Amanda L. Longmore, Registered Professional Reporter
      and Federal Certified Realtime Reporter, in and for the United
11    States District Court for the District of Maryland, do hereby
      certify, pursuant to 28 U.S.C. § 753, that the foregoing is a
12    true and correct transcript of the stenographically-reported
      proceedings held in the above-entitled matter and that the
13    transcript page format is in conformance with the regulations
      of the Judicial Conference of the United States.

14

15                        Dated this 9th day of February 2025
                           -S-

16                        _____
                          AMANDA L. LONGMORE, RPR, FCRR
17                        FEDERAL OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25

**1** [2] - 42:7; 65:11
**1.2** [1] - 53:19
**107** [1] - 44:22
**10:01** [1] - 2:2
**11** [1] - 46:23
**114** [2] - 41:18, 20
**115** [1] - 42:23
**117** [1] - 43:5
**12** [3] - 18:6;
21:21; 25:4
**13** [1] - 22:18
**134** [2] - 43:6;
44:16
**13th** [3] - 18:12;
45:12, 16
**14** [1] - 21:21
**14th** [1] - 21:23
**15** [2] - 24:12;
58:20
**159,000** [2] - 65:5
**15th** [3] - 29:13;
39:19; 57:23
**16** [13] - 3:25; 6:3;
17:12; 19:18;
20:13; 27:22;
28:5; 36:10, 13;
44:14, 17;
54:13; 65:21
**16(d)(1)(D** [1] -
27:22
**16th** [4] - 23:15,
22; 40:17, 23
**17** [5] - 6:1; 18:3;
21:15; 28:8
**177** [1] - 44:19
**17th** [2] - 45:6;
68:11
**18** [2] - 7:20; 31:3
**180** [1] - 44:23
**18th** [1] - 69:18
**191** [1] - 45:7
**2** [4] - 65:3, 8
**20** [4] - 18:17;
26:6; 36:14
**20-something** [2]
- 12:6; 26:19
**2022** [23] - 5:20;
9:12; 11:13;
15:9, 20; 16:6,
22; 18:12,
21-22, 25;
19:14; 22:4;
38:23; 40:17,
23; 41:15; 42:4;
43:6; 44:18;
57:23; 65:24
**2023** [14] - 3:25;
13:2; 15:1; 20:9;
22:2; 23:5; 27:9;
36:10; 44:21;

56:13; 58:13
**2024** [13] - 7:10,
16; 21:14;
25:11; 29:19;
36:4, 6; 45:12,
16; 57:9, 13
**21** [6] - 16:6; 22:9;
23:23; 25:11;
52:12
**211** [3] - 45:12,
17; 46:2
**22** [3] - 4:7; 19:14;
20:8
**22nd** [8] - 5:23;
6:3; 22:25;
38:23; 43:5;
48:3
**23rd** [3] - 22:20;
48:2
**24** [1] - 23:17
**24th** [3] - 22:22;
45:18; 48:2
**27** [10] - 5:6, 13,
18, 21, 23, 25;
13:15; 23:25;
63:3
**289** [3] - 36:18,
23; 37:5
**29** [2] - 22:13;
25:8
**29th** [1] - 48:3
**2nd** [3] - 5:22;
18:25; 41:15
**30** [7] - 17:9; 18:3;
19:14; 21:3;
23:18; 63:3
**30,000-foot** [1] -
57:3
**30th** [2] - 21:20;
23:2
**3161(h)(8)(C** [1] -
31:3
**31st** [1] - 16:11
**33** [2] - 5:21; 34:8
**330** [2] - 2:16;
46:23
**34,000** [1] - 23:19
**35** [3] - 5:24;
19:13
**3rd** [5] - 20:9;
21:14, 18;
23:25; 44:18
**4** [1] - 36:5
**41** [1] - 5:24
**46** [1] - 7:5
**470** [2] - 36:1, 22
**490** [2] - 46:5, 9
**4th** [1] - 36:4
**500,000** [1] -
23:18

**555** [1] - 47:4
**56** [2] - 6:4; 21:16
**561** [1] - 47:9
**573** [1] - 47:12
**5th** [5] - 10:17;
27:8; 29:13;
42:4
**6** [4] - 5:15, 21, 24
**6,000** [1] - 23:20
**6/13/2024** [1] -
46:13
**673** [2] - 46:4, 8
**68** [1] - 5:25
**6th** [6] - 5:11, 13;
15:17; 21:21;
44:21
**7** [5] - 5:15; 15:9,
20; 22:6
**70** [2] - 6:5; 59:13
**700** [1] - 55:24
**756** [1] - 47:12
**7th** [1] - 15:14
**8** [1] - 18:5
**8/10/2022** [1] -
46:11
**8/23** [1] - 47:5
**8th** [3] - 15:12, 14,
16
**9** [4] - 17:13;
18:15; 22:15;
23:4
**90** [1] - 58:4
**91** [1] - 5:6
**94** [1] - 39:20
**95** [1] - 40:6
**9th** [4] - 15:18, 25;
16:22; 44:25
**a.m** [1] - 2:2
**able** [4] - 7:2;
23:9; 32:20;
65:2
**absolutely** [4] -
2:21; 37:14;
55:16; 67:18
**accept** [2] - 18:7;
50:7
**access** [7] - 13:6;
23:2, 14-15;
32:2; 35:20, 24
**accessed** [1] -
16:13
**accomplish** [1] -
11:5
**accord** [1] - 35:1
**according** [1] -
35:1
**accounts** [19] -
10:24; 21:8;
39:3, 6, 9, 14,
25; 40:2; 42:1,

7, 20; 43:4, 7;
56:6; 58:1
**accurate** [2] - 8:4;
47:19
**acknowledged**
[1] - 49:24
**acknowledges** [5]
- 17:7; 19:19;
40:6, 15; 41:1
**Act** [13] - 3:5;
4:12, 25; 6:10;
11:5; 12:2;
15:10, 17; 24:9;
26:21; 31:2;
59:13; 62:2
**actively** [2] - 24:1;
41:25
**add** [1] - 64:16
**added** [1] - 55:9
**additional** [10] -
6:4; 17:24; 19:2,
4, 11; 35:22;
40:19; 56:9;
58:4
**address** [4] -
2:25; 6:12; 50:2;
62:9
**addressed** [2] -
49:6, 15
**addressing** [1] -
67:19
**administration**
[4] - 51:16;
67:20
**admits** [1] - 24:17
**advance** [1] -
69:19
**advancing** [1] -
31:22
**adverse** [1] -
16:19
**advised** [1] - 24:5
**affect** [1] - 69:7
**affected** [1] -
20:21
**affidavit** [2] - 39:1
**agent** [3] - 13:1;
44:4; 63:25
**Agent** [19] - 2:7;
3:14; 13:3, 15;
15:21; 16:14,
23; 17:8; 18:7,
11; 22:22; 23:5;
39:1, 15; 41:25;
42:5; 43:3, 6;
44:25
**agents** [4] - 13:3;
22:24; 42:6;
44:4
**ago** [1] - 14:2

**agree** [5] - 30:6;
33:11; 36:25;
52:25; 56:9
**agreed** [3] - 52:1;
53:5; 55:19
**agreement** [2] -
52:5; 53:1
**agreements** [3] -
25:14; 29:21;
51:25
**ahead** [5] - 28:15;
44:21; 45:5, 9;
53:8
**aid** [1] - 66:21
**Akbar** [2] - 2:4, 10
**Ake** [29] - 7:10;
10:9; 13:1, 16;
15:21, 25; 16:6,
14, 17; 18:3, 15;
19:1; 20:12, 20;
21:19; 22:6, 8,
10, 13, 23; 23:5;
24:12; 25:5, 25;
37:1; 40:6;
56:11; 57:19;
58:18
**alarm** [1] - 54:14
**alert** [1] - 42:9
**alerts** [3] - 42:1;
45:3; 47:17
**alike** [1] - 61:4
**alleged** [1] - 39:11
**allowed** [3] - 3:6;
56:8
**allows** [1] - 37:22
**almost** [8] - 2:16;
20:11; 32:1;
36:16; 46:9, 15;
51:20; 62:7
**alone** [1] - 35:10
**Amendment** [6] -
26:23; 33:15,
21, 25; 34:14;
62:8
**amount** [3] - 52:1,
5, 24
**amounts** [3] -
19:21; 44:12;
52:15
**analysis** [3] -
67:7; 68:24;
69:4
**animus** [1] - 33:2
**answer** [3] -
47:15; 69:6, 17
**anticipate** [1] -
19:23
**anticipated** [1] -
17:24
**apologies** [1] -

14:19
**apologize** [3] -
36:12, 15; 42:14
**appearance** [3] -
5:15; 15:10;
46:21
**appeared** [1] -
24:19
**apply** [2] - 7:13;
15:3
**appreciation** [1] -
26:2
**appreciative** [1] -
69:21
**approach** [2] -
35:8; 38:11
**appropriate** [2] -
29:5; 41:8
**approval** [1] -
25:6
**approved** [1] -
39:16
**April** [8] - 5:15;
7:10; 15:9, 12;
22:4; 25:8, 11
**argue** [1] - 28:23
**argued** [1] - 69:5
**arguing** [1] - 37:1
**argument** [6] -
8:25; 9:24; 24:9;
31:16; 69:14
**arguments** [2] -
31:18; 33:18
**Army** [1] - 15:23
**Army's** [1] - 18:8
**arrest** [1] - 54:21
**arrested** [1] - 21:2
**arrived** [1] - 50:2
**ascribing** [1] -
33:2
**aside** [2] - 12:21;
67:9
**aspect** [2] - 37:19;
63:16
**assigned** [1] -
20:2
**assignment** [1] -
16:1
**assume** [1] - 8:7
**assuming** [2] -
43:25; 48:20
**assumption** [1] -
48:21
**attach** [1] - 39:10
**attempts** [1] -
55:9
**attorney** [5] -
14:3; 23:2, 13;
43:21; 55:13
**Attorney's** [2] -

16:23; 21:1
**attorney-client** [2] - 43:21; 55:13
**attorneys** [1] - 41:6
**August** [27] - 5:11, 19; 9:12; 11:13; 13:4; 15:18; 16:22; 17:12; 18:3; 22:25; 23:2, 17; 25:21; 29:19; 30:3; 39:19; 40:17, 23; 48:2; 50:11; 57:23; 62:25; 65:24
**AUSA** [19] - 2:4, 6; 7:8; 11:6; 15:21, 25; 16:6, 14; 20:20; 22:8, 13, 23; 23:5, 13, 16; 25:5; 30:12; 32:1
**available** [1] - 23:1
**awaiting** [2] - 57:25; 66:4
**backed** [1] - 25:12
**background** [1] - 25:19
**backwards** [1] - 8:10
**bad** [12] - 2:19; 11:8; 22:9; 25:24; 30:24; 32:14; 35:12; 49:25; 54:6; 60:21; 61:22
**bad-faith** [1] - 2:19
**bag** [1] - 9:17
**ball** [1] - 22:10
**Barker** [1] - 34:4
**barrier** [1] - 55:24
**based** [8] - 6:16; 8:4; 17:17; 24:25; 30:25; 33:18, 23; 48:17
**basis** [1] - 19:24
**begin** [1] - 18:20
**beginning** [3] - 27:25; 28:2; 63:8
**behalf** [3] - 2:5, 10; 17:15
**behind** [3] - 43:1; 57:3; 61:2
**belabor** [1] - 25:13
**belonging** [1] -

