**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA,

                                           *

                                           *

    v.                                     Criminal No. 8:22-cr-00091-PX

                                           *

AKBAR MASOOD, *et al.*,             *

                                           *

    Defendants.

                                      ***

## <u>MEMORANDUM OPINION</u>

Defendant Akbar Masood is charged with conspiracy to defraud Walter Reed National Military Medical Center ("Walter Reed") and related identity theft, in violation of 18 U.S.C. §§ 1343, 1349, and 1028A.  ECF No. 342.  Pending before the Court is Masood's motion to dismiss the Indictment for violations of the Speedy Trial Act ("STA"), 18 U.S.C. § 3161 *et seq.*, and his constitutional speedy trial rights as preserved in the Sixth Amendment to the United States Constitution.  ECF No. 330.[1]  He separately moves for dismissal based on the Government's destruction of probative evidence and for charging deficiencies.  ECF Nos. 332, 333 & 334.  For the reasons discussed below, Masood has not been tried within the time prescribed by the STA.  The Indictment must be dismissed and with prejudice.  The Court will grant ECF No. 330 as to the STA violations and deny the remaining motions as moot.

## I.    Background

The STA "requires the government to proceed to trial within seventy days of the indictment or the defendant's initial court appearance, whichever occurs later."  *United States v.*

---

[1] Masood was originally charged on April 6, 2022.  ECF No. 21.  The Government filed superseding Indictments against him on August 8, 2024, and December 19, 2024.  ECF Nos. 226 & 342.  Because the dispositive issues do not depend on the timing of superseding Indictments, for ease, the Court will refer to the charging document as the Indictment.

*Smart*, 91 F.4th 214, 220 (4th Cir. 2024); *see* 18 U.S.C. § 3161(c)(1).  The case against Masood has been pending for nearly three years.  To be sure, the STA seventy-day clock may be tolled for many reasons, but if in the end, the defendant is not tried during the seventy days of non-excluded time, the indictment must be dismissed.  *See* 18 U.S.C. § 3162(a)(2).  That is the relief Masood seeks, and so the Court will first summarize the facts pertinent to its decision on the matter.

### A.      Year One

On April 6, 2022, Masood and his principal co-defendants, Harriett Jackson and Michelle Peebles, were arrested and their homes and business were searched.  The Special Agent in charge of this investigation, Joshua Kimrey ("SA Kimrey") from the United States Army Criminal Investigation Division, obtained four search warrants in advance of the arrests.  In each warrant affidavit, SA Kimrey affirmed that seizure of all electronic devices was pertinent to the fraud investigation because, given the nature of this case, "electronic storage media may provide crucial evidence of the who, what, why, when, where and how of the criminal conduct under investigation, thus enabling the United States to establish and prove each element, or alternatively to exclude the innocent from further suspicion."  ECF No. 142-2 ¶ 139.  That day, when all was said and done, agents seized thirty electronic devices: thirteen from Masood's residence, nine from Jackson's, and eight from Peebles' home.  ECF No. 346 at 6.

By the next day, April 7, 2022, the eight Defendants charged in the Indictment all had their initial appearances, and so the STA clock began to run.  *See* 18 U.S.C. § 3161(c)(1).  Almost a month later, on May 6, 2022, the Government filed its first consent motion to toll the speedy trial clock, from April 8 to August 9, 2022.  ECF No. 90.  As grounds, the Government represented that while it had provided "limited, albeit highly probative, discovery" to

Defendants, additional "voluminous discovery" was still "forthcoming" and "in the process of being collected." *Id.* at 2. The Government expressly noted that it had recently seized electronic devices in the possession of the three key Defendants; Masood, Peebles, and Jackson, that required the United States Attorney's Office to conduct a filter review for potential attorney-client privileged material. *Id.* Based on the Government's representations, Defendants agreed that tolling was proper until August 9, 2022. *Id.*

The Court granted the motion on the same day, excluding until August 9, 2022, from the seventy-day STA clock. ECF No. 91. The Court granted the requested continuance to allow the filter process to occur, and for Defendants to review discovery and discuss potential pretrial resolution of the case. *Id.* Accordingly, pursuant to 18 U.S.C. § 3161(h)(7), the Court concluded that the requested continuance met the ends of justice and that the requested delay was "not based on lack of diligent preparation on the part of counsel for the Government." *Id.* at 2. Of the time tolled, twenty-eight days were retroactively excluded.

By May 4, 2022, SA Kimrey had asked the Assistant United States Attorney ("AUSA") assigned to the case, Adam Ake ("AUSA Ake") to identify the IT person in the United States Attorney's Office who could upload the data from the thirty devices onto the database platform, Relativity, because Relativity would be far more user-friendly than the software used by the Army. *See* Email-00063.[2] That day, AUSA Ake provided SA Kimrey the contact information. *Id.*

On May 9, 2022, AUSA Ake requested assignment of a filter-team attorney to review the data from the thirty devices for attorney-client privileged matter. Email-00018. During the next

---

[2] The Court reviewed internal email communications regarding the seizure and production of the thirty devices, and on January 27, 2025, ordered the full disclosure of those emails to Masood. ECF No. 270. The Government produced the emails in separate PDFs, serially Bates-stamped "Email-000X." The Court cites to the Bates-stamp number throughout this Memorandum Opinion.

month, the United States Attorney's Office prepared for the review and assigned AUSA Matthew Phelps ("AUSA Phelps") to be the filter attorney. Email-00021.

On June 21, 2022, nearly three months after the thirty devices were seized, AUSA Ake emailed defense counsel to request the passwords for certain devices. Email-00052. Jackson disclosed the passwords by July 6, Email-00049, and it appears that Peebles and Masood followed shortly thereafter, within the month of July. Email-00055.

By July 31, 2022, all seized devices had been accessed and imaged, and the extracted data was downloaded to an external hard drive. Email-00055. About ten days later, on August 9, 2022, SA Kimrey emailed the IT Department at the United States Attorney's Office to inform them that the "hard drive full of data" was ready to be uploaded to Relativity so the filter team could begin its review. Email 00060–61. SA Kimrey was directed to deliver the hard drive to the Baltimore field office. *Id.*

The same day, August 9, 2022, the Court held an unrecorded status conference. ECF No. 92. By then, the first tolling order had expired, and the STA clock was running. During the August 9th status conference, the Court learned that the electronic devices had not yet been searched, and so the contents had not been produced to Defendants. *Id. See also* ECF Nos. 94– 96. The Government also disclosed that it had executed a search warrant on Google for certain of the Defendants' email accounts (the "Google search warrant") and that the data would be produced to the defense upon receipt. ECF No. 96 at 2.[3] The Court credited the representations and set in a follow-up status in three months. ECF No. 92.