39:6
**bench** [1] - 68:5
**benefit** [1] - 61:5
**benefits** [1] - 24:21
**best** [2] - 38:8; 59:24
**better** [2] - 24:15, 17
**between** [7] - 5:16; 15:20; 16:23; 28:8; 36:13; 50:17; 57:19
**beyond** [2] - 6:5; 60:11
**big** [1] - 18:4
**binder** [2] - 2:23; 4:4
**bit** [8] - 8:16; 14:16; 16:2; 33:13; 38:5; 44:21; 45:5; 49:9
**blame** [1] - 9:21
**blanket** [2] - 16:17; 50:8
**bleeds** [1] - 62:8
**blow** [1] - 4:13
**blown** [1] - 13:14
**blush** [1] - 24:19
**books** [1] - 68:9
**bore** [1] - 23:20
**boring** [1] - 16:25
**bothering** [1] - 59:3
**bottom** [2] - 25:13; 48:25
**boy** [1] - 26:12
**Brady** [6] - 26:18; 43:9, 24; 47:22; 60:12; 63:12
**break** [3] - 4:23; 32:20; 33:4
**breaks** [1] - 46:24
**Bredar's** [1] - 6:21
**briefing** [1] - 37:21
**briefly** [1] - 49:19
**buckets** [3] - 47:2, 7
**Buffalo** [1] - 34:2
**bulk** [1] - 42:12
**bunch** [1] - 45:9
**burden** [5] - 28:25; 34:5, 14, 19; 59:12
**bureaucracy** [1] - 54:11
**bye** [2] - 62:22

**bye-bye** [1] - 62:22
**calculation** [1] - 35:17
**calendar** [1] - 31:5
**camera** [1] - 2:18
**cannot** [4] - 5:1; 9:21; 30:10; 57:22
**care** [3] - 12:1; 54:5, 13
**carried** [1] - 39:11
**carry** [1] - 39:13
**case** [63] - 2:24; 3:5, 10; 6:12, 21-22; 7:11, 17; 8:15; 9:8, 13; 10:22, 25; 13:1, 9, 12; 14:1; 19:19; 20:2; 22:3; 24:16; 25:2, 19; 26:3, 13; 27:3; 28:7, 12; 29:1; 30:16; 33:7; 34:2; 38:21; 39:9, 13; 44:4; 48:10; 49:20; 50:19; 51:7, 15; 53:14; 55:10; 57:6, 12; 58:12; 59:9; 60:9, 14; 61:2; 62:12; 63:14, 18; 64:5, 11; 67:1, 15
**case-in-chief** [1] - 19:19
**cases** [11] - 6:21; 7:23; 30:8, 15; 32:20, 24; 33:3; 50:20, 22; 51:2; 64:8
**categories** [1] - 46:24
**category** [1] - 34:11
**certain** [8] - 6:8; 16:3; 20:21; 21:8; 24:18, 20; 29:22; 57:25
**certainly** [8] - 14:11; 16:20; 21:19; 36:25; 37:17; 49:17; 50:4; 54:14
**certainty** [1] - 68:6
**cetera** [2] - 45:11
**chance** [1] - 18:1

**change** [2] - 53:19; 68:24
**changes** [1] - 8:23
**changing** [2] - 19:8; 26:3
**chapter** [2] - 51:17; 67:20
**charge** [3] - 52:21; 54:17
**chart** [4] - 37:22; 38:9; 66:16
**check** [5] - 23:5; 46:19; 52:17; 64:15; 65:2
**chief** [1] - 19:19
**child's** [1] - 35:19
**choice** [2] - 2:21; 16:20
**circling** [1] - 22:9
**Circuit** [3] - 6:13; 34:10; 60:1
**circumstance** [1] - 58:25
**circumstances** [9] - 3:6; 13:8; 26:9, 16; 51:15; 53:24; 55:19; 56:5, 10
**cited** [2] - 6:22; 34:2
**citing** [1] - 19:1
**clarified** [1] - 19:4
**clarity** [2] - 56:12; 68:6
**clear** [13] - 3:23; 17:20; 21:12; 24:18; 25:16; 26:11; 39:6; 43:2; 48:11; 49:12; 53:13; 62:1; 63:11
**clearly** [5] - 9:10; 11:10, 17; 12:8; 14:13; 29:15, 24; 37:23; 40:4; 47:17; 49:23, 25; 53:11; 58:5
**client** [3] - 39:8; 43:21; 55:13
**clients** [1] - 18:2
**clock** [4] - 15:10; 27:16; 69:1, 15
**close** [2] - 15:25; 68:21
**closer** [2] - 23:20; 61:25
**closing** [1] - 23:4
**cloud** [2] - 50:8; 62:17

**co** [3] - 14:15; 53:2; 64:15
**co-counsel** [2] - 14:15; 64:15
**co-counsel's** [1] - 53:2
**codefendants** [2] - 11:3; 39:9
**colleague** [1] - 42:13
**colleagues** [1] - 8:14
**collected** [1] - 23:8
**collective** [1] - 26:5
**column** [5] - 38:14; 39:1; 40:8; 41:24; 47:14
**commends** [1] - 24:13
**communicated** [4] - 29:14; 32:8, 18; 65:25
**communicates** [1] - 18:15
**communication** [2] - 17:11; 29:23
**communication s** [2] - 2:17; 21:9
**company's** [1] - 62:21
**comparison** [1] - 35:18
**complete** [7] - 22:20; 23:10; 27:12; 31:21; 36:23
**completed** [8] - 9:19; 19:20; 20:3, 17; 32:11; 36:1; 44:12
**completely** [2] - 4:13; 35:8
**complex** [3] - 54:16; 59:9; 64:10
**complexion** [1] - 26:3
**complexities** [2] - 54:1; 55:10
**complicated** [1] - 22:3
**computer** [1] - 58:2
**computers** [1] - 40:2
**conceded** [1] -

33:16
**conceding** [2] - 6:8; 7:8
**concentrate** [1] - 3:13
**concrete** [1] - 50:13
**conditional** [4] - 11:24; 12:3; 17:20; 19:6
**conditioned** [2] - 12:3, 7
**conduct** [2] - 26:12; 34:16
**conducted** [1] - 19:3
**confer** [1] - 8:17
**conference** [2] - 29:13; 68:12
**conferences** [1] - 54:21
**confused** [1] - 38:6
**congestion** [1] - 31:4
**consent** [12] - 10:5; 11:16, 24-25; 12:1, 6; 16:17; 17:12, 20; 18:25; 40:14; 45:13
**consented** [1] - 32:9
**consents** [1] - 19:7
**consider** [4] - 3:6; 35:23; 56:8
**consideration** [1] - 38:20
**considered** [2] - 31:14; 51:13
**conspiracy** [2] - 52:23; 53:6
**constant** [1] - 29:23; 54:3
**contact** [1] - 16:23
**contain** [1] - 39:9
**contained** [1] - 47:16
**containing** [1] - 44:15
**contemporaneo us** [2] - 6:23; 8:10
**contemporaneo usly** [1] - 3:8
**contents** [3] - 17:5; 41:25; 42:6

**context** [1] - 13:7
**continuance** [4] -
17:17; 20:19;
30:25; 31:3
**continuances** [2]
- 19:6; 20:7
**continue** [3] -
29:4; 30:1;
67:10
**contract** [1] -
24:21
**contrary** [2] -
26:1; 28:10
**control** [1] - 21:10
**conversation** [4] -
15:20; 18:17;
29:15; 55:2
**conversations** [4]
- 25:18; 29:12;
45:25; 57:19
**convinces** [1] -
35:4
**cooperator** [1] -
39:7
**cooperators** [3] -
25:15; 28:8;
51:23
**copies** [1] - 38:3
**copy** [2] - 16:5;
38:10
**correct** [5] -
10:18; 33:12,
20; 35:15; 68:24
**correction** [1] -
42:13
**counsel** [26] - 2:5,
15; 8:17; 11:17;
12:12; 14:15;
16:6, 18; 17:14;
20:9, 25; 22:7;
23:23; 24:5, 13;
25:21; 29:10;
45:22; 51:6;
57:6; 58:18;
63:17; 64:15;
68:3
**counsel's** [1] -
53:2
**count** [4] - 4:19;
5:5, 9, 24
**counted** [6] -
5:13, 16-17;
15:12; 24:8;
35:13
**countenance** [1] -
57:23
**couple** [8] - 4:1;
16:10; 19:25;
20:3; 27:25;
37:7; 42:4; 64:1

**course** [2] - 4:19;
7:24
**COURT** [150] -
2:8, 13; 5:5;
6:18; 7:4; 8:19;
9:5, 7; 10:14,
18; 11:14, 19,
22, 24; 12:15,
18; 14:17, 20;
15:5, 14; 18:15,
22; 27:6, 9, 11,
14, 22; 28:18;
29:11, 17; 30:2,
4, 8; 31:24;
32:7, 10, 22;
33:13; 34:23;
35:12; 36:3, 5,
8, 10, 13, 16,
19; 37:6, 9;
38:1, 5, 8, 12,
17, 24; 40:3;
42:8, 15; 43:10,
14, 17, 20, 24;
44:3, 8; 45:15,
18, 21, 25; 46:6,
10, 13, 16; 47:2;
48:1, 7, 10;
49:3, 11; 50:6,
20, 22, 24; 51:3,
5, 10, 22; 52:7,
15, 19, 25; 53:3,
8, 20; 54:4;
55:5, 11, 17, 21;
56:7, 21; 57:2,
8, 12, 15, 22;
58:13, 15, 17,
20; 59:1, 3, 25;
60:6, 15, 17, 20;
61:12, 19; 62:1,
7; 63:24; 64:9,
17, 20, 22; 65:4,
6, 8, 11, 15, 17,
22; 66:8, 12, 14,
18, 20, 23; 67:5,
9, 25; 68:3, 14,
16; 69:1, 3, 10,
13, 23
**court** [3] - 4:7;
28:23; 35:23
**Court** [55] - 3:8;
4:5, 14; 7:1; 9:3;
10:7, 20, 23;
11:6, 20; 14:11,
13; 15:7; 17:21;
19:1, 9, 17, 25;
24:2, 22; 27:1;
29:14, 23;
30:17, 21; 31:1;
32:11, 21; 34:1,
9, 20; 37:22, 25;
39:16; 40:12;

46:3, 18; 49:9,
24; 50:12; 54:2,
14; 56:22;
57:24; 58:3;
60:9; 61:23;
66:3, 21; 69:21
**court's** [4] - 56:2;
60:5; 64:21;
68:25
**Court's** [5] -
28:14; 31:5;
56:5; 59:20;
69:17
**courts** [1] - 8:14
**create** [1] - 35:6
**created** [1] -
37:22
**credit** [2] - 24:9;
31:9
**credited** [1] - 8:15
**CRESPO** [83] -
6:15, 25; 8:17,
21; 9:6; 10:11,
15; 11:12, 15,
21, 23; 12:10,
16; 14:11, 19,
21; 15:12;
18:14, 21;
26:24; 27:8, 10,
13, 19; 28:13;
29:8, 12, 18;
30:3, 7; 31:17;
32:5, 8, 19;
49:5, 19; 50:15,
21, 23, 25; 51:4,
8, 11; 52:20;
53:2, 7, 9, 18,
21; 54:25; 55:6,
16, 18; 56:2, 4,
17, 24; 57:5, 14,
16; 58:9, 14, 16,
18, 24; 59:2, 19;
60:5, 8, 16, 18;
61:11, 18, 21;
62:5; 63:15;
64:7, 15, 19;
66:24; 67:8, 18;
68:2
**Crespo** [4] - 2:6;
33:1; 57:22;
60:23
**Criminal** [1] - 2:4
**critical** [3] - 4:19;
28:2; 47:14
**cull** [1] - 18:9
**culled** [2] - 18:12;
19:16
**culled-out** [1] -
18:12
**cured** [1] - 61:23