During the status call, Defendants did not object to an additional three-month continuance, but they did express "concern[] about the delay." ECF No. 94. In written

---

[3]According to the Government, the Google search warrant data did not need to be reviewed by the filter team, and so, could have been made available to the Defendants once the Government received the data. Email-00058.

correspondence, counsel for Jackson, speaking for all Defendants, reserved the ability to raise "all rights and defenses" regarding the circumstances of the delay, but did not make a speedy trial motion at the time, "as discovery yet to be produced [was] critical to their defense." *Id.* Thus, to give the Government time to honor its discovery obligations, the defense consented to a continuance. *Id.* The Government responded that it was "conscious of its discovery responsibilities" and would provide such discovery "as expeditiously as possible." ECF No. 95.

The next day, August 10, 2022, Google made its first production to the Government responsive to the Google search warrant. ECF No. 330-10. SA Kimrey downloaded the documents for prosecution team review immediately. *Id.* The data was not made available to Defendants.

On August 16, 2022, AUSA Ake informed defense counsel that the Government would be returning the Defendants' own imaged devices to them and asked if each would waive attorney-client privilege so that all Defendants could receive a complete set of all devices. Email-00070–71. Defendant Jackson immediately responded that she would not waive attorney-client privilege by allowing unfiltered materials to be produced to all Defendants; to which AUSA Ake replied, "sure that makes sense." *Id.* This ended any discussion about conditioning production on a waiver from the defense.

On August 16, 2022, the Government filed its second consent motion to toll the STA clock for an additional sixty days, until October 9, 2022, and asked the Court to make ends-of-justice findings under the STA. ECF No. 96. In the motion, the Government referenced the "reservation letter," and that the Defendants ultimately did not object to tolling the STA clock "*based on a desire to review the electronic materials for potentially exculpatory or helpful information.*" *Id.* at 2 (emphasis added). The Government also pressed that the need for the

further STA delay stemmed in part from the anticipated production of additional "voluminous" discovery that the defense "must themselves digest [] before they have a chance to meaningfully review it with their clients," and to allow for plea negotiations. *Id* at 3.

The Court granted the motion to toll the same day, again making ends-of-justice findings that mirrored the Government's representations. ECF No. 97. The tolling order excluded time until October 9, six days of which was retroactively excluded. *Id.*

On August 17, 2022, AUSA Ake learned that the hard drive of data from the thirty devices was too big to upload "in-house," and would need to be handled by the Department of Justice's Litigation Technology Service Center ("LTSC"). Email-00073. The data ultimately did not reach LTSC for two months, after SA Kimrey arranged to extract the operating programs so that only data files with substance would be uploaded. Email-00088–89; Email-00099; ECF No. 271 at 144–45. Accordingly, the data was not delivered to the IT Department for transport to LTSC until October 13, 2022. ECF No. 271 at 146.

By October 2022, six months had passed from the Defendants' first appearance. Counsel for Jackson asked AUSA Ake when the data would be produced from the devices. Email-00102. AUSA Ake responded that the data from the Google search warrants should be available by October 20 or 21. *Id.* Ake also communicated that the Government had "just received a trove of emails" from an employee at one of the involved companies and those emails would be available shortly as well. *Id.* However, none of the Google search warrant data was turned over to Defendants and was never made available to Masood until almost two years later.

On December 2, 2022, the Government filed its third consent motion to toll the STA from October 27 until December 22, 2022. ECF No. 101 at 3. In the motion, the Government represented that "progress has been made in providing additional discovery;" and that a reverse

proffer conducted with the Defendants had "clarified the need for additional discovery productions" to them. *Id.* The Government did not tell the Court that as of December 2, the Government had yet to make available the data from the thirty electronic devices or the Google search warrant data. Rather, the Government's stated basis for an ends-of-justice finding was Defendants' need to review the "additional voluminous discovery" and to potentially engage in plea negotiations. *Id.* The Court granted the motion which tolled the clock until December 22, 2022, and retroactively excluded thirty-six days. ECF No. 102.

On December 22, 2022, the Government filed a joint status report and incorporated a motion to toll time under the STA until "the next status conference." ECF No. 103. In it, the Government summarized the status of discovery production as follows:

> On December 8, 2022, the Government provided a discovery production to all defendants that includes most of the Rule 16 material the government anticipates introducing at trial on the existing charges. The Government has *not yet completed filter reviews* of significant amounts of electronic evidence due to internal Justice Department delays in uploading to relevant systems. *The Government has provided unfiltered copies of this material to the relevant defendants for their review*, however, and does not anticipate relying on that evidence at trial, so does not request a delay in scheduling on that basis. The Government, with consent of counsel, requests that the Court provide dates for a status call in January 2023, during which the parties can schedule trial and pre-trial motions dates in this matter.

ECF No. 103 at 3 (emphasis added).

Based on this, the Court believed that discovery production was progressing apace, to include a filter process that was underway but not completed. In truth, this process had not started and would not begin for another eleven months. Email-00157 & 00279.

On February 3, 2023, the Court held a recorded status conference with all counsel. By this point, ten months had passed since the Defendants had their initial appearances. The Court began the conference by noting that it had read the December 22, 2022, status report, and "will enter that proposed order that tolls until today." ECF No. 106. The Court, however,

inadvertently reviewed and signed the previous tolling order. *Compare* ECF No. 103-1 (proposed Order) *with* ECF No. 105 (signed order). So, the Court had never actually tolled the STA clock until February 3, 2023, as requested.[4]

During this status conference, the Court next asked the Government for an update on discovery production. ECF No. 106. AUSA Ake told the Court that at this juncture, "the government has produced what it feels are Rule 16 materials." *Id.* AUSA Ake reiterated that the filter team review had not been "completed," but generally noted that evidence from certain devices has been provided "serially to the affected defendants." ECF No. 106. He did not tell the Court that this meant of the thirty seized devices, the Government had only provided to each Defendant a copy of the data from his or her own devices. *See* Email-00131. Nor had AUSA Ake told the Court that the prosecution team had the entirety of the Google search warrant data and had not made any of it available to the Defendants.

Defendants next expressed their displeasure with the slow pace of discovery. ECF No. 106. Jackson's lawyer, who was a former federal prosecutor, noted that the delay appeared to derive from the prosecutorial decision to execute wide-ranging search warrants on the same day the Defendants were indicted. *Id.* While careful not to ascribe personal animus to AUSA Ake, counsel highlighted the disadvantage the discovery delay had placed on the defense. *Id.*

Defense counsel also addressed the Government's production of only certain emails and communications which, from the defense's perspective, was not the "whole story," but given the delay thus far, the defense was compelled to seek a trial date. ECF No. 106. Based on this call, and with the consent of all counsel, the Court set a trial date of February 12, 2024, with a motions-filing deadline of November 27, 2023. ECF No. 107.

---

[4] On December 29, 2022, this case was reassigned to this Court upon the retirement of the Honorable Paul W. Grimm.