**curious** [2] -
51:22; 53:4
**current** [1] - 25:8
**custody** [2] -
9:19; 11:8
**cut** [1] - 26:9
**cuts** [1] - 26:16
**D-1** [1] - 66:16
**Damaris** [1] -
22:14
**Dan** [1] - 2:11
**dark** [1] - 50:8
**Darren** [1] - 2:4
**data** [23] - 9:23;
12:24; 15:22;
16:7, 24; 17:9;
18:6, 9, 12, 19;
21:23; 22:5, 8;
27:3; 32:4;
35:25; 36:21;
44:13; 54:1;
61:15; 62:13
**database** [1] -
15:23
**date** [24] - 8:1, 8;
10:3; 11:13;
18:16; 21:13;
24:3, 25; 25:8;
26:20; 29:4;
38:22; 39:14;
41:22; 47:6;
57:9; 63:1;
68:8-11, 13, 17
**dates** [4] - 13:14;
35:15; 45:23;
56:25
**daylight** [1] - 8:13
**days** [43] - 4:1;
5:2, 6-7, 13, 18,
20, 24; 6:4;
16:11; 17:22;
18:8; 19:13;
21:16; 36:1, 18,
22-23; 37:5, 7;
40:11, 21;
41:18, 21; 42:4;
44:17, 20, 23,
25; 45:7; 46:4,
7-8; 47:4, 9, 12;
55:24; 58:4;
59:13
**de** [1] - 64:13
**deadline** [7] -
23:4, 24; 24:2;
37:6, 9; 58:3;
69:18
**deadlines** [1] -
25:3
**deal** [7] - 4:11, 18,
20; 14:3; 25:16;

30:14; 38:16
**deals** [3] - 8:24;
35:18
**dealt** [1] - 31:8
**December** [20] -
5:22; 6:3; 10:17;
18:25; 19:14;
20:8; 21:21;
24:12; 27:8;
29:13; 41:15;
42:4; 43:5;
58:14
**decide** [2] - 33:18;
34:23
**decision** [2] -
20:10; 63:5
**decisions** [2] -
9:2; 54:17
**defend** [1] - 10:2
**defendant** [3] -
29:16; 50:18;
66:5
**defendant's** [1] -
11:2
**defendants** [17] -
5:14; 15:9;
16:15; 17:15;
19:3, 5, 10;
20:22-24; 29:20,
22, 24; 39:23;
41:4, 7
**defense** [80] -
2:22; 3:12, 22;
4:9, 16, 21; 6:7,
20; 7:9; 8:24;
9:12, 15, 21;
10:1, 19; 11:7,
17, 20; 12:11,
13; 13:14, 18;
14:3; 16:6, 18;
17:6, 25; 18:16;
19:19; 20:6, 15;
21:8; 22:7, 11,
16-17; 24:5,
12-13, 15; 26:3;
27:24; 28:4, 15;
29:9; 30:13, 15;
31:12, 23; 32:8,
18, 22; 33:8;
34:4; 37:10;
39:21; 42:3;
50:4; 52:2;
55:12, 23;
57:20, 23; 58:7,
18; 59:6, 9;
62:13, 19; 63:5,
8-9; 64:3, 20;
65:25; 69:16
**defense's** [3] -
24:9; 32:25;

56:22
**deficiencies** [1] -
61:7
**degree** [2] -
34:15; 56:8
**delay** [18] - 17:16;
19:24; 21:2;
22:11; 26:6;
31:1; 34:3, 5, 8,
17; 49:23, 25;
53:24; 54:2;
55:19; 65:24;
67:10, 12
**delaying** [1] -
27:4
**delays** [1] - 19:22
**delivers** [1] -
18:12
**demonstrate** [2] -
9:9; 62:10
**denied** [1] - 60:21
**deny** [2] - 34:13;
59:8
**denying** [2] -
11:19, 21
**Department** [2] -
19:22; 32:3
**designed** [1] -
11:5
**desire** [2] - 17:18;
54:3
**despite** [1] -
56:21
**detail** [1] - 35:21
**detailed** [1] -
38:15
**details** [1] - 17:1
**devices** [56] -
3:11, 17; 4:6;
7:20; 9:17; 10:6;
11:2; 12:4,
12-13, 22; 13:2;
16:8, 13-14, 16,
25; 17:4, 9-10;
18:4; 19:14;
20:20, 23; 21:3;
22:18; 23:18;
25:1, 22; 26:7,
19; 27:17, 21;
28:3, 8; 35:19,
24-25; 36:3, 5;
38:14; 39:24;
40:2; 47:11, 24;
48:23; 55:22;
56:11; 57:17;
58:2; 61:15;
63:3
**difference** [1] -
15:15
**different** [8] - 9:8;

29:21; 33:22; 45:10; 52:21; 53:25; 54:24
**difficult** [1] - 31:18
**digest** [1] - 17:25
**digging** [1] - 14:21
**digital** [1] - 23:8
**diligence** [5] - 3:10; 48:18, 20; 69:9
**diligent** [1] - 31:5
**diligently** [1] - 24:1
**directly** [1] - 53:13
**directs** [1] - 16:14
**dirty** [1] - 4:18
**dis** [1] - 64:2
**disabuse** [1] - 10:7
**disagree** [2] - 5:9; 68:1
**disarray** [1] - 24:4
**disclose** [3] - 2:22; 43:9
**disclosed** [4] - 28:7, 11; 62:24; 63:1
**disclosure** [2] - 16:17; 42:18
**discovery** [17] - 12:17; 13:17; 17:25; 19:2, 4, 11-12, 18; 21:12; 23:12; 40:1; 41:5; 55:24; 58:2; 59:14; 64:12; 65:2
**discuss** [3] - 7:2; 14:14; 32:20
**discussed** [2] - 39:20; 49:13
**discussing** [1] - 52:10
**discussions** [3] - 11:17; 12:11; 67:1
**dismiss** [5] - 49:18; 67:15; 68:19; 69:24
**dismissal** [11] - 33:10, 15; 35:2, 10; 37:17; 49:9; 51:15; 59:5, 8; 60:22; 67:3
**dismissed** [2] - 13:9, 12

**displeasure** [1] - 20:25
**disprove** [2] - 34:6
**disservice** [1] - 59:15
**distinct** [2] - 14:1; 43:8
**district** [1] - 9:8
**District** [3] - 4:14; 35:6
**diversion** [1] - 25:14
**division** [1] - 25:7
**DNA** [2] - 30:19
**docket** [4] - 15:13; 17:2; 58:11; 63:20
**document** [2] - 39:19, 22
**documents** [2] - 24:19; 39:10
**Dog** [2] - 30:16; 54:24
**DOJ** [1] - 54:11
**dollar** [1] - 53:5
**dollars** [2] - 51:20
**Dominguez** [4] - 16:24; 17:8; 18:3, 5
**done** [8] - 9:22; 20:7, 18; 37:3, 21; 38:15; 59:22; 62:21
**double** [1] - 46:19
**double-check** [1] - 46:19
**doubt** [2] - 67:25
**down** [5] - 13:25; 21:6; 36:21; 59:18
**downloaded** [1] - 19:15
**downloading** [1] - 16:7
**downstream** [1] - 55:12
**drafted** [1] - 39:15
**drafting** [1] - 69:24
**drawing** [1] - 35:20
**drive** [2] - 9:23; 16:24
**driven** [1] - 53:25
**driver** [2] - 31:14
**due** [1] - 19:21
**dump** [1] - 62:13
**during** [2] - 9:14; 12:11; 31:21

**e-mail** [16] - 3:24; 10:24; 13:25; 16:18, 22; 18:24; 21:8, 20; 22:25; 23:22; 28:19; 42:1; 46:23; 58:1
**e-mails** [24] - 2:22, 24; 3:13; 4:3; 12:19; 13:1; 16:6; 17:8; 21:8; 22:8, 23; 23:5; 28:1; 32:18; 37:20; 40:10; 42:21; 44:16; 45:4; 47:17; 49:7; 65:1, 6, 21
**early** [5] - 7:16; 12:20; 27:20; 61:23
**easy** [1] - 34:21
**ECF** [9] - 2:16; 5:6; 39:20; 40:6; 44:22; 45:12, 17; 46:2, 23
**effective** [1] - 41:2
**efficient** [1] - 32:2
**egg** [1] - 23:9
**egregious** [2] - 51:19; 53:10
**eight** [4] - 28:21; 34:10; 45:7; 50:16
**either** [8] - 3:2; 25:1; 35:14; 43:7, 25; 47:19; 63:22; 69:11
**electronic** [5] - 17:4, 18; 19:21; 20:16; 46:22
**elegant** [2] - 55:20; 59:24
**element** [1] - 42:9
**Elmo** [1] - 38:1
**emphasize** [2] - 38:19; 48:14
**emphasized** [2] - 36:24; 44:11
**end** [6] - 3:24; 12:5; 42:15; 47:10; 52:12, 14
**ended** [1] - 3:25
**ends** [4] - 8:2, 9; 19:9; 32:13
**engage** [1] - 19:12
**engaging** [2] - 29:18; 41:10
**enormous** [2] - 67:1, 5

**ensuring** [2] - 67:2, 22
**entered** [1] - 46:21
**enters** [2] - 40:12, 18
**Entertainment** [1] - 34:2
**entire** [1] - 50:19
**entirety** [1] - 50:18
**entry** [5] - 40:22; 42:5; 45:3, 17
**especially** [2] - 62:11; 64:13
**essentially** [3] - 9:15; 21:5; 31:8
**estopped** [2] - 4:17; 7:6
**estoppel** [7] - 8:25; 9:24; 10:10; 11:10; 12:4, 9; 31:8
**estoppel's** [1] - 13:10
**et** [2] - 45:11
**Eugene** [1] - 2:9
**evasion** [1] - 7:12
**eve** [2] - 30:8; 59:11
**event** [5] - 3:10; 24:10; 56:14; 68:19; 69:24
**events** [1] - 45:10
**evidence** [27] - 11:4, 6; 19:21, 23; 20:5, 16, 20; 21:4; 23:8; 28:24; 34:14; 37:1; 39:4, 10-11; 41:3, 10, 14; 46:22, 25; 49:8; 50:13; 52:22; 63:25; 64:14; 66:16; 69:8
**evidentiary** [2] - 19:8; 47:6
**exactly** [1] - 33:17; 44:6
**example** [1] - 62:19
**excerpt** [1] - 39:1
**excessive** [3] - 34:9
**exclude** [6] - 5:1; 6:3; 15:18; 17:13; 31:14; 41:16
**excluded** [5] -

4:20; 5:8, 13, 20; 21:17
**exclusionary** [1] - 8:1
**exclusions** [2] - 4:22; 63:19
**exclusive** [1] - 9:19
**exclusively** [1] - 2:16
**exculp** [1] - 40:14
**exculpatory** [2] - 17:19; 40:15
**excuse** [2] - 42:13; 44:9
**execute** [1] - 54:18
**executed** [1] - 21:3
**execution** [1] - 54:22
**exhibit** [1] - 46:18
**Exhibit** [1] - 46:23
**exhibits** [2] - 42:8, 18
**expect** [2] - 33:4; 39:4
**expecting** [1] - 40:5
**expects** [1] - 28:23
**expeditiously** [3] - 40:6, 20; 41:20
**explain** [3] - 9:24; 10:18; 37:24
**explaining** [1] - 19:10
**explains** [1] - 39:2
**explanation** [7] - 21:25; 32:2; 56:15, 17; 58:21; 61:14
**express** [2] - 27:3; 48:16
**expressed** [2] - 20:24; 29:19
**expressly** [1] - 30:17
**extend** [3] - 23:24; 24:2; 25:3
**extensions** [1] - 63:18
**extent** [1] - 69:20
**extremely** [2] - 32:15; 53:22
**face** [2] - 29:16
**fact** [12] - 3:22; 5:1; 7:10, 20;