On February 17, 2023, the Government submitted its fourth motion toll the STA from February 3, 2023, until the scheduled motions filing deadline of November 27, 2023. ECF No. 108. The Court granted the motion, again based on the representations that the Government had made "progress" in providing additional discovery," and because the defense "clarified the need for additional discovery productions." ECF No 108-1 at 4. The Court generally concluded that the ends of justice were served by continuing the trial so that the defense could have "sufficient time to make additional discovery requests," prepare pretrial motions, and review discovery already produced. *Id.* at 3. The Court granted that motion which retroactively excluded thirteen days.

**B.    Year Two**

Between February and November 2023, nothing of substance happened with the data from the thirty devices. Internal Government correspondence reflects that AUSA Ake asked IT for a status on the production multiple times—on November 30, December 6, December 12, December 14, and December 22, 2022. Email-00127; Email-00133; Email-00139; Email-00149. Eventually, LTSC conveyed that the data was being "processed" for a "January timeline" with no explanation for the delay and no sense of urgency. Email-00156–57. AUSA Ake responded to LTSC "thanks all!" *Id.*

By early February, AUSA Ake again asked about the status of the project, this time commenting that "the defense counsel is starting to ask more plaintively about it." Email-00182. AUSA Ake emailed IT again on February 22, Email-000190, and March 23, 2023, now noting "it has been months and I haven't had any update on movement." Email-00198. AUSA Ake also made clear that of the eight charged Defendants "some are going to trial." *Id.* Again, hearing nothing, on March 29, 2023, AUSA Ake asked for the help of others in IT. Email-

00202.  AUSA Ake evidently received no response of consequence.  So again, on May 1, 2023,

AUSA Ake sent an email stating that if the database is not produced soon, "the defense will seek

sanctions."  Email-00214.

On May 24, 2023—some seven months after LTSC had received the data to upload to

Relativity—LTSC informed the United States Attorney's Office that the job was complete.

Email-00237–41.  Despite this, the entire process appears to have been slow-walked even

further.  Nothing happened with the data for the next several months.

On July 24, 2023, SA Kimrey asked AUSA Ake what was going on with the filter review

because he has filter agents "standing by."  Email-00249.  Hearing nothing, SA Kimrey asked

again on August 22, 2023, reiterating to AUSA Ake that the filter agents are "standing by" and

ready to go.  Email-00252.  That same day, AUSA Phelps asked for access to the database and

received no response.  Email-00254–68; Email-00272.  AUSA Phelps reiterated his request for

access on August 30, 2023.  Email-00269.

By then, Masood had waited seventeen months for the data from the devices, and twelve

months for the Google search warrant data.  The filing deadline for pretrial motions was fast-

approaching.  Indeed, the probity of the data from the devices was not lost on the prosecution

team.  On November 9, 2023, SA Kimrey emailed AUSA Ake the following:

> Just wanted to check-in and see when we could jump in Relativity in preparation
> for Masood's trial.  *I know the digital evidence we collected is Masood
> heavy, hopefully a golden egg or two there.*  Not sure if Mr. Phelps was able to get a filter
> complete?  Or plans to?  Also, I understand we are still a few months away [from
> trial], *but do you think it would be a good idea to get rolling on turning
> over/uploading discovery*?

Email-00279 (emphasis added).

That same day, November 9, 2023, AUSA Phelps asked again about receiving access to

the Relativity database to perform his review.  Email-00279.  A week later, AUSA Phelps was

granted access on November 16, 2023, and that same day reported to AUSA Ake the results of a preliminary filter screen: of the roughly 500,000 items uploaded to Relativity, approximately 34,000 were presumptively privileged, and upon closer review, only 6,258 bore any real issue. Email-00283; Email-00286.  The rest were free to share.  *Id*.  Still the data was not produced to Masood.

On, November 21, 2023, Masood's then-counsel, Joshua Lowther, filed an unopposed motion to extend the pretrial motions deadline from November 27, 2023, until January 3, 2024. ECF No. 130 at 1.  Lowther represented that the parties are "actively and diligently negotiating a pretrial resolution to this case." *Id* at 2*.*  Masood expressly asked the Court to extend the motions deadline and make commensurate STA findings to allow for such negotiations.  *Id.*  But the Court denied the motion, finding "insufficient grounds to justify a continuance of this length." ECF No. 131.

Two days later, on November 24, 2023, Masood's counsel filed a renewed motion to extend the time to file motions until December 4, 2023.  ECF No. 132.  Masood also asked the Court to toll the period from November 27 until December 4, 2023, but gave no grounds to support an ends-of-justice finding.  *Id.*  The Court granted the continuance of the filing deadline via paperless order, but made no findings under the STA.  ECF No. 133.  The STA clock, therefore, started to run on November 24.

On December 4, 2023, Masood filed two pretrial motions that other Defendants moved to adopt.  ECF Nos. 135, 136, 140, 144 & 145.  The filing of the motions stopped the STA clock. *See* 18 U.S.C. § 3161(h)(1)(D).  In the interim, seven days of unexcluded time had passed.

The Court next held a recorded status conference on December 15, 2023.  ECF No. 151. On the call, AUSA Ake commended defense counsel for helping the Government "better

understand" the case. *Id.* AUSA Ake also admitted that the Government did not previously have a "clear view" of certain documents that, at first blush, had appeared fraudulent, but were really more about "hiding" income to qualify for certain government contract benefits. *Id.* Accordingly, the Government invited the Internal Revenue Service ("IRS") into the case, and AUSA Ake represented that several Defendants would admit to tax charges instead of the originally-filed fraud charges. *Id.*

AUSA Ake next asked the Court to continue the February 2023 trial date. *Id.* The Court reiterated the need to consider the STA and particularly to ensure that no defendant believed he or she "must" waive the right to a speedy trial. Counsel for Defendant Jackson asked for a modest postponement of the trial date to make sure the parties stayed "motivated to keep moving." *Id.* Ultimately, the Court moved the trial date to begin April 29, 2024, and set in a recorded status conference for February 12, 2024. ECF No. 150.

The Court next held a recorded status on February 12, 2024. ECF No. 156. AUSA Ake represented that each of the Defendants were still in plea negotiations, but certain pleas still required "approval," presumably from the IRS, and so, those may not be secured by the April 29, 2024 trial date. *Id.* Based on these representations, the Court rescheduled the trial date to July 15, 2024, and shortened the anticipated trial length to one week. ECF No. 155. The Court also scheduled a follow-up status conference for April 1, 2024. *Id.*

By now, Peebles and Jackson were cooperating against Masood. ECF No. 262-1 at 2. As of early March 2024, the prosecution team was scheduling "follow-up proffers" with Peebles and Jackson to "confirm their story—pinning most[ly] everything on Masood." *Id.* Thus, as of early 2024, the prosecution team not only expected Masood to go to trial but knew that Jackson and Peebles were blaming Masood for the offenses. And yet, the Government still had not made

available to Masood the data from the devices seized from Jackson and Peebles nearly two years prior.