8:3; 27:17; 31:25; 37:15; 58:25; 59:23; 61:23; 62:7
**factor** [8] - 34:17; 35:23; 50:12; 51:18; 56:4, 9; 67:19
**factors** [12] - 34:1, 4, 7, 15, 22; 49:17; 51:11; 53:25; 61:12, 20
**facts** [21] - 3:6; 8:15; 9:8, 11; 13:8, 21, 23; 26:9, 16; 30:17; 34:22; 35:9; 49:13, 17; 50:7; 51:14; 53:24; 55:18; 56:5, 9; 59:21
**factual** [2] - 55:23; 64:24
**fading** [1] - 62:11
**failed** [6] - 26:4; 30:21; 43:7, 12; 69:8
**failure** [4] - 24:24; 27:12; 30:10; 31:21; 34:18; 43:10
**fair** [1] - 20:8
**fairly** [1] - 34:21
**fairness** [2] - 17:22; 26:3
**faith** [10] - 2:19; 11:8; 22:9; 25:25; 30:24; 32:14; 49:25; 54:7; 60:21
**faithfully** [2] - 61:9; 67:17
**familiar** [5] - 39:22; 40:13; 44:18; 47:6; 48:16
**far** [8] - 3:25; 15:22; 35:17; 48:12; 52:5; 61:14; 66:18; 69:8
**faster** [1] - 64:11
**favor** [2] - 35:9; 37:17
**favorable** [1] - 25:16
**FBI** [1] - 30:18
**February** [15] - 6:1-3; 20:9; 21:14, 18; 22:6, 9; 25:4; 44:18,

21, 25; 45:6; 69:18
**federal** [1] - 28:23
**few** [1] - 23:11
**fewer** [1] - 65:16
**fight** [1] - 45:23
**fights** [1] - 64:12
**figure** [2] - 62:18; 63:2
**file** [5] - 10:16; 11:15; 13:14, 20; 27:18
**filed** [23] - 5:11, 15, 22; 6:1; 11:13, 16; 15:2, 17; 17:12, 14; 18:25; 27:7, 16; 28:15, 21; 30:15; 40:14; 42:12; 51:1, 3; 66:6
**files** [8] - 10:19; 17:6; 23:23; 24:6; 29:10; 37:10; 45:13; 57:23
**filing** [5] - 9:12; 37:6, 9; 58:10; 68:17
**filings** [1] - 40:11
**filter** [40] - 2:18; 9:19; 12:14, 20; 13:3, 5, 16; 14:22, 25; 16:1, 4; 17:5; 19:20; 20:17; 22:23; 23:1, 10, 13, 17; 27:2; 31:19, 25; 35:25; 36:2, 8, 22; 37:3; 42:20, 22; 43:2, 7, 11-12, 17, 25; 44:3, 12; 55:8
**filtered** [2] - 37:15; 43:13
**final** [1] - 66:25
**findings** [11] - 4:15; 6:14, 23; 7:24; 8:2, 9-10; 24:7; 32:13; 48:16; 60:2
**firm** [1] - 24:4
**first** [23] - 4:5, 24; 5:5, 14; 15:17; 17:1; 24:19; 26:15; 38:22; 40:9, 18; 41:17; 44:20, 23; 45:7; 46:4, 7-8, 10; 47:12, 16;

51:18; 54:21
**fit** [1] - 59:20
**five** [2] - 37:24; 40:11
**fixed** [1] - 62:3
**flip** [2] - 59:8; 67:13
**fly** [1] - 28:25
**focus** [1] - 2:16
**focused** [1] - 55:22
**folks** [1] - 21:20
**follow** [3] - 5:1; 38:8; 50:1
**followed** [2] - 61:9; 67:17
**following** [3] - 39:17; 51:13; 65:19
**followup** [7] - 24:10; 54:3, 24; 55:2
**forego** [1] - 40:19
**forgive** [4] - 4:8; 14:4; 30:10; 67:12
**forgot** [1] - 66:25
**forgotten** [1] - 45:1
**forth** [2] - 18:23; 42:19
**forward** [5] - 42:4; 46:20; 47:5; 49:24; 67:3
**four** [2] - 9:22; 46:24
**Fourth** [3] - 6:13; 34:9; 59:25
**frame** [2] - 15:2; 50:17
**frankly** [1] - 31:9
**fraud** [8] - 7:11; 26:12; 39:11, 13; 51:19; 53:10, 12; 64:11
**fraudulent** [1] - 24:19
**free** [1] - 23:21
**fresh** [1] - 69:3
**friendly** [1] - 15:23
**front** [2] - 3:3; 52:8
**full** [3] - 16:24; 35:1; 42:11
**fully** [1] - 35:7
**funds** [1] - 67:22
**future** [1] - 67:16
**Gabrielian** [1] - 6:21

**game** [1] - 7:19
**games** [1] - 59:7
**GARDNER** [2] - 2:3; 5:4
**Gardner** [8] - 2:5; 23:16; 25:17; 28:22; 46:22; 47:8; 57:6, 12
**general** [2] - 31:4, 10
**generally** [2] - 15:22; 20:20
**Giglio** [1] - 26:18
**given** [13] - 10:24; 26:7; 28:15; 33:1; 44:5, 13; 50:11; 60:2; 62:20; 63:6, 8, 10; 64:1
**global** [1] - 57:2
**golden** [1] - 23:9
**GOLDMAN** [5] - 52:4, 9; 68:10, 15; 69:17
**Goldman** [2] - 2:11; 65:1
**Google** [41] - 18:24; 28:2; 37:20; 38:6, 19; 39:3, 18, 25; 40:2, 10, 21; 41:17, 25; 42:6, 20; 44:15; 45:1, 4; 46:4, 10, 25; 47:8, 16; 48:24; 49:14; 55:21; 56:6, 16; 57:4, 25; 58:2, 21; 61:13; 65:2, 8-9, 11, 20
**GOROKHOV** [63] - 2:9; 33:12, 20; 35:7, 16; 36:4, 7, 9, 12, 15, 18, 20; 37:8, 14; 38:3, 7, 10, 13, 18, 25; 40:4; 42:10, 25; 43:12, 16, 19, 23; 44:2, 6, 9; 45:16, 20, 24; 46:2, 8, 12, 15, 17; 47:3; 48:6, 9, 13; 52:11, 17; 57:10; 64:21, 24; 65:5, 7, 9, 13, 16, 18; 66:7, 11, 13, 15, 19, 21; 68:25; 69:2, 6, 12

**Gorokhov** [2] - 2:10; 33:9
**government** [1] - 24:20
**Government** [70] - 2:3, 25; 3:11, 16, 19; 4:8, 11, 25; 6:11; 7:19; 8:24; 9:16; 10:5-7; 11:18; 14:7; 17:7; 19:9, 17, 20; 20:12; 21:7, 9; 23:6; 24:15, 18; 25:2; 27:20; 28:16; 31:12; 34:6, 12; 35:4; 38:11; 40:1, 9, 20, 23; 41:17, 19; 43:8; 44:10; 45:1, 13; 46:21; 48:18; 49:4; 50:1; 51:19; 53:10, 15, 22; 57:20, 24; 58:1; 60:11, 19-20; 61:6; 64:14; 65:19; 66:1, 3, 9, 23; 69:3, 5
**Government's** [11] - 20:4; 34:16; 44:23; 52:22; 53:9, 12; 58:7; 59:14; 63:15; 67:21; 69:16
**grant** [5] - 4:22; 33:10, 14; 59:4
**granted** [3] - 5:7; 17:21; 31:3
**great** [2] - 24:14; 30:16
**Greenberg** [1] - 2:11
**Griggsby** [1] - 9:7
**Griggsby's** [2] - 6:21; 33:7
**Grimm** [7] - 17:2; 40:18, 25; 41:19; 44:9, 19
**gross** [1] - 48:24
**ground** [1] - 30:22
**grounds** [1] - 2:24
**guess** [2] - 54:18; 56:7
**guidelines** [1] - 51:25
**guilty** [2] - 61:3
**Gun** [2] - 30:16; 54:24

**half** [1] - 28:5
**hamstrung** [1] - 10:4
**hand** [4] - 33:1; 38:14; 40:8; 41:23
**handed** [2] - 25:14; 48:10
**handle** [1] - 51:5
**handling** [1] - 35:5
**hands** [3] - 4:17; 7:14, 18
**hanging** [1] - 62:17
**hard** [6] - 16:4, 24; 54:15; 62:9; 64:5
**Harriett** [2] - 39:7, 12
**harsher** [1] - 52:13
**head** [2] - 52:3; 62:17
**heads** [1] - 2:15
**healthcare** [1] - 26:12
**hear** [7] - 9:5; 33:8; 47:21; 48:1; 50:13; 60:22; 67:25
**heard** [1] - 14:6
**hearing** [19] - 6:16; 7:22; 22:8, 13; 23:17; 29:7; 47:7; 48:2-4; 50:11; 54:7; 62:25; 63:2; 68:9, 12
**hearings** [2] - 48:11; 60:25
**hears** [1] - 21:23
**heart** [1] - 26:1
**heavier** [1] - 34:5
**heavily** [1] - 37:17
**heavy** [1] - 23:8
**held** [2] - 37:4, 15
**help** [4] - 9:24; 22:14; 37:24
**helped** [1] - 24:15
**helpful** [5] - 3:4; 11:6; 17:19; 26:25; 38:9
**helps** [1] - 10:25
**hide** [1] - 37:1
**hiding** [2] - 22:10; 24:20
**history** [1] - 14:21
**hold** [3] - 8:3; 11:5, 7

**holding** [1] - 16:20
**honor** [1] - 37:12
**Honor** [94] - 2:9, 12; 5:4; 6:15, 25; 7:3; 8:18, 21; 9:4; 10:11; 11:12, 21; 12:10; 14:19; 15:12; 18:14, 21; 26:24; 27:10, 19; 28:13; 29:8; 30:7; 31:17; 32:5, 19; 33:12, 20; 35:7, 16, 22; 36:7, 12, 24; 37:14, 21; 38:7, 10, 13, 15, 18, 22; 41:15, 23; 42:10, 25; 44:7, 11; 46:17; 47:5, 20, 24; 48:14; 49:2, 5, 8, 19; 50:15, 21, 23; 51:9; 52:18; 53:7; 54:25; 55:16; 56:4; 57:5, 10, 14; 58:9, 24; 59:2, 19; 60:8, 18; 61:11, 18; 63:15; 64:7, 19, 24; 65:14; 66:11, 15, 19, 24; 67:18; 69:2, 6
**hook** [1] - 40:25
**hope** [1] - 68:16
**hopefully** [1] - 23:8
**hoping** [1] - 3:1
**horribles** [1] - 59:5
**house** [1] - 18:4
**huddle** [1] - 33:5
**hug** [1] - 45:22
**huge** [2] - 53:11; 62:13
**hung** [1] - 50:8
**idea** [3] - 23:11; 24:17; 41:10
**ignore** [2] - 33:4; 38:13
**ignored** [1] - 32:25
**ignoring** [1] - 48:19
**imaged** [4] - 3:11,

Motions Hearing 1/27/25

17; 4:7; 16:13
**impact** [2] - 51:16; 67:19
**implies** [1] - 20:3
**importance** [1] - 42:2
**important** [11] - 11:20; 15:7; 20:6; 35:22; 39:3, 14; 41:3, 10, 15; 45:10
**impossible** [1] - 62:8
**impression** [2] - 14:1; 32:12
**impulse** [1] - 28:6
**in-house** [1] - 18:4
**incentives** [1] - 59:6
**inclination** [2] - 33:9; 34:23
**inclined** [2] - 34:20; 35:3
**includes** [1] - 20:16
**including** [2] - 20:15; 32:12
**income** [1] - 24:20
**inconsis** [1] - 12:5
**inconsistent** [4] - 9:10; 11:11; 12:8
**incredibly** [1] - 25:19
**incrementally** [1] - 34:24
**independent** [1] - 65:20
**independently** [1] - 35:14
**indicated** [1] - 27:20
**indicates** [2] - 29:22, 25
**indication** [1] - 17:20
**indict** [1] - 54:21
**indicted** [1] - 21:2
**indictment** [2] - 22:18; 62:17
**indictments** [1] - 68:24
**individuals** [1] - 39:13
**indulgence** [4] - 56:2; 60:5; 64:21; 68:25