At the April 1, 2024, status conference, AUSA Ake informed the Court that the IRS had "backed out" of the case, so the negotiations in that regard had been for naught. ECF No. 166. The Government still expected every Defendant to plead guilty and that, for the first time, the Government confirmed for the Court that the lead Defendants had plea agreements in hand. *Id.* The Court thus kept the July 15, 2024, trial date and set interim dates, to include a motions hearing and pretrial conference on July 8, 2024. ECF No. 167. The Court also set a follow-up recorded status conference for May 1, 2024. *Id.*

Shortly after, many co-Defendants either had their cases dismissed or struck plea deals. ECF Nos. 159, 182, 191, 279, 194, 196 & 200. But nothing like that materialized with Masood. On May 1, 2024, at the follow-up recorded status, the Government confirmed that Masood would be the only Defendant proceeding to trial. ECF No. 189. AUSA Ake also confirmed that he would be leaving the United States Attorney's Office at the end of the month.

### C.    Year Three

On May 21, 2024, AUSA Darren Gardner ("AUSA Gardner") entered his appearance for the Government and replaced AUSA Ake. ECF No. 202. On May 24, 2024, the Court conducted a recorded conference with AUSA Gardner and Lowther only. ECF No. 204. The Court confirmed that Masood would be going to trial. *Id.* Because of a scheduling conflict on the Court's part, the Court then offered to find another Judge to try the case on July 15, or move the trial until August. *Id.* Lowther requested that the Court keep the case and set trial for September because the Government intended to file a superseding indictment. *Id.* The Court thus set trial for September 3, 2024, with deadlines for the parties to file in limine motions and

13

for the Government to respond to the outstanding motion to dismiss.  ECF No. 205.[5]  The Court
also scheduled a pretrial motions hearing date for August 23, 2024.  *Id.*

On June 13, 2024, the Government moved to toll the time from May 28, 2024, to
September 3, 2024, under the STA, expressly acknowledging that because Masood would
proceed to trial, the requested time would "afford both parties adequate time to draft any pretrial-
motions and otherwise prepare for trial."  ECF No. 211 at 4.  The Court granted the motion on
June 17, 2024, using the proposed order.  ECF No. 217.

On August 15, 2024, a week before the pretrial motions hearing scheduled for August 23,
new counsel entered their appearances on Masood's behalf.  ECF Nos. 229 & 230.  New counsel
immediately moved for the Court to "summarily grant" the pending suppression and dismissal
motions because the Government had never responded to them.  ECF No. 235.  Masood rightly
emphasized that as to the suppression motion, the Government's failure to respond was
"particularly notable" because the Government bears the burden of showing the constitutional
validity of the searches.  *Id.* at 2.

Masood also moved to compel the Government's compliance with its discovery
obligations under Federal Rule of Criminal Procedure 16, as well as its separate obligations to
produce *Brady, Giglio* and *Jencks* material.[6]  ECF No. 241.  Most pertinent to this motion,
Masood brought to the Court's attention that as of August 20, 2024—some twenty-eight months
after Masood's first appearance in this Court—the data from the electronic devices seized from

---

[5] Lowther indicated he would withdraw the motion to suppress evidence at ECF No. 136, but never did.

[6] Under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), the Government
maintains an affirmative duty to search for evidence "material to guilt or punishment" that may "exculpate the
accused" or "adversely affect[] the credibility of the government's witnesses."  *United States v. Trevino*, 89 F.3d
187, 189 (4th Cir. 1996).  *See also Kyles v. Whitley*, 514 U.S. 419, 437 (1995).  Under *Jencks v. United States*, 353
U.S. 657 (1957) (codified as 18 U.S.C. § 3500), the Government must disclose all prior written or recorded
statements of any witness but not until after the witness testifies.

Jackson and Peebles had never been turned over to Masood. *Id.* at 4. In addition, AUSA Gardner told new defense counsel that even though the devices had been seized and imaged, the Government "never reviewed" the data for any purpose, to include submitting the data to a filter team. ECF No 241-1.

Given the nearly two years of contrary Government representations—that the devices *were* going to be reviewed by the Government prior to disclosure—Masood pressed whether the Government had reviewed the data for *Brady* or *Giglio* material. ECF No. 241 at 6. Masood also sought an evidentiary hearing on the potential discovery and other violations arising from the Government's failure to produce the data. *Id.* at 12.

Two days later, on August 22, 2024, the Court held a recorded status conference in anticipation of the motions hearing the next day. ECF No. 243. The Court asked AUSA Gardner why he had not responded to the suppression and dismissal motions that had been pending for eight months. ECF No. 251 at 3–5. The Court also expressed its preliminary view that Masood's latest motion regarding discovery deficiencies "appear[ed] well founded," and so the Court wanted to discuss what was going to happen at the motions hearing. *Id.* at 2–3.

AUSA Gardner confessed he had not responded to the pretrial motions because prior defense counsel said he would withdraw one of the motions, even though the motion was never withdrawn. ECF No. 251 at 4. So AUSA Gardner planned to simply "address" these motions at the hearing without filing any written response. *Id.* The Court rejected the Government's excuse for failing to respond and made clear it must respond in writing to the motions. *Id.* at 5.

The Court next asked AUSA Gardner to explain why the data from the seized electronic devices had not been made available to Masood at any point since April 2022. *Id.* at 6–7. AUSA Gardner initially blamed the extensive delay on the need to obtain passwords for the

15

devices, though in fact, the Defendants had given the Government those passwords in July of 2022. *Id*. *See* Email-00049.

AUSA Gardner also reiterated to the Court that which he told Masood: "the taint review was never completed because the case started proceeding quickly—with various settlements." ECF No. 251 at 8. AUSA Gardner elaborated that although the data on the devices was "substantial," none of it "had ever been reviewed," because the devices "never seemed relevant," and the "resources weren't there" to do the review.[7] *Id*. AUSA Gardner made clear that as to "those devices, *we never even looked into them*." *Id.* at 9 (emphasis added); *see also id.* at 16 (Government emphasizing that electronic discovery was "too voluminous, we didn't have the resources to look into it."); *see also* Email-00088. AUSA Gardner then confirmed the Government had never disclosed to Masood the chain of custody reports for the thirty electronic devices, the search warrant returns, or other documents related to the seizures. ECF No. 251 at 9–14.

The Court next discussed the longstanding request from the defense for any data obtained from the conspirators' business, Infused, through which they allegedly committed the offenses. *Id.* at 16 & 24. Evidently, the Government had obtained three discrete email accounts from two cooperating witness-insiders, Marlon Johnson and Barbara Rosas. ECF No. 251 at 28. But no other data from the Infused corporate computers or emails were forthcoming. AUSA Gardner, in response, plainly assured the Court that the Infused "server" had been produced to the Defendants. ECF No. 251 at 24–25. Counsel for Masood pushed back, principally because they had not received any chain of custody reports for the seizure, imaging or production of the

---

[7] The Government, however, did have sufficient "resources" to initiate an inquiry in 2020, obtain and serve numerous subpoenas, and even use a single-engine plane to conduct "flyover" surveillance as part of its investigation. ECF No. 271 at 62–64.

corporate "server." *Id.* at 29.  Accordingly, the Court ordered the Government to disclose when it made the Infused "server" available to the defense.  *Id.* at 30.