**inelegant** [1] - 60:3
**infer** [1] - 16:13
**inference** [1] - 20:8
**information** [8] - 17:19; 27:21; 40:16; 43:22; 47:16, 18; 50:5; 58:22
**informed** [3] - 14:14; 57:24; 66:3
**informs** [1] - 18:3
**infused** [1] - 62:19
**initial** [3] - 5:14; 15:10; 16:3
**ink** [1] - 59:4
**innocent** [1] - 61:4
**instead** [1] - 58:3
**institution** [3] - 26:4; 30:20
**institutional** [9] - 12:22, 24; 14:23; 25:24; 27:12; 36:25; 48:8; 49:25; 54:2
**institutionally** [1] - 33:2
**insufficient** [1] - 34:13
**intend** [1] - 27:20
**intends** [1] - 45:14
**intention** [1] - 68:18
**interest** [9] - 31:4; 41:9; 67:2, 5, 10-11, 15-16, 23
**interested** [2] - 52:16; 53:22
**internal** [1] - 19:21
**interrelation** [1] - 33:25
**intertwined** [1] - 31:19
**inverse** [1] - 60:9
**investigation** [1] - 54:18
**involved** [4] - 24:22; 25:21; 51:7, 20
**involvement** [1] - 52:21
**ionetz** [1] - 2:23

**IRS** [6] - 24:22; 25:12; 29:21, 23
**isolated** [1] - 49:1
**issue** [9] - 3:9; 23:20; 29:23; 33:15, 21, 23, 25; 35:16; 62:9
**issued** [1] - 41:24
**issues** [14] - 6:8; 14:15, 23; 21:13; 27:2; 33:11; 35:10, 17; 47:20-22; 50:2; 61:23
**IT** [6] - 16:23; 17:11; 18:8; 19:16; 21:20; 26:4
**items** [4] - 23:18; 42:1; 65:7
**itself** [1] - 18:10
**Jackson** [9] - 16:10; 17:14, 17; 20:25; 39:7, 12; 52:13, 20; 63:4
**Jackson's** [1] - 51:24
**January** [5] - 21:24; 22:2, 4; 23:25
**Jencks** [2] - 3:15; 47:22
**job** [1] - 22:19
**Joel** [1] - 2:6
**Johnson** [1] - 10:25
**joined** [1] - 57:6
**Josh** [1] - 2:11
**Joshua** [1] - 2:7
**judge** [3] - 20:1; 39:17; 59:12
**Judge** [15] - 3:23; 4:21; 6:21; 9:7; 17:2; 33:7; 35:6; 40:18, 25; 41:19; 44:9, 19; 62:3
**Judges** [1] - 4:15
**July** [5] - 9:22; 13:1; 16:11; 22:22
**jump** [2] - 23:6; 44:21
**jumped** [1] - 14:1
**jumping** [1] - 45:5
**June** [4] - 16:6; 38:23; 45:12, 16
**jurisprudence** [1] - 4:12

**justice** [8] - 8:2, 9; 19:10; 31:4; 32:13; 41:9; 51:17; 67:21
**Justice** [2] - 19:22; 32:3
**keep** [4] - 26:20; 58:7; 59:10; 66:9
**keeps** [2] - 3:22; 40:23
**Keith** [4] - 4:13; 6:13, 22
**Kelly** [3] - 21:7; 54:20; 66:6
**kept** [2] - 24:25; 30:18
**key** [2] - 34:21; 39:7
**kicking** [1] - 62:3
**Kimrey** [17] - 2:7; 3:14; 13:3; 15:21; 16:14, 23; 17:8; 18:7, 11; 22:22; 23:5; 39:15; 41:25; 42:5; 43:3, 6; 44:25
**Kimrey's** [2] - 13:15; 39:1
**kind** [8] - 7:11; 26:15; 32:24; 33:25; 35:19; 40:25; 43:1; 62:8
**lack** [5] - 3:10; 31:5; 48:17, 20; 69:8
**laid** [2] - 32:17; 55:23
**language** [4] - 41:16; 44:11, 19; 48:14
**laptop** [2] - 63:3, 10
**large** [3] - 18:6; 51:20; 54:11
**largely** [1] - 31:8
**larger** [1] - 42:22
**last** [6] - 30:7; 48:13; 49:4, 16; 66:15, 24
**law** [9] - 2:24; 3:5; 4:18; 5:1; 6:12; 36:5; 60:4; 68:23
**lay** [1] - 3:19
**leading** [1] - 63:21
**learn** [2] - 25:11,

22
**learns** [1] - 18:6
**least** [17] - 14:8; 15:1, 7; 16:2; 27:5; 29:9; 31:21; 32:21; 36:10; 43:22; 49:6; 50:1; 52:22; 56:12, 19; 57:19; 62:15
**leave** [2] - 46:17
**led** [6] - 49:25; 51:15; 53:11; 55:19; 60:13
**left** [5] - 13:25; 38:14; 58:11; 61:13; 62:18
**left-hand** [1] - 38:14
**legal** [6] - 59:25; 64:25; 66:12-14; 69:14
**lens** [1] - 49:22
**less** [2] - 7:11; 56:17
**letter** [8] - 9:13; 11:13; 17:6, 14; 39:20; 66:3
**letters** [1] - 21:11
**letting** [1] - 63:19
**likely** [2] - 22:17; 62:9
**limbo** [1] - 7:20
**limine** [3] - 68:13, 17; 69:18
**limited** [1] - 47:24
**line** [3] - 25:13; 29:6; 48:25
**listed** [1] - 55:12
**listen** [5] - 7:7; 10:1; 16:7; 18:16; 30:17
**logically** [1] - 41:14
**look** [8] - 38:22, 25; 40:8; 41:3; 44:4; 56:19; 59:5
**looked** [1] - 8:25
**looking** [9] - 8:21; 13:13; 15:13; 49:22; 51:11; 58:9; 61:7, 24; 65:22
**looks** [3] - 16:1; 35:19; 46:7
**loop** [1] - 68:22
**loss** [7] - 51:24; 52:1, 15, 24-25; 53:5, 11, 19;

67:22
**low** [3] - 51:25; 52:12, 14
**lower** [2] - 52:1, 5
**lowther** [1] - 29:2
**Lowther** [2] - 23:23; 25:18
**LTSC** [7] - 12:22; 18:4, 6-8, 16; 22:19
**magnitude** [1] - 62:12
**mail** [16] - 3:24; 10:24; 13:25; 16:18, 22; 18:24; 21:8, 20; 22:25; 23:22; 28:19; 42:1; 46:23; 58:1
**mails** [24] - 2:22, 24; 3:13; 4:3; 12:19; 13:1; 16:6; 17:8; 21:8; 22:8, 23; 23:5; 28:1; 32:18; 37:20; 40:10; 42:21; 44:16; 45:4; 47:17; 49:7; 65:1, 6, 21
**main** [6] - 3:10; 11:3; 25:15; 28:8; 51:22; 53:12
**major** [1] - 37:1
**malice** [1] - 26:1
**manipulating** [1] - 39:12
**Manthripragada** [1] - 2:6
**March** [3] - 22:13; 68:14
**Masood** [18] - 2:4, 10-11; 7:6, 13-14; 14:2; 23:8; 25:16; 26:11, 18; 27:16; 28:10; 29:25; 45:14; 46:3; 61:3; 63:17
**Masood's** [4] - 9:10; 23:7, 23; 69:20
**Masood-heavy** [1] - 23:8
**material** [10] - 20:15; 27:23; 28:3; 30:12; 31:25; 40:7; 43:18; 44:14,

17; 55:13
**materially** [2] - 12:5, 8
**materials** [5] - 7:2; 16:3; 17:18; 20:13; 40:19
**math** [6] - 4:8, 24; 6:7; 35:12, 15; 46:6
**mathematical** [1] - 33:23
**matter** [9] - 7:24; 12:2; 27:15; 53:15, 23; 57:21; 65:21; 68:23
**mean** [43] - 7:25; 9:5; 13:18, 21; 26:17; 30:8; 31:15; 32:11, 23; 33:6, 17; 36:16; 42:15; 44:14; 45:21; 48:21; 49:14; 50:20, 25; 53:7; 54:5, 11, 16, 20; 55:1, 7, 12, 22; 58:4, 13, 24-25; 59:13, 15, 25; 60:3, 11; 63:7, 21; 65:19; 66:2; 67:6, 13
**meaning** [1] - 22:8
**meaningful** [3] - 31:7; 54:5; 55:3
**meaningfully** [2] - 18:1; 41:5
**means** [8] - 4:24; 20:14, 18, 22; 37:11; 48:19; 54:23
**meant** [1] - 56:24
**mechanics** [1] - 39:10
**meetings** [1] - 50:17
**members** [1] - 43:3
**memo** [1] - 23:1
**memorialized** [1] - 58:5
**memories** [1] - 62:11
**memory** [1] - 17:15
**mention** [4] - 46:25; 47:3, 8; 66:25
**merely** [1] - 34:12

**mess** [1] - 63:2
**message** [1] - 28:14
**messy** [1] - 25:19
**Michelle** [1] - 39:12
**middle** [2] - 38:25; 47:13
**might** [5] - 38:9; 42:13; 54:10; 65:11; 67:9
**milestone** [1] - 13:23
**militate** [1] - 35:9
**million** [5] - 51:20, 23; 53:5, 19
**mind** [1] - 50:3
**mine** [1] - 35:19
**minutes** [1] - 37:24
**missing** [2] - 21:8; 62:11
**mistakes** [1] - 46:19
**moment** [1] - 56:11
**Monday** [1] - 68:13
**money** [1] - 53:13
**month** [2] - 16:2; 24:11
**months** [19] - 4:8; 7:20; 12:6; 22:18, 21; 23:11; 26:6, 19; 28:21; 32:3; 34:8, 10; 36:17; 52:12; 54:7, 9; 58:20; 64:1
**morning** [3] - 2:8, 13
**most** [4] - 4:23; 7:6; 35:5; 44:13
**motion** [40] - 2:21, 25; 5:5-7, 9-10, 14-15, 17, 22; 10:16, 19; 11:15; 13:19; 15:17; 17:3, 12-13, 21, 24; 18:25; 19:17; 21:16; 23:24; 24:6; 28:19, 23; 29:2-4, 10; 32:25; 37:11; 40:14; 44:10; 45:13; 69:7
**motions** [35] - 6:2, 8; 8:25;