That evening, AUSA Gardner filed supplemental correspondence to address the issues raised during the call.  ECF No. 247.  AUSA Gardner first admitted the information he had given the Court and defense counsel was wrong.  *Id.* at 2.  Now, AUSA Gardner represented that a filter team *had* reviewed the data from the devices, but offered no insight on whether, if at all, the data was produced to Masood.  *Id.*  AUSA Gardner also assured the Court "the devices were searched" for *Brady* material.  ECF No. 247 at 2.  Last, AUSA Gardner confirmed that the Government had just produced, *for the first time* the chain of custody documents for the thirty devices.   ECF No. 252 at 6 & 15.  The Government also provided a courtesy copy of the production to the Court, but the production was in complete disarray.  *Id.*

Because the chain of custody document production was a mess, the Court started the August 23rd hearing by trying to understand what it had received.  It quickly became evident that the Government still had not yet produced the complete chains of custody, citing downloading difficulties.  *Id.* at 14–15.  The Court next tried to understand better what the Government had done with the data from the thirty devices over the last twenty-eight months.  AUSA Gardner confirmed an eighteen-month lag between seizure and the filter team review and that the extracted data had not yet been made available to Masood.  *Id.* at 47.

As to the purported *Brady* review, AUSA Gardner reiterated that not only had the prosecution team searched the devices, but that AUSA Ake personally reviewed all the data for *Brady* material.  ECF No. 252 at 38 & 43–46.  Given the fantastical nature of this representation, the Court pressed:

COURT: And you're representing to me that Mr. Ake personally reviewed the contents of all [twenty-seven][8] devices to determine if *Brady* material existed?

GARDNER: Yes, Your Honor.

COURT: Can you give me the terabytes on the [twenty-seven] devices and when Mr. Ake himself reviewed for *Brady?*

ECF No. 252 at 38.

AUSA Gardner's response to this question was long and winding.  He first described the filter process.  ECF No. 252 at 38–42.  But then quickly did an about-face on whether his Office reviewed the data for *Brady.*  He now told the Court that roughly 400,000 electronic items had *not* been reviewed for *Brady.  Id.* at 39–45 ("[W]e can't represent that anything was reviewed for *Brady* apart from those [6,000] documents, Your Honor.").

The Court next turned to whether the Government had produced to Mr. Masood "the entire Infused server" as AUSA Gardner previously confirmed.  ECF No. 252 at 69.  In fact, it was AUSA Gardner who initiated the conversation, arguing the production of the Infused server mitigated any prejudice related to the delay in producing the data from the thirty devices.  *Id.* at 73.  But when pressed, this argument fell apart.  AUSA Gardner then confirmed that the Government *had never even obtained the Infused server*, but rather had obtained only the three discrete email accounts from cooperating witnesses that the Government intended to use in its case-in-chief.  *Id.* at 75–77.

In a never-ending search for clarity, the Court next asked AUSA Gardner to identify all electronic evidence in the Government's possession and whether the same had been produced to Masood.  ECF No. 252 at 90.  While AUSA Gardner discussed at length the "three buckets" of electronic evidence seized or obtained, he never mentioned the voluminous data received from

---

[8] At that time, the Government had the Court believe that twenty-seven devices had been seized.  The Court later learned that thirty were seized.

the Google search warrant in 2022 and early 2023.  *See* ECF No. 330 at 29.  It soon became clear

that the Court required an evidentiary hearing on Masood's motions to compel or dismiss the

Indictment for violations of Rule 16, *Brady* and *Giglio*.  ECF Nos. 135 & 241.  Thus, the Court

set an expedited proceeding for August 29, 2024.

At this hearing, the Government called SA Kimrey to discuss the seizure, imaging, and

processing of the thirty devices.  ECF No. 271 at 24.  The Court and Masood learned for the first

time that agents had seized a laptop computer from Jackson's residence, but then immediately

returned it to Jackson without any imaging.  *Id.* at 120.  According to SA Kimrey, because they

found a "CAC Card"[9] in the computer that belonged to a Walter Reed employee, that somehow

prompted the return of the computer to Jackson "without doing any sort of analysis."  *Id.*  The

decision, says SA Kimrey, was a "collective" one, made in consultation with AUSA Ake and the

"investigative team."  *Id.* at 125.  What remained stunningly opaque, however, were the reasons

for the delay in making available to the defense the data from the devices, the Infused server, or

the Google search warrants.  ECF No. 271 at 185–186.

Masood now moves for all manner of relief, to include dismissal of the Indictment for

violation of the STA.  For the following reasons, this motion is granted, and the Indictment will

be dismissed with prejudice.  The remaining motions are denied as moot.

## II.    Analysis

The STA "requires the government to proceed to trial within seventy days of the

indictment or the defendant's initial court appearance, whichever occurs later."  *United States v.*

*Smart*, 91 F.4th 214, 220 (4th Cir. 2024).  If a defendant is not brought to trial in that time, the

indictment must be dismissed "without exception."  *United States v. Gabrielian*, 2024 WL

---

[9] A CAC card is a government identification card with a chip inside that allows a user to access a government-issued computer.  ECF No. 271 at 127.

2384148, at *15 (D. Md. May 22, 2024); *see* 18 U.S.C. § 3162(a)(2).  The STA also excludes certain delays when computing the seventy-day period.  Some are automatic, "while others are 'excludable only if the district court makes certain findings enumerated in the statute.'"  *United States v. Hart*, 91 F.4th 732, 739–40 (4th Cir. 2024) (quoting *Bloate v. United States*, 559 U.S. 196, 203 (2010)); *see* 18 U.S.C. § 3161(h)(7)).

Relevant here, Section 3161(h)(7) justifies tolling the seventy-day clock upon the district court's finding that the ends of justice would be served by delay.  18 U.S.C. § 3161(h)(7)(A)*; see also Hart*, 91 F.4th at 739–40.  More particularly, the district court must make contemporaneous findings that "the ends of justice served by taking such actions outweigh the best interest of the public and defendant in a speedy trial."  18 U.S.C § 3161(h)(7)(A).  The record must reflect that the balancing of these interests is done at the time the tolling motion is granted.  This means that "while after-the-fact recording of the reasons for granting a continuance is permissible," some evidence must reflect that the actual balancing of those reasons occurred at the same time the court granted the continuance.  *United States v. Brooks*, 734 F. Supp. 3d 447, 464 (D. Md. 2024) (quoting *United States v. Pair*, 84 F.4th 577, 584 (4th Cir. 2023)).  Where the Government never moved for the tolling of the STA within the period of the allowable delay, then it necessarily follows that the Court "could not have done the mandatory balancing contemporaneous to the request."  *United States v. Berndt*, 732 F. Supp.3d 438 (D. Md. 2024); *see United States v. Henry*, No. CR JKB-23-0466, 2024 WL 2701637, at * 1 (D. Md. May 24, 2024)*; see also Brooks*, 734 F. Supp. 3d at 464 (quoting *United States v. Carey*, 746 F.2d 228, 230 (4th Cir. 1984)).  But in no circumstance can an ends-of-justice continuance be granted when based on the Government's "lack of diligent preparation."  18 U.S.C. § 3161(h)(7)(C).