10:17; 13:15, 20; 15:2; 20:5; 23:4, 24; 24:2, 8; 27:4, 6, 14, 16; 28:16, 21; 29:7; 37:6, 9; 51:1, 3-4, 6-7; 58:3, 10-11, 13; 60:22; 63:19; 68:12; 69:18
**motivations** [2] - 24:17; 29:9
**move** [5] - 21:5; 41:15; 49:8; 51:9; 54:23
**moved** [4] - 25:8; 37:7; 60:18; 66:16
**movement** [1] - 53:13
**moves** [2] - 67:2; 69:11
**moving** [2] - 49:23; 61:24
**MR** [153] - 2:3, 9; 5:4; 6:15, 25; 8:17, 21; 9:6; 10:11, 15; 11:12, 15, 21, 23; 12:10, 16; 14:11, 19, 21; 15:12; 18:14, 21; 26:24; 27:8, 10, 13, 19; 28:13; 29:8, 12, 18; 30:3, 7; 31:17; 32:5, 8, 19; 33:12, 20; 35:7, 16; 36:4, 7, 9, 12, 15, 18, 20; 37:8, 14; 38:3, 7, 10, 13, 18, 25; 40:4; 42:10, 25; 43:12, 16, 19, 23; 44:2, 6, 9; 45:16, 20, 24; 46:2, 8, 12, 15, 17; 47:3; 48:6, 9, 13; 49:5, 19; 50:15, 21, 23; 51:4, 8, 11; 52:4, 9, 11, 17, 20; 53:2, 7, 9, 18, 21; 54:25; 55:6, 16, 18; 56:2, 4, 17, 24; 57:5, 10, 14, 16; 58:9, 14, 16, 18, 24; 59:2, 19;

60:5, 8, 16, 18; 61:11, 18, 21; 62:5; 63:15; 64:7, 15, 19, 21, 24; 65:5, 7, 9, 13, 16, 18; 66:7, 11, 13, 15, 19, 21, 24; 67:8, 18; 68:2, 10, 15, 25; 69:2, 6, 12, 17
**multiple** [1] - 48:17
**must** [2] - 17:25; 18:17
**nah** [1] - 64:9
**narrow** [1] - 2:19
**narrowly** [1] - 34:24
**necessarily** [3] - 59:24; 60:10; 69:10
**necessary** [2] - 19:12; 41:7
**need** [25] - 3:2; 4:6; 7:9; 9:17; 10:1, 9; 11:2; 15:5; 16:8; 19:4; 21:4; 25:5, 13; 38:16; 42:20; 48:4; 64:15; 65:23; 66:8; 69:19
**needed** [3] - 14:13; 28:10; 30:20
**needle** [1] - 69:11
**needs** [3] - 24:23; 43:2; 69:22
**negligence** [6] - 12:22, 25; 25:24; 48:8, 23
**negotiate** [1] - 58:19
**negotiating** [1] - 24:1
**negotiations** [16] - 17:23; 19:12; 25:6; 29:18; 30:1, 5; 31:9, 13; 37:10; 40:24; 41:2, 8, 11; 50:13; 51:2
**never** [3] - 25:22; 42:12; 66:16
**New** [1] - 34:2
**new** [5] - 25:21; 33:6, 8; 57:6; 63:17
**next** [11] - 5:19, 22; 11:15; 17:8;

19:9, 17; 35:4; 40:12; 54:8; 68:8, 10
**nobody** [2] - 20:19; 40:18
**nondevice** [1] - 18:23
**none** [5] - 8:14; 57:18; 63:10; 69:4
**nonetheless** [1] - 55:4
**notable** [1] - 41:22
**note** [2] - 16:15; 55:7
**noted** [7] - 17:13, 16; 28:3; 53:23; 54:2; 55:6; 69:7
**notes** [5] - 16:18; 20:16, 20; 21:7; 42:1
**nothing** [12] - 13:6; 21:19, 22; 22:8, 13; 37:3; 49:11; 50:6; 54:7; 64:3, 19
**noting** [2] - 2:17; 22:6
**November** [15] - 3:25; 13:15; 15:1; 17:13; 21:20; 23:4, 15, 23, 25; 36:2, 8, 13-14; 58:13
**Number** [1] - 2:4
**number** [5] - 4:10; 36:20; 39:8; 65:13
**nunc** [5] - 4:15, 22; 5:2; 6:14; 59:22
**nut** [1] - 3:17
**object** [3] - 10:3; 17:17; 21:4
**objection** [1] - 17:16
**obligation** [1] - 27:23
**obligations** [2] - 37:12; 59:14
**observed** [1] - 49:20
**obtain** [3] - 22:14; 39:16; 41:7
**obtained** [2] - 28:24; 46:25
**obviously** [19] - 6:17; 8:22; 12:11, 16;

22:11; 24:13; 29:12, 14; 31:18; 34:16; 49:21; 50:17; 53:21; 55:7, 14; 56:5; 60:12; 61:24; 67:23
**occurred** [1] - 4:13
**October** [7] - 5:20, 23; 18:12, 15, 17-18; 21:25
**odd** [1] - 67:13
**odds** [1] - 31:2
**offense** [5] - 25:15; 26:10, 15; 51:14, 19
**offenses** [1] - 52:6
**offers** [1] - 50:16
**offhanded** [1] - 3:15
**Office** [1] - 21:1
**offline** [1] - 32:18
**often** [2] - 29:4; 30:5
**once** [12] - 4:18; 5:6; 7:18; 27:16; 32:2; 34:3; 37:2, 7, 15; 55:12
**one** [29] - 2:13; 3:14, 22; 4:10; 5:19; 8:17; 10:11; 12:9; 15:14; 16:20; 19:25; 25:24; 30:11; 34:9, 16; 40:22; 44:15; 46:7-9; 47:13; 54:21; 64:24; 66:15, 24-25; 68:21
**onerous** [2] - 12:16, 18
**ones** [1] - 42:11
**ongoing** [2] - 19:7; 50:7
**online** [1] - 45:2
**operate** [1] - 31:13
**operating** [2] - 18:9; 19:15
**opinion** [1] - 4:14
**opportunity** [7] - 14:6; 32:23; 41:3, 5; 49:16; 50:10; 63:6
**opposite** [1] - 10:9
**orchestrator** [1] -

53:12
**order** [14] - 6:1;
8:1, 8; 13:7;
16:10; 23:14;
40:12, 18;
41:16, 19, 24;
44:22; 45:6;
69:22
**orders** [4] - 8:9;
45:11; 48:15, 17
**otherwise** [2] -
31:7; 69:5
**ourselves** [1] -
10:2
**outlined** [1] -
51:12
**overall** [2] -
31:19; 53:14
**overlap** [2] -
34:18, 22
**overlaps** [1] -
34:16
**own** [9] - 7:8;
11:6, 19; 13:1;
16:16; 20:23;
28:3; 30:12;
63:25

**page** [1] - 40:12
**pages** [1] - 7:5
**paper** [1] - 38:3
**parade** [1] - 59:5
**parallel** [2] - 30:5;
31:13
**paraphrasing** [1]
- 21:6
**part** [11] - 4:23;
16:7; 28:9;
37:16; 49:21;
50:12; 53:3, 5;
55:1; 65:24;
67:6
**partially** [1] -
22:20
**particular** [1] -
8:15
**particularly** [1] -
41:22
**parties** [3] -
23:25; 57:18;
67:9
**party** [1] - 35:14
**passing** [1] -
62:10
**passwords** [4] -
9:22; 16:8, 12;
26:7
**past** [1] - 49:23
**pattern** [1] - 59:23
**patterns** [1] - 8:23
**Pause** [8] - 8:20;

14:18; 53:17;
56:1, 3; 60:7;
64:18, 23
**Pay** [1] - 47:16
**Peebles** [5] -
39:12; 52:11,
14, 23; 53:18
**Peebles'** [1] -
51:24
**peep** [1] - 65:20
**pending** [1] - 24:8
**people** [2] - 39:7;
41:2
**period** [5] - 8:2;
31:21; 34:3, 5, 8
**permission** [1] -
23:2
**permissions** [1] -
41:7
**person** [2] - 16:3;
18:9
**personal** [1] -
33:2
**perspective** [5] -
53:9, 12; 58:10;
59:20; 67:22
**Phelps** [4] - 23:9,
13, 16; 32:1
**phones** [10] - 7:9;
9:17; 10:2, 4;
11:20; 12:4,
6-7; 21:19; 22:4
**picture** [3] - 19:7;
42:23
**piece** [1] - 69:8
**pill** [1] - 54:15
**pin** [1] - 8:2
**pinging** [2] - 13:1;
30:18
**place** [6] - 12:20;
13:17; 16:3;
36:2; 44:22;
45:11
**plaintively** [1] -
22:7
**plans** [1] - 23:10
**play** [1] - 59:6
**playing** [1] - 4:18
**plea** [22] - 17:23;
19:12; 25:5;
29:18; 30:4;
31:9, 13; 37:10;
40:24; 41:2, 8,
11, 13; 50:16;
51:1, 24; 52:4,
12-13; 53:1;
58:19
**plead** [1] - 51:23
**pleading** [7] - 3:3;
7:5, 21; 8:22;

13:25; 29:20;
61:1
**pleadings** [13] -
6:12, 17-19;
14:7; 26:8; 31:7;
42:17; 49:15;
56:22; 59:16;
62:15
**pled** [2] - 52:20,
23
**plenty** [1] - 50:10
**plus** [3] - 5:21, 24
**point** [51] - 6:5, 9;
9:1; 10:9, 12;
15:11; 19:1, 14;
20:11, 14;
21:12; 24:11;
25:12, 20; 28:2;
29:19; 34:8;
36:1, 22; 39:22;
40:8, 10, 13, 22;
41:17; 43:25;
44:19; 45:5;
46:3; 47:4, 9,
19; 48:13;
49:10; 50:2;
54:13; 58:16;
60:8; 62:19;
63:16, 20;
64:25; 65:18;
66:8, 12-14,
24-25; 67:14
**points** [3] - 10:12;
22:16; 49:6
**poking** [1] - 66:9
**pool** [1] - 4:18
**position** [11] -
9:10; 11:2, 8,
11; 12:9; 14:24;
33:16; 43:14;
58:7; 62:14
**positions** [1] -
9:14
**possibility** [1] -
43:8
**possible** [5] -
35:13; 40:20;
41:20; 46:18;
68:7
**posture** [1] -
49:10
**potentially** [5] -
16:19; 17:18;
21:10; 40:13, 15
**PowerPoint** [1] -
3:2
**practice** [3] -
8:23; 31:10;
59:23
**predicate** [1] -

55:23
**preexisting** [1] -
59:14
**prefer** [1] - 68:5
**prejudice** [23] -
13:9, 13, 19;
26:17; 33:10,
15; 34:17; 35:2,
10; 37:18;
49:18; 56:7;
62:10, 14, 16,
23; 63:11, 13,
16; 67:4, 15;
68:20; 69:25
**prejudiced** [1] -
59:12
**prejudicial** [1] -
34:3
**preliminary** [1] -
23:17
**preparation** [6] -
20:15; 23:7;
27:24; 28:4;
30:12; 31:5
**prepare** [8] - 3:16;
7:15; 9:18;
13:18; 26:19;
68:19; 69:19, 22
**prepared** [5] -
6:16; 10:25;
35:11, 18; 37:21
**preparing** [2] -
6:16; 69:20
**present** [2] - 2:10;
30:10
**presentation** [1] -
14:12
**preservation** [1] -
21:11
**pressing** [3] -
26:20; 57:20
**presumably** [2] -
23:21; 25:6
**presumptively** [2]
- 23:19; 34:3
**pretrial** [16] - 6:2;
10:17; 13:7, 15;
23:24; 24:1;
27:4, 6, 16;
28:16; 41:6;
44:22; 51:1;
58:10; 63:19;
68:12
**pretty** [2] - 13:22;
63:11
**privilege** [1] -
55:13
**privileged** [2] -
23:19; 43:22
**privileges** [1] -