Here, more than seventy non-excluded days have lapsed.  Twenty-eight days passed between Defendants' initial appearance and the Court's first tolling order entered on May 6, 2022.  ECF No. 91.  Then, six days passed between the lapse of the first tolling order, August 10, and the issuance of the second tolling order on August 16, 2022.  ECF No. 97.  Next, thirty-six days passed between October 27 to December 2, 2022, in which no contemporaneous exclusions were made.  ECF No. 102.  And last, thirteen days passed between February 4 to February 17, 2023.  ECF No. 108.  This totals eighty-three days of time for which the Court made no contemporaneous findings, or findings at all, that any such time was excluded under the STA.  Thus, because aggregate non-excluded time as of February 2023 exceeds the seventy allowable days under the STA, the Court must dismiss the Indictment.[10]

The Government, for its part, has no response to these unexcluded periods identified above.  It does not contest the proposition that the Court cannot make retroactive ends-of-justice findings.  ECF No. 346.  Rather, the Government presses forcefully that Masood should be judicially estopped from making any speedy trial arguments because he "consented" to the tolling orders at the time they were made.  *Id.* at 19–25.  Thus, says the Government, Masood should now be barred from taking a position inconsistent with that "consent."  This argument fails.

A party is only judicially estopped from taking a successful position "in one phase of a case" and later pursuing a "contradictory argument" in his favor.  *Zedner v. United States*, 547 U.S. 489, 504 (2006).  While judicial estoppel may bar a defendant from asserting a violation of his rights under the STA in certain circumstances, *United States. v. Velasquez*, 52 F.4th 133, 140–42 (4th Cir. 2022), this is not that case.  *See United States v. Goss*, No. 22-CR-00210-LKG,

---

[10] To the unexcluded days, the Court conceivably could add the period between December 22, 2022, and February 3, 2023, because it never entered an order making contemporaneous ends-of-justice findings.

2024 WL 5186696, at *6 (D. Md. Dec. 20, 2024).  In assessing whether a defendant should be judicially estopped from asserting an STA violation, the Court must determine whether the defendant has taken clearly inconsistent positions; and if so, evaluate whether the defendant successfully persuaded the court to accept the earlier position that is inconsistent with the latter; and lastly, consider whether the later inconsistent position would unfairly disadvantage the Government.  *Zedner*, 547 U.S. at 504.

Fatal to the Government's estoppel argument remains that Masood has never taken "clearly inconsistent" positions.  Masood's "consent" to continuances under the STA was expressly contingent on the Government honoring its discovery obligations "as expeditiously as possible."  ECF No. 95.  Repeatedly, the Government acknowledged that the discovery from the devices and Google search warrants was important, even "crucial," to the defense.  ECF No. 142-2 ¶ 139.  *See also* ECF Nos. 90 at 2, 96 at 2, 101 at 2–3, 103 at 2–3 & 108 at 2.  The Government also acknowledged that the Defendants had carved out the right to bring future challenges on speedy trial grounds.  ECF Nos. 94 & 95.   Thus, the consent that Masood gave was not unfettered.  It was conditioned on the Government honoring its discovery obligations, and if the Government failed in that regard, Masood preserved the right to bring the very motion he pursues today.  Masood's consent was also dependent on the Government's assurances that it was diligently providing discovery which, in the end, was not the case.  ECF Nos. 90-1 at 2, 96-1 at 2, 101-1 at 3 & 103-1 at 3.  Accordingly, Masood's arguments now are consistent with the position articulated by the Defendants throughout.  ECF No. 330.  He cannot be judicially estopped from pursuing this relief.  *See Goss*, 2024 WL 5186696, at *9.

Alternatively, Masood argues that because the Government's chronic lack of diligence in preparing for trial has now come to light, the Court should essentially "vacate" its prior tolling

orders as improvidently made. ECF No. 330 at 16. Where, as here, the Government's chronic lack of diligence is later exposed, the Court may rescind prior ends-of-justice findings under Section 3161(h)(7). *See United States v. Graham*, 2022 WL 2873876, at *4 (W.D.N.Y. May 2, 2022); *see also United States v. Dafna*, No. 19-CR-408 (MKB), 2024 WL 4424241, at *6 (E.D.N.Y. Oct. 5, 2024) (citing *United States v. Reichberg*, No. 16-CR-468 (GHW), 2018 WL 6599465, at *7 (S.D.N.Y. Dec. 14, 2018)); *United States v. Shulick*, 18 F.4th 91, 101 (3rd Cir. 2021) (noting where discovery failures are chronic, they amount to lack of diligent preparation). This is so because the STA plainly commands that "no continuance under subparagraph (A) shall be granted because of . . . lack of diligent preparation" on the Government's part. 18 U.S.C. § 3161(h)(7)(C). Although the Fourth Circuit has not passed on this issue, other Courts have concluded that the Government's failure to "comply with discovery rules can prevent exclusion of time from speedy trial calculations if that failure is chronic or in bad faith." *United States v. Esquilin*, 2000 WL 232162, at *2 (2d Cir. Feb. 18, 2000) (unpublished table decision) (citing *United States v. Anderson*, 902 F.2d 1105, 1109 (2d Cir. 1990)); *see, e.g.*, *Reichberg*, 2018 WL 6599465, at *7 ("Conduct on the part of the 'attorney for the Government' demonstrates a lack of diligent preparation within the meaning of Subsection (h)(7)(C) if that conduct is 'unjustifiable.'") (quoting *United States v. Vasquez*, No. 87-CR-526, 1989 WL 82422, at *5 (S.D.N.Y. July 17, 1989)).[11]

---

[11] The Court previously found that the Government's chronic discovery failures did not amount to "bad faith," in large measure because no one prosecutor purposely set out to deny Masood the discovery he was owed. ECF No. 359 at 2. However, the Court did conclude that the course of conduct was "reckless." ECF No. 252 at 36. The undisclosed data was massive and central to the case. The delay was inordinately excessive and was well beyond mere inadvertence. And the COVID-19 pandemic was not to blame. *Cf. United States v. Jain*, No. 19-CR-59 (PKC), 2020 WL 6047812 at *1 (S.D.N.Y Oct. 20, 2020) (a "pattern of inattentiveness, carelessness," and other "inexcusable failures bespeak of negligence and not conduct that was intentional or recklessly indifferent" to defendant's rights which could be remedied by disclosing data from cooperator's electronic devices in advance of trial).