55:9
**pro** [5] - 4:15, 22;
5:2; 6:14; 59:22
**problem** [8] -
10:21; 12:1;
16:7; 25:23;
26:4; 31:25;
32:10; 36:25
**problematic** [1] -
22:12; 32:15
**problems** [4] -
8:11; 19:25;
54:19; 55:12
**proceed** [5] -
14:10; 26:11;
41:8; 45:14;
60:9
**proceedings** [1] -
53:25
**Proceedings** [8] -
8:20; 14:18;
53:17; 56:1, 3;
60:7; 64:18, 23
**process** [12] - 4:2;
12:14, 16, 18;
13:16; 14:24;
31:19; 55:8;
61:4, 24; 69:24
**processed** [1] -
21:24
**produce** [7] -
30:10; 40:1;
57:8; 58:1; 66:1,
9
**produced** [6] -
4:9; 20:12;
22:16; 47:10;
57:7
**production** [13] -
17:24; 31:1;
44:15, 20, 23;
45:2, 4, 7-8;
46:10; 47:16;
65:3, 21
**Production** [2] -
42:7; 65:9
**productions** [2] -
19:4; 38:6
**proffer** [1] - 19:3
**program** [1] -
19:15
**programs** [1] -
18:9
**progress** [2] -
19:2; 29:24
**promise** [1] -
18:16
**promised** [1] -
41:19
**prompt** [1] - 64:3

**prong** [1] - 26:15
**proper** [1] - 61:10
**prosecuted** [1] -
67:23
**prosecuting** [1] -
53:22; 67:2
**prosecution** [5] -
29:21; 39:15;
43:3; 51:16;
67:20
**prosecutor** [5] -
11:19; 13:5;
28:3, 22; 30:18
**prosecutorial** [1]
- 54:16
**protect** [1] - 55:9
**provide** [8] - 7:3;
8:14; 32:21;
40:6; 41:20;
42:8; 59:6
**provided** [8] -
2:18; 17:5;
19:16, 19;
20:21; 40:20;
42:3; 44:17
**provides** [1] -
16:10
**providing** [1] -
19:2
**prudent** [1] - 35:5
**pshaw** [1] - 10:8
**public** [3] - 67:1,
6, 23
**public's** [4] -
67:10, 14, 16
**pull** [4] - 51:24;
52:9; 53:4;
54:14
**pulling** [1] - 53:2
**pursuant** [1] -
43:9
**pushed** [1] -
18:16
**put** [13] - 8:2;
9:16; 13:7, 19,
23, 25; 38:1;
44:22; 45:11;
47:13; 50:6;
58:5; 65:23
**puts** [1] - 3:3
**putting** [2] -
12:21; 20:10
**PX-22-91** [1] - 2:4
**qualify** [1] - 24:20
**Quereshi** [1] -
39:17
**questions** [1] -
63:9
**quick** [3] - 4:1;
15:1; 64:24

quite [1] - 14:22
quoted [1] - 48:15
quotes [1] - 31:3
radar [1] - 58:6
rails [1] - 14:1
raised [3] - 3:20;
6:20; 54:20
raising [1] - 69:16
Ranganath [1] -
2:6
ranging [1] -
54:22
rationale [1] -
57:3
re [2] - 51:16;
67:20
re-prosecution
[2] - 51:16;
67:20
reach [4] - 6:8;
33:11, 15; 35:4
read [3] - 27:1;
43:17; 62:15
reading [2] - 20:2;
42:17
ready [6] - 10:23;
15:4; 16:4, 25;
22:25; 23:1
real [3] - 3:14;
23:20; 30:15
realize [2] - 50:6;
66:15
really [27] - 2:25;
3:21; 6:6; 8:14;
13:19; 21:19;
22:22; 24:20;
27:3, 15; 28:9;
32:17, 23;
35:18; 37:3;
50:11; 51:1;
54:5, 23; 56:19;
58:12; 59:20;
61:14; 62:22;
64:10; 66:21
reason [5] - 4:3;
34:17; 55:1, 8;
56:10
rebut [1] - 34:15
receipt [1] - 40:19
receive [1] - 19:10
received [7] -
35:24; 40:9;
42:21; 44:14;
45:2
receiving [3] -
12:13; 23:14;
41:18
recognize [1] -
59:21
recognized [1] -

63:25
record [16] - 26:2,
12; 28:19; 29:1;
33:18; 39:2;
46:23; 49:7;
53:4; 55:6;
57:24; 60:2;
62:1; 65:23;
66:17
record's [1] -
49:12
recorded [3] - 7:7;
13:24; 20:9
recording [1] -
9:15
Reed [1] - 21:11
Reed's [1] - 21:10
reems [1] - 51:12
reference [1] -
3:15; 17:23
referring [1] -
40:23
reflected [1] -
29:9
refresh [1] - 69:15
refresher [1] -
14:13
regard [2] - 31:16;
69:13
regarding [1] -
2:18
regularity [1] -
44:1
rejected [1] - 9:8
related [3] -
41:12; 52:6
relating [1] -
38:19
relatively [2] -
17:20; 25:16
Relativity [11] -
13:6; 15:22;
16:25; 17:10;
18:19; 22:5;
23:3, 6, 14, 19;
32:4
relevance [1] -
48:12
relevant [9] -
2:20; 19:18, 22;
26:13; 31:21;
48:4, 7; 65:25
relief [1] - 35:1
rely [2] - 20:4, 6
relying [1] - 19:23
remains [2] -
27:17; 53:22
remedy [3] - 31:2;
38:21; 61:10
remember [1] -

52:13
remind [1] - 42:8
removing [1] -
29:24
renewed [2] -
24:6; 50:4
reply [2] - 6:22;
33:7
report [1] - 3:14
reports [1] - 23:16
representation
[4] - 4:5; 20:8;
24:25; 28:11
representations
[4] - 3:7; 8:4;
49:14; 56:21
represents [1] -
23:25
reproduced [1] -
41:23
request [4] -
12:13; 18:5;
19:24; 50:4
requests [1] -
19:9
requires [1] -
65:21
reschedule [1] -
25:9
reservation [5] -
9:13; 10:12;
17:6, 14; 66:2
reserves [1] -
39:21
reserving [3] -
10:15; 39:23
resolution [7] -
24:1; 41:6; 50:3,
7-8; 51:2; 62:2
resolve [1] - 63:17
resources [1] -
69:20
respect [1] -
35:24
respond [8] -
4:21, 25; 7:4;
15:8; 26:22;
28:17; 31:6;
34:19
responding [2] -
8:22; 17:11
responds [1] -
18:7
response [12] -
3:20; 7:3; 13:5;
21:21; 22:15;
28:22; 29:4, 7;
32:21; 54:8;
59:4
responsive [2] -

6:19
rest [2] - 23:20;
60:22
restart [1] - 69:1
result [1] - 41:6
resulted [1] - 26:6
results [2] -
57:25; 66:4
retroactive [5] -
5:2, 24; 7:24;
17:22; 19:13
retroactively [6] -
4:22; 5:7, 13,
20; 6:23; 21:16
retroactivity [1] -
35:17
return [10] -
16:14; 40:9;
41:18; 46:4;
47:1, 4, 9, 12
returned [1] -
63:4
returning [1] -
12:12
returns [11] -
18:24; 28:2;
40:21; 47:8;
55:21; 56:16;
57:4; 58:21;
62:24; 63:1, 7
reverse [1] - 19:3
review [23] - 3:23;
9:20; 14:22, 25;
15:4; 16:4;
17:18; 18:1; 20;
19:12; 20:18;
22:23; 23:20;
24:23; 27:2;
31:20; 35:25;
36:2, 22; 37:3;
41:5; 55:8
reviewed [4] -
3:12, 18; 37:2;
47:18
reviewing [6] -
7:2; 41:25; 42:6;
43:3, 6
reviews [2] -
19:20; 44:12
right-hand [2] -
40:8; 41:23
rights [7] - 9:13;
10:13, 16; 17:6,
14; 39:21; 66:2
rigueur [1] - 64:13
risk [1] - 10:20
role [2] - 61:8
roll [3] - 10:21,
25; 27:25
rolling [2] - 23:12;

64:2
room [1] - 3:21
Rosas [1] - 10:24
Rule [8] - 19:18;
20:13; 27:22;
28:5; 44:14, 17;
54:13; 65:21
rules [4] - 59:17;
60:11; 61:9;
67:17
runs [1] - 15:11
rush [1] - 24:24
sabotage [1] -
22:10
safeguards [4] -
60:10; 61:17;
62:6; 64:5
salt [1] - 14:4
sanction [1] -
61:22
sanctioning [1] -
61:8
sanctions [10] -
22:17; 54:10;
60:13-15, 17,
20, 23; 61:2, 6
sat [1] - 63:12
save [1] - 69:20
scale [1] - 51:20
scenes [1] - 43:2
scheduled [2] -
57:11; 58:4
scheduling [3] -
19:24; 44:22;
45:10
scope [1] - 42:11
screen [2] - 3:3;
23:18
search [8] -
12:21; 15:3;
28:24; 54:22;
57:25; 62:24;
63:1; 66:4
searched [1] -
17:4
searches [1] -
21:3
second [16] -
2:14; 5:9; 8:5, 7,
18; 17:1, 12;
45:2, 8; 46:4, 9;
47:4, 9, 12;
54:18
secondly [1] -
65:10
secure [1] - 25:7
secured [1] - 25:8
securities [1] -
64:11
see [16] - 5:12;

23:6; 24:6;
25:23; 31:25;
32:16; 37:23;
40:3; 48:12;
49:7; 56:16;
58:23; 64:5, 16
seeing [3] - 15:7;
26:23; 54:20
seek [1] - 22:17
seem [3] - 16:4;
22:15; 23:3
sees [2] - 51:19;
53:15
seized [4] - 11:3;
16:12; 20:17;
21:7
sends [3] - 21:20;
22:24; 46:23
sense [3] - 16:18;
41:14
sent [1] - 21:10
separate [2] -
25:24; 41:11
September [5] -
18:5; 36:4; 57:9
serially [1] - 20:21
serious [3] -
48:25; 53:15, 23
seriousness [6] -
25:15; 26:10,
15; 51:14, 18;
53:14
served [1] - 39:17
server [2] - 62:20
set [4] - 21:13;
25:11; 45:23;
58:3
setting [1] - 24:23
seven [1] - 15:9;
22:21
several [2] - 54:7,
9
shall [1] - 31:3
share [2] - 23:21;
35:12
short [3] - 16:10;
32:20; 35:2
shortcomings [1]
- 67:12
show [6] - 13:1;
29:1; 39:11;
47:17; 63:12
showed [1] -
23:18
showing [1] -
28:9
shown [1] - 62:14
shows [3] - 3:24;
26:2
side [3] - 28:20;

Motions Hearing 1/27/25

47:19; 52:2
**sides** [1] - 9:3
**signed** [1] - 8:1
**significance** [2] -
  3:20; 4:6
**significant** [6] -
  19:21; 33:21;
  34:19; 37:20;
  38:20; 44:12
**similar** [3] -
  22:25; 56:15
**situation** [2] -
  28:8; 57:18
**six** [3] - 5:20;
  17:22; 40:21
**Sixth** [6] - 26:23;
  33:15, 21, 25;
  34:14; 62:8
**size** [1] - 18:6
**sliver** [1] - 8:13
**sole** [1] - 9:19
**someone** [1] -
  54:13
**somewhere** [3] -
  34:25; 36:11, 13
**soon** [3] - 22:16;
  58:22; 68:6
**sooner** [1] - 10:3
**sorry** [9] - 5:12;
  11:16; 36:4, 21;
  40:14; 45:15;
  50:18; 57:20;
  64:4
**sort** [7] - 32:16;
  48:1; 58:19;
  59:15; 62:16;
  67:13; 68:21
**soul** [1] - 60:24
**sound** [1] - 35:8
**Special** [11] - 2:7;
  3:14; 13:3;
  15:21; 16:14,
  23; 17:8; 18:7,
  11; 22:22; 23:5
**specific** [2] - 7:13;
  41:1
**specifically** [2] -
  39:24
**Speedy** [13] - 3:5;
  4:12, 25; 6:9;
  11:5; 12:2;
  15:10, 17; 24:9;
  26:21; 31:2;
  59:13; 62:2
**speedy** [10] -
  8:24; 10:12, 16;
  11:9; 20:11;
  24:7; 30:22;
  67:6; 69:4
**spend** [1] - 59:4