The Court concludes that rescinding the tolling orders is warranted to remedy the extraordinary, chronic, and indefensible delay in producing voluminous Rule 16 discovery. Federal Rule of Criminal Procedure 16(a)(1)(E) demands the Government make available for inspection and copying "books, papers, documents, data, photographs, tangible objects . . . or copy any portions of any of these items, if the item is within the government's possession, custody or control and . . . the item is material to preparing the defense."  Indisputably, the defense made specific discovery requests for data seized from the electronic devices and the Government acknowledged its obligation to make the same available once the filter review was complete.  ECF No. 94; Email-00094 ("Are we expecting discovery from the co-defendants computers soon?  I would assume those will be large."); Email-00102 ("Adam: Any update on when we will be getting additional materials?").  Similarly, the Government acknowledged its obligation to disclose the data from the Google search warrant returns as well as the seized devices.  ECF No. 95.  The Government's concession in this respect is well-founded.  The electronic evidence seized from Masood's main conspirators turned cooperating witnesses— Jackson and Peebles—clearly is material to the preparation of his defense.  As is the voluminous data received from the Google search warrant.  ECF No. 330 at 29.

Next, the record is plain that the lack of attention to this case resulted in an indefensible delay of discovery production.  The thirty electronic devices were seized in April 2022, and none of the data from the conspirators' devices was produced to Masood until twenty-eight months later.  This is because it took the Government nearly six months to simply extract the relevant data from the devices; another seven months for the Government to upload the data to Relativity; and seven more months for the filter team to begin the filter-review process—a process that took no more than a couple of days to complete.  Email-00286.  And even then, the Government sat

on its production for so long that its own case agent had to prompt prosecutors to make the discovery available in advance of trial.  Email-00280.

Similarly, as to the Google search warrant evidence, the Government had the first tranche of data uploaded to Relativity as of October 2022, and the remaining responses by February 23, 2023.  ECF No. 330-11 at 4.  And yet for reasons that at best amount to colossal neglect, the defense never had access to any of this data until September 2024.  ECF No. 330 at 24.  Notably, unlike the data from the electronic devices, the Government expressly acknowledged that this evidence did not require a filter review and so it should have been produced upon receipt. Email-00058.  Nonetheless, the Government withheld it.

The Government, for its part, offers no credible explanation for the delay.  With only episodic concern for urgency as to its prosecutorial obligations, it appears that the Government let the data sit for years despite their professed attention to their Rule 16 obligations, *e.g.,* ECF No. 95, and in the face of Masood's repeated announcement that he intended to go to trial, ECF Nos. 204 & 211 at 4.  Where the Government cannot marshal credible grounds for lack of diligent preparation, the Court will not fill in the blanks.  Because the STA prohibits exclusion of time based on "lack of diligent preparation," and the record now plainly shows that the excluded time was the product of an inexcusable and chronic lack of diligence, the Court rescinds the time previously excluded under Section 3161(h)(7) for the period of October 2022 through December 2023.[12]  *See United States v. Dog Taking Gun*, 7 F. Supp. 2d 1118, 1121 (D. Mont. 1998)

---

[12] The Court confines the rescinded time to this period out of an abundance of caution.  The Government did appear to need some time to extract the data from the electronic devices in a form usable by LTSC, which was accomplished by October 2022.  After that, the Court cannot now find the Government acted diligently to have the data uploaded to Relativity and reviewed for privilege, especially when the review itself took a day or two at most. And there is simply no excuse for the failure to make the Google search warrant data available.  From this, the Court concludes that the prosecution team exhibited a chronic and indefensible lack of diligence from October 2022 until December 3, 2023, the filing of pretrial motions, after which the time was automatically excluded pursuant to 18 U.S.C. § 3161(h)(1)(D).  The time excluded during the pendency of motions is not subject to Section 3161(h)(7)(C)'s diligence requirement.

("[T]he Government either complies with the Rules of Criminal Procedure, or as here, when it fails to do so, the defendant cannot be charged with the problems of bureaucracy.").

In sum, Masood was not tried within seventy days of unexcluded time, in violation of the STA.  The Court must, therefore, dismiss the Indictment.  The Court next turns to whether the dismissal should be with or without prejudice.

## III.    Dismissal With or Without Prejudice

If an indictment must be dismissed for an STA violation, the Court must weigh whether that dismissal should be with or without prejudice.  Congress expressly requires the Court to consider three factors, "among others": "(1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of this chapter and on the administration of justice."  18 U.S.C. § 3162(a)(2).  The Court may also consider any prejudice to the defendant caused by the delay.  *See United States v. Hinch*, 308 F. Supp. 2d 599, 602 (D. Md. 2004) (citing *United States v. Taylor*, 487 U.S. 326, 333–35 (1988)).  With those factors carefully weighed, the "decision to dismiss with or without prejudice [is] left to the guided discretion of the district court," giving no priority to dismissal with or without prejudice.  *Gabrielian*, 2024 WL 2384148, at *12 (quoting *Taylor*, 487 U.S. at 335).  For the following reasons, each factor counsels in favor of dismissal with prejudice.

### A.    The Seriousness of the Offense

As charged, the case appears serious.  Masood is accused of defrauding Walter Reed for millions of dollars of unauthorized payments for medical coding services.  ECF Nos. 342 & 346 at 25.  He is also alleged to have committed multiple counts of identity theft which, if convicted, would require consecutive terms of imprisonment.  *Id.*  But the seriousness of the offense is tempered by the notable evolution of the Government's view on the strength of its case.

26

After the Government became "educated" and "enlightened" on the Defendants' "true motivations," ECF No. 151, the Government dismissed charges against one Defendant, deferred prosecutions against two others, and negotiated probationary or short advisory prison terms for the rest.[13]  The Government even conceded that, in the end, the conspirators seemed more motivated to hide income from the IRS than to defraud Walter Reed.  ECF No. 151.  This is why the Government pursued possible alternative pleas for tax charges, but even those were scuttled because the tax loss amounts were too low.  ECF No. 166.  The Government's diminished faith in the originally charged fraud undercuts the stated seriousness of this offense.  Thus, the first factor tilts slightly in favor of dismissal with prejudice.

### B.    Facts and Circumstances Leading to Dismissal

The second factor decidedly weighs in favor of dismissing with prejudice.  Here, the analysis entails weighing the "culpability of the delay-producing conduct."  *United States v. Saltzman*, 984 F.2d 1087, 1093 (10th Cir. 1993) (quoting *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988), *cert. denied*, 488 U.S. 925 (1988)).  "If the delay is occasioned by a pattern of governmental inattention or because the prosecutor, like a recalcitrant schoolboy, fails to learn oft-repeated lessons, the situation becomes more conducive to dismissal with prejudice than if the delay stems from some solitary bevue."  *Hastings*, 847 F.2d at 925; *see also Taylor*, 487 U.S. at 338–39.