**spent** [2] - 4:16;
  7:5
**square** [1] - 3:9
**squarely** [2] -
  2:20; 9:7
**STA** [2] - 33:22;
  35:10
**standby** [1] - 13:4
**standing** [3] -
  22:24; 60:24
**start** [6] - 2:17;
  3:23; 8:16;
  25:14; 64:2;
  69:4
**started** [3] - 3:24;
  20:1; 32:13
**starting** [2] - 20:4;
  22:7
**states** [1] - 44:11
**States** [4] - 2:3, 5;
  32:3; 51:12
**status** [12] - 17:1;
  20:9; 22:6, 14;
  24:10; 25:11;
  29:13; 45:19;
  48:3; 58:4
**statuses** [1] -
  24:11
**statute** [1] - 59:17
**stay** [1] - 63:20
**still** [10] - 4:9; 8:3;
  18:21; 23:3;
  30:9; 32:9;
  44:23; 50:12;
  63:17
**stopped** [1] - 48:1
**stopping** [1] -
  37:3
**straight** [1] -
  47:15
**strategically** [1] -
  9:2
**stress** [1] - 47:25
**strike** [1] - 25:15
**strong** [1] - 9:1
**strongly** [1] - 35:9
**structural** [1] -
  62:16
**struggling** [1] -
  33:13
**stuff** [3] - 33:6, 8;
  61:13
**stunned** [1] -
  32:24
**substantive** [1] -
  47:17
**suffered** [4] -
  60:17, 21, 23;
  61:1
**suggest** [3] -

26:8; 31:7, 15
**suggested** [1] -
  31:1
**suggests** [1] -
  51:25
**summarize** [1] -
  49:20
**summarizes** [1] -
  39:5
**summary** [2] -
  66:16
**super** [1] - 47:14
**supersede** [1] -
  69:15
**superseded** [1] -
  26:10
**superseding** [1] -
  68:23
**supervisor** [1] -
  16:1
**supervisors** [3] -
  54:12
**supplied** [1] -
  16:12
**supposed** [4] -
  12:23; 13:18,
  20; 29:5
**suppress** [1] -
  28:24
**Supreme** [2] -
  34:1, 9
**swallow** [1] -
  54:15
**system** [2] -
  61:17; 62:6
**systems** [1] -
  19:22
**table** [2] - 2:6;
  51:6
**taint** [3] - 3:23;
  18:20
**talks** [2] - 39:3;
  41:4
**tax** [4] - 7:12;
  25:6; 52:6
**team** [7] - 2:18;
  12:20; 14:22;
  16:1, 4; 20:17;
  43:3
**ten** [2] - 18:8;
  36:17
**terms** [14] - 12:12,
  21; 15:3; 27:1;
  29:24; 49:23;
  51:18; 53:14,
  19, 24; 56:17;
  65:1; 69:4, 13
**test** [1] - 59:21
**text** [1] - 29:23
**THE** [150] - 2:8,

13; 5:5; 6:18;
  7:4; 8:19; 9:5, 7;
  10:14, 18;
  11:14, 19, 22,
  24; 12:15, 18;
  14:17, 20; 15:5,
  14; 18:15, 22;
  27:6, 9, 11, 14,
  22; 28:18;
  29:11, 17; 30:2,
  4, 8; 31:24;
  32:7, 10, 22;
  33:13; 34:23;
  35:12; 36:3, 5,
  8, 10, 13, 16,
  19; 37:6, 9;
  38:1, 5, 8, 12,
  17, 24; 40:3;
  42:8, 15; 43:10,
  14, 17, 20, 24;
  44:3, 8; 45:15,
  18, 21, 25; 46:6,
  10, 13, 16; 47:2;
  48:1, 7, 10;
  49:3, 11; 50:6,
  20, 22, 24; 51:3,
  5, 10, 22; 52:7,
  15, 19, 25; 53:3,
  8, 20; 54:4;
  55:5, 11, 17, 21;
  56:7, 21; 57:2,
  8, 12, 15, 22;
  58:13, 15, 17,
  20; 59:1, 3, 25;
  60:6, 15, 17, 20;
  61:12, 19; 62:1,
  7; 63:24; 64:9,
  17, 20, 22; 65:4,
  6, 8, 11, 15, 17,
  22; 66:8, 12, 14,
  18, 20, 23; 67:5,
  9, 25; 68:3, 14,
  16; 69:1, 3, 10,
  13, 23
**themselves** [2] -
  17:25; 27:3
**then-counsel** [1] -
  23:23
**thereabouts** [1] -
  36:11
**thereof** [1] - 3:11
**they've** [1] -
  21:10; 31:16;
  36:20; 37:2;
  39:5; 40:10;
  44:13, 16, 20;
  45:6; 46:3, 25;
  47:4, 9
**thinking** [3] -
  20:14; 34:25;

37:12
**third** [2] - 18:25;
  67:19
**thorn** [1] - 28:20
**thorough** [1] -
  38:15
**thousands** [1] -
  44:16
**threatened** [1] -
  54:10
**three** [9] - 10:23;
  28:1; 34:15;
  44:25; 51:20,
  23; 53:5; 61:12
**three-million-
  dollar** [1] - 53:5
**throughout** [4] -
  3:9; 9:13; 11:22;
  32:9
**throw** [1] - 24:3
**Thursday** [1] -
  68:13
**timeline** [20] -
  3:19; 14:5, 14;
  15:1, 6; 21:24;
  25:22; 27:1;
  35:11, 18-19;
  37:19; 38:14,
  16, 19; 49:13,
  16; 50:25; 69:7
**timelines** [2] -
  48:21; 57:1
**title** [1] - 30:16
**today** [7] - 2:16;
  3:1, 10; 4:4;
  7:22; 8:11;
  42:19
**together** [2] -
  24:5, 14
**toll** [9] - 5:6, 23;
  8:8; 9:3; 11:16;
  12:2; 17:3;
  21:16; 30:22
**tolled** [1] - 27:17
**tolling** [3] - 5:10,
  19; 19:17
**tomorrow** [1] -
  29:7
**took** [7] - 12:19;
  14:24; 31:20;
  32:1, 3; 36:2
**top** [1] - 52:2
**toward** [1] - 24:8
**tracks** [1] - 31:13
**Trial** [13] - 3:5;
  4:12, 25; 6:9;
  11:5; 12:2;
  15:10, 17; 24:9;
  26:21; 31:2;
  59:13; 62:2

**trial** [51] - 3:16;
  7:15, 17; 8:25;
  10:3, 13, 16, 21;
  11:9; 19:23;
  20:5, 10-11;
  21:13; 22:3;
  23:7; 24:3, 7,
  25; 25:8, 17;
  26:20; 28:12;
  30:1, 5, 9, 22;
  37:12; 45:14;
  46:3; 57:11;
  58:3; 59:11;
  60:13, 16, 18;
  61:24; 62:4;
  63:22; 64:1;
  67:6, 11-12;
  68:11, 13; 69:4
**trick** [1] - 9:16
**tried** [5] - 13:22;
  35:14; 37:1;
  38:8; 64:10
**trigger** [1] - 43:21
**triggers** [1] - 34:4
**trimmed** [2] -
  36:21
**true** [3] - 23:17;
  49:16; 62:21
**try** [2] - 14:8; 68:6
**trying** [21] - 7:15,
  19; 10:18; 14:2;
  15:3; 22:10;
  30:9; 32:6;
  45:22; 50:1;
  54:18; 56:12;
  58:19; 59:20;
  63:17; 64:4, 6
**tunc** [5] - 4:15,
  22; 5:2; 6:14;
  59:22
**turn** [5] - 13:17;
  27:23; 32:22;
  42:16; 64:14
**turned** [5] - 25:22;
  42:23; 44:24;
  58:22; 59:17
**turning** [3] -
  23:12; 37:4;
  57:3
**twice** [1] - 26:10
**two** [21] - 4:11;
  5:10; 10:12;
  14:1; 16:11;
  21:15; 23:9;
  25:15; 28:9;
  29:20; 41:11;
  46:9, 15; 50:9;
  56:4; 58:8;
  62:10, 16;
  63:21; 64:13

**twofold** [1] - 25:23
**U.S** [1] - 30:15
**U.S.C** [1] - 31:3
**ultimately** [1] - 9:1
**unclean** [3] - 4:17; 7:14, 18
**understood** [1] - 49:3
**unequivocally** [1] - 45:13
**unfortunate** [1] - 60:24
**unfortunately** [1] - 64:8
**unhelpful** [1] - 7:22
**United** [4] - 2:3, 5; 32:3; 51:12
**unless** [1] - 61:16
**unlocked** [1] - 19:15
**unopposed** [1] - 23:24
**unrecorded** [1] - 58:5
**unusual** [1] - 54:21
**up** [17] - 2:15; 12:5; 24:23; 30:1, 3, 7; 36:1; 50:1; 51:24; 52:9; 53:2, 4; 56:13; 60:24; 63:16, 21; 65:19
**upload** [1] - 32:4
**uploaded** [14] - 3:12, 17-18; 4:7; 12:23; 14:23; 15:3; 16:25; 18:4, 10, 19; 22:5; 23:18
**uploading** [4] - 15:21; 17:10; 19:22; 23:12
**upside** [1] - 59:18
**urges** [1] - 40:20
**US** [2] - 16:23; 21:1
**user** [1] - 15:22
**uses** [2] - 15:23; 51:21
**versus** [2] - 2:4; 30:15
**vexing** [1] - 7:5
**view** [11] - 2:21; 6:6; 13:10; 24:18; 31:6; 32:16; 33:17;

49:20; 52:22; 57:2; 63:15
**violation** [7] - 3:6; 4:13; 5:1; 6:10; 34:14; 62:2
**violations** [1] - 26:21
**visually** [1] - 37:22
**volume** [1] - 65:1
**voluminous** [2] - 17:25; 19:11
**wait** [6] - 10:2; 26:18; 27:6; 54:10
**waiting** [3] - 22:4; 40:15; 63:22
**waived** [1] - 31:16
**waiver** [1] - 31:8
**walked** [1] - 66:5
**walks** [1] - 28:23
**Walter** [2] - 21:10
**wants** [1] - 29:25
**warrant** [9] - 28:24; 39:15-17; 54:22; 57:25; 62:24; 63:1; 66:4
**warrants** [1] - 63:6
**water** [1] - 8:3
**ways** [3] - 26:16; 30:18; 33:22
**week** [3] - 10:21; 16:11; 68:11
**weeks** [3] - 9:22; 21:15; 32:1
**Weeks** [1] - 22:14
**weighs** [1] - 37:17
**whole** [2] - 3:21; 29:22
**wholly** [2] - 7:21; 8:4
**wide** [1] - 54:22
**wide-ranging** [1] - 54:22
**willfulness** [1] - 32:15
**wishes** [1] - 40:18
**withdraw** [2] - 29:2
**withholding** [1] - 9:21
**witnesses** [2] - 27:25; 62:11
**word** [2] - 49:4; 61:22
**words** [2] - 23:22; 34:6
**worth** [1] - 14:4

**wrestle** [3] - 6:6; 14:8; 59:16
**wrestled** [1] - 4:14
**write** [2] - 61:1; 68:4
**written** [1] - 17:2
**wrote** [2] - 6:19; 21:6
**year** [5] - 20:11; 22:2; 34:9; 36:16; 37:16
**years** [11] - 14:2; 16:9; 46:9, 15; 50:9; 58:8; 62:10, 17; 63:22; 64:13
**Zedner** [2] - 4:13; 11:25