In a nutshell, the delay falls at the feet of the prosecution and its chronic and inexplicable neglect of this case.  That neglect led to the abandonment of the prosecution's basic discovery

---

[13] The Government recommended two years' probation for Defendant Rhonda Paul, ECF No. 169, two years' probation for Defendant Wesley Williams, ECF No. 335, and fifteen months' imprisonment for Michelle Peebles, ECF No. 221 at 16.  As to Harriett Jackson, the Government reached a plea deal that allowed her to be sentenced under "conspiracy to impede, impair, obstruct, or defeat tax" and dismissed the original Indictment against her.  ECF No. 182 at 4; ECF No. 174.

obligations for two-and-a-half years, which alone must result in dismissal with prejudice.  The only justification the Government provides now for its Rule 16 failures is internal IT difficulties.  ECF No. 252 at 47–48.  That is insufficient when balanced against "the demand of Congress that the public and the Defendant have a statutory right to a speedy public trial."  *Dog Taking Gun*, 7 F. Supp. 2d at 1121.

The Government's disclosure obligations are the cornerstone of the constitutional and statutory safeguards afforded to the accused.  Often, as is here, the Government retains exclusive possession and control over the very evidence needed to assist the defendant in sizing up his chances at trial or mounting a legitimate defense.  *United States v. Hernandez–Meza*, 720 F.3d 760, 768 (9th Cir.2013) (quoting *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) (explaining Government's duty to disclose includes any material information "even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'").  The Court likewise relies on the Government's representations to mete out justice fairly and expeditiously.  When the Government fails to deliver, a defendant is forced to expend inordinate time and resources to get that which the Rules and the Constitution require the Government to give.  Not to mention the inordinate expenditure of precious judicial resources on the same.

Along with the Government's cavalier approach to discovery is its companion lack of care regarding the representations made to this Court and to the defense.  More than once, the Government flip-flopped on whether it had fulfilled its disclosure obligations.  The Government said to the Court that it had produced all Rule 16 discovery when it later confessed that it had not.  *Compare* ECF No. 106 *with* ECF No. 252 at 53, 101 & 102.  It also said the filter process was not "completed" when it had not even started.  *Compare* ECF No. 103 at 3 *with* Email-

00279.  And it affirmed a diligent search for *Brady* material only to say later that nothing of the sort occurred.  *Compare* ECF No. 252 at 38 *with* ECF No. 241-1; ECF No. 252 at 101.  Where the Government's fundamental discovery obligations are so lightly regarded to the point that the Court cannot get a straight narrative, dismissal with prejudice is amply justified.

### C.    The Impact of Reprosecution on the Administration of the Speedy Trial Act and the Administration of Justice

As Judge Gallagher rightly observed, this last factor "is perhaps the least clear and the most challenging to analyze."  *Gabrielian*, 2024 WL 2384148, at *18.  District courts should, therefore, heed the Supreme Court's guidance to take a "more nuanced approach," recognizing that dismissal with prejudice "always sends a stronger message than dismissal without prejudice and is more likely to induce salutary changes in procedures, reducing pretrial delays."  *Id.* (quoting *Taylor* 487 U.S. at 342).  But not every violation warrants a case-ending result.  *Id.*

The Fourth Circuit has observed that dismissal with prejudice may be warranted where the Government has delayed trial "to obtain a tactical advantage," or when the delay was "purposeful or that the appellant was prejudiced by the delay."  *United States v. Jones,* 887 F.2d 492, 495 (4th Cir. 1989).  As for prejudice, the Court may consider whether the defense "has been impaired in any way or would be impaired if re-prosecuted after dismissal."  *United States v. Brooks*, No. CR MJM-22-60, 2024 WL 4569876, at *9 (D. Md. Oct. 24, 2024).

At its most basic level, the impact of reprosecution here would be significant to the defense and the administration of justice.  The Court and defense relied on the veracity of the Government's professed diligence, and its repeated promises to provide a trove of data from the main cooperators' devices and email accounts.  But due to a chronic inattention to fundamental discovery obligations in this complex white-collar case, Masood could not receive a "speedy trial" for twenty-eight months.  Although the Court does not believe any one prosecutor or agent

29

purposefully set out to delay trial, the years' long collective neglect demands that the institutional failures not be ignored.

Similarly, while no one prosecutor intentionally slow-walked discovery, the discovery had been slow-walked nonetheless to the Government's advantage. The Government had well over two years to collect and review massive amounts of data which it used to build its case. It then did not produce this to Masood until after the September 2024 trial date had passed. ECF No. 330 at 24. To make matters worse, the Government paid no real attention to its *Brady* obligations while it searched for incriminating evidence—the "golden egg" nestled in a "Masood heavy" data trove. Email-00279. The withholding of this data, at a minimum, would have helped Masood understand the gravity of the Government's case or mine the weaknesses. This is all textbook tactical advantage, whether by design or effect. It counsels in favor of dismissal with prejudice.

Last, the delay has actually prejudiced Masood. In the Sixth Amendment speedy trial context, delays exceeding one year support a presumption of prejudice. *See Brooks,* 2024 WL 4569876, at *9 (citing *Taylor*, 487 U.S. at 340). And for good reason. Memories fade. Evidence disappears. People die. Masood has demonstrated that the passage of time has impacted his ability to receive a fair trial. For example, although the Government sought and received only three email accounts from Infused, it was not altogether clear whether the Government had retained or preserved the rest of the business' data. Now Infused is defunct. And there appears to be no clear path to the repository of documents in existence at the time Masood was arrested.

Likewise, at least one potentially important electronic device that had been in the custody and control of the cooperator, Jackson, has been lost due to the passage of time. Indeed, it was

not until August 2024 that the Government turned over to Masood the search-warrant inventories and chains of custody related to the thirty electronic devices seized in April 2022.  Without those documents, Masood never knew that a laptop purportedly belonging to the victim, Walter Reed, was found in Jackson's home and never searched.  And because Masood never knew the Government let Jackson keep the laptop, Masood could not seek contemporaneous recourse. Three years later, the laptop is gone.  As is the Court's confidence that Masood could receive a fair trial if reprosecuted.  For these reasons, the third and final factor weighs in favor of dismissal with prejudice.

## IV.    Conclusion

The Speedy Trial Act is designed to protect the interests of defendants and the public in the prompt administration of justice. To permit reprosecution of this case would undermine those purposes and render the rules of fair play a paper tiger.  Accordingly, Masood's motion to dismiss for violation of the Speedy Trial Act will be granted, and the Indictment will be dismissed with prejudice.[14]  A separate Order follows.

2/25/2025                                      /S/
_____    _____
Date                                         Paula Xinis
                                             United States District Judge

---

[14] Because the Indictment is dismissed with prejudice, any outstanding requests for relief as preserved in ECF Nos. 135, 136, 235, 241, 242, 245, 286, 331, 332, 333 & 334 are denied as moot